UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MAQUET CARDIOVASCULAR LLC, ) | |
| ) | |
| Plaintiff/Counterdefendant, ) | |
| ) | Civil Action No. |
| v. ) | 17-12311-FDS |
| ) | |
| ABIOMED, INC. ) | |
| ) | |
| Defendant/Counterclaimant, ) | |
| ) | |
| v. ) | |
| ) | |
| ABIOMED R&D, INC. and ) | |
| ABIOMED EUROPE GMBH, ) | |
| ) | |
| Defendants, ) | |
| ) | |
| v. ) | |
| ) | |
| GETINGE AB, ) | |
| ) | |
| Third-Party Defendant. ) | |

## MEMORANDUM AND ORDER ON GETINGE AB'S MOTION TO DISMISS

SAYLOR, J.

This is a case for patent infringement. Plaintiff Maquet Cardiovascular LLC contends that defendants Abiomed, Inc., Abiomed R&D, Inc., and Abiomed Europe GmbH infringe its U.S. Patent No. 9,789,238. Abiomed, Inc. ("Abiomed") has counterclaimed against Maquet and third-party defendant Getinge AB for declaratory judgment of noninfringement.

Getinge has moved to dismiss the claim against it. It contends that Abiomed's third-party complaint fails to state a claim upon which relief can be granted. Alternatively, Getinge has moved for a more definite statement as to what actions were taken specifically by it to support

the counterclaim. Getinge also contends that this Court lacks personal jurisdiction over it because it is a Swedish corporation with a principal place of business in Sweden.

For the reasons that follow, the motion will be granted.

I.  **Background**

This case is related to another case alleging patent infringement, *Abiomed, Inc. v. Maquet Cardiovascular LLC*, No. 16-cv-10914-FDS (D. Mass.) ("*Abiomed I*"). On October 17, 2017, during the pendency of that case, the '238 patent issued. Maquet sought to add allegations of infringement of the '238 patent in *Abiomed I*, but when Abiomed objected, it agreed to assert those claims in a separate lawsuit. Maquet accordingly filed this action on November 22, 2017.

With its answer, Abiomed included a counterclaim against Maquet and a third-party claim against Getinge. The third-party complaint alleges that "Counterclaim Defendants [which it defines as Maquet and Getinge] have asserted that Abiomed directly and indirectly infringes the '238 patent." (3d Pty. Compl. ¶ 7). It further alleges that "[a]cting in concert, Counterclaim Defendants have threatened to enforce the '238 patent and related patents within this District by accusing Abiomed . . . of infringing the patents and demanding that Abiomed take a license to those patents," and that they have "engaged in discussions with Abiomed . . . regarding litigation and settlement of claims relating to the '238 patent and related patents." (*Id.* ¶ 10). Specifically, the third-party complaint alleges that Abiomed received a letter from Maquet asserting patent infringement, and that Getinge employees Abraham Ronai, Gary Sufat, and Philip Freed were involved in asserting the patents and preliminary settlement discussions. (*Id.* ¶¶ 11-12, 18, 29-30 & Ex. 2).

The third-party complaint also alleges that Getinge, a corporate parent of Maquet, exercises substantial control over Maquet. It alleges that "Getinge operates and holds itself out to the world as one company that maintains unitary administration, values, policies, history,

[and] strategy over its subsidiaries, including Maquet," which is shown by Getinge's listing of Maquet as one of its "Main Offices" on its website and the fact that Maquet's website redirects to Getinge's for several topics, including "About Us," "Our History," "Vision & Management," "Code of Conduct," "Ethics and Compliance," and "Careers." (*Id.* ¶¶ 13-16). Abiomed also alleges that the corporate structures of Maquet and Getinge are deeply intertwined, in that the companies share information-technology systems and have access to each other's files. (Abiomed Opp. at 6).[1] Furthermore, Abiomed alleges that a business organization within Getinge named "Acute Care Therapies" oversees several Getinge subsidiaries, including Maquet, including determining research and development budgets, evaluating strategies for product lines, and approving the initiation of any legal action. (*Id.* at 6-7).

Specifically with respect to the '238 patent, the third-party complaint alleges that "Getinge led the acquisition of the patent that gave rise to the newly-issued '238 patent and on information and belief exercises substantial rights in the '238 patent, including by initiating, directing, and participating in Counterclaim Defendants' efforts to enforce the patent against Abiomed." (3d Pty. Compl. ¶ 27). The third-party complaint further alleges that "Getinge acquired, from Boston Scientific Corporation, the application that led to the '238 patent, as well as related patents, and purported to cause title in the application and patents to be assigned to Maquet." (*Id.* ¶ 30). Abiomed also contends—in its opposition memorandum—that Datascope, another subsidiary of Getinge, seems to have licensed rights to the '238 patent to another company in 2010, even though Getinge claims that it assigned all its rights in the patent to

---

[1] Abiomed contends that it was barred by the protective order in *Abiomed I* from including this information in its third-party complaint. Although the Court ordinarily would not look to facts not alleged in the complaint in deciding a motion to dismiss, it will assume for the purposes of this order that those facts are true.

3

Maquet in 2008. (Abiomed Opp. at 4).[2]

The third-party complaint contains one count seeking declaratory judgment of noninfringement of the '238 patent.

## II. Standard of Review

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations and footnote omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if the facts as alleged do not "possess enough heft to sho[w] that [plaintiff is] entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir.2008) (alterations in original) (quoting *Clark v. Boscher*, 514 F.3d 107, 112 (1st Cir. 2008)) (internal quotation marks omitted).

## III. Analysis

Getinge's motion to dismiss contains three parts: (1) a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted; (2) a motion to dismiss, to strike, and/or for a more definite statement under Fed. Rule Civ. P. 8 and 16(e)-(f) for

---

[2] Although the '238 patent did not exist in 2010, the license agreement refers to U.S. Patent Nos. 7,022,100 and 6,926,662 and "any other patents or patent applications which claim priority under the '100 and '662 patents," which the '238 patent does. (Abiomed Opp. at 4 n.2).

failure to plead conduct by Getinge; and (3) a motion to dismiss under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. Because the Court concludes that the third-party complaint fails to state a claim against Getinge, it need not reach the other two issues.

Getinge primarily contends that there is no actual controversy between Abiomed and Getinge as to infringement of the '238 patent, because Getinge does not have standing to assert that patent against Abiomed. *See* 28 U.S.C. § 2201(a); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-27 (2007). "Standing to sue for patent infringement derives from the Patent Act, which provides that '[a] patentee shall have remedy by civil action for infringement of his patent.'" *Keranos, LLC v. Silicon Storage Tech., Inc.*, 797 F.3d 1025, 1031 (Fed. Cir. 2015) (alteration in original) (quoting *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1376-77 (Fed. Cir. 2000); 35 U.S.C. § 281). "The word 'patentee' includes not only the patentee to whom the patent was issued but also the successors in title to the patentee." 35 U.S.C. § 100(d). In general, the patentee is a necessary party to any lawsuit enforcing the patent, and therefore a necessary party to a declaratory judgment action for noninfringement. *A123 Sys., Inc. v. Hydro-Quebec*, 626 F.3d 1213, 1217 (Fed. Cir. 2010).

"Applications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing." 35 U.S.C. § 261. "When the entity that holds legal title to the patent 'makes an assignment of all substantial rights under the patent,' then that assignee is 'deemed the effective "patentee" under 35 U.S.C. § 281' with effective title to the patent, and alone has 'standing to maintain an infringement suit in its own name.'" *Keranos*, 797 F.3d at 1031 (quoting *Prima Tek II*, 222 F.3d at 1377). In some circumstances, an exclusive licensee may amount to an assignee, if the patent owner transferred "all substantial rights to the patent at issue." *Id.* (quoting *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1340 (Fed. Cir.

5

2006)).  In that case, the exclusive licensee would have standing to sue in its own name.  *Id.*  If, on the other hand, less than all substantial rights are transferred, "the exclusive licensee may have standing to participate in a patent infringement suit, but it must join the owner of legal title to satisfy the standing requirement."  *Id.*

"Common corporate structure does not overcome the requirement that even between a parent and a subsidiary, an appropriate written assignment is necessary to transfer legal title from one to the other."  *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1366 (Fed. Cir. 2010) (citing *Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1328 (Fed. Cir. 2001) ("If a party lacks title to a patent, that party has no standing to bring an infringement action under that patent.")).  Furthermore, "[i]n determining ownership for purposes of standing, labels given by the parties do not control.  Rather, the court must determine whether the party alleging effective ownership has in fact received all substantial rights from the patent owner."  *A123 Sys.*, 626 F.3d at 1218.  It is, therefore, the content of the written agreement between the parties transferring patent rights that controls.

Abiomed alleges that Getinge has "substantial rights" in the patent, and therefore is properly a declaratory judgment defendant.  In support, it points to (1) the fact that Getinge "led the acquisition of the patent that gave rise to the newly-issued '238 patent"; (2) Getinge's alleged control over Maquet and the participation of its personnel in Maquet's assertion of the patents; and (3) the fact that Datascope, another subsidiary of Getinge and parent of Maquet, apparently licensed certain rights to the '238 patent and other patents in the family to another company after Getinge had "purported" to assign the patents to Maquet.

The allegations of the third-party complaint fail to state a plausible claim that Getinge has "substantial rights" in the patent sufficient to create a case or controversy between Abiomed and

6

Getinge.  Whether or not Getinge once had rights in an ancestor application of the application that later issued as the '238 patent, the third-party complaint does not allege any written agreement granting Getinge any rights in the '238 patent itself.  Instead, it concedes that Getinge "purported to cause title in the application and patents to be assigned to Maquet," and attaches the '238 patent, which lists on its face "Maquet Cardiovascular LLC, San Jose CA (US)" as the assignee as of the date it was issued, October 17, 2017.  Abiomed does not allege that title to the '238 patent has been assigned away from Maquet since its issuance.  And Getinge can have no rights to the patent absent a written agreement granting it rights.  *Abraxis Bioscience*, 625 F.3d at 1366.

The allegations concerning the control Getinge allegedly asserts over Maquet do not require a different result.  Although it is perhaps puzzling that Datascope—which neither party alleges ever had ownership of the '238 patent—seems to have granted a non-exclusive license to the family of patents at issue in this suit and *Abiomed I* to another company, that fact does not change the analysis.  "[E]ven if [a party] had held itself out as having all substantial rights in the patents, such a unilateral representation could not alter [the patentee's] own rights in the patents." *A123 Sys.*, 626 F.3d at 1218.  In circumstances where there is a controversy as to who has "substantial rights" to a patent, courts have uniformly focused on the terms of the written agreements transferring those rights, not on the behavior of the parties involved. *E.g.*, *Keranos*, 797 F.3d at 1031-32; *Delano Farms Co. v. Cal. Table Grape Comm'n*, 655 F.3d 1337, 1342-43 (Fed. Cir. 2011); *A123 Sys.*, 626 F.3d at 1217-19.  To the extent Abiomed contends that the behavior of the parties is evidence of an as-yet-unproduced written agreement, it has not alleged in the third-party complaint that such an agreement exists and it has no apparent good-faith basis for doing so.

7

Abiomed contends that it has plausibly pleaded that Getinge has equitable rights in the patent, and that those rights are sufficient to create an "actual controversy" as to infringement of the '238 patent. The Federal Circuit has recognized that a party may hold equitable title to a patent without holding legal title to it, either because the party with legal title only acquired it by breaching a contract with the equitable title holder or because the party with legal title improperly failed to name the equitable title holders as inventors. *Univ. of Colo. Found., Inc. v. Am. Cyanamid Co.*, 196 F.3d 1366, 1375 (Fed. Cir. 1999); *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1576, 1578-79 (Fed. Cir. 1991). Abiomed has cited to two district court cases, both of which cite to *Arachnid*, in which courts have held that a corporate parent had standing to join its subsidiary-patentee's lawsuit as to any requested equitable remedies on the ground that the corporate parent had equitable title through its subsidiary's legal ownership. *Cargill, Inc. v. Sears Petroleum & Trasp. Corp.*, 388 F. Supp. 2d 37, 63 (N.D.N.Y. 2005); *Pipe Liners, Inc. v. Am. Pipe & Plastics, Inc.*, 893 F. Supp. 704, 705-06 (S.D. Tex. 1995). *But see In re Google Litig.*, 2010 WL 5211545, at *3 (N.D. Cal. Dec. 16, 2010) ("[T]he mere fact that Software Rights Archive, LLC is the subsidiary of companies which exercise some or even significant control over it as the result of the corporate structure does not mean that Software Rights Archive LLC has transferred substantial patent rights to its parent companies.").

The Court is wary of extending the doctrine of equitable title to situations where a corporate parent exercises control over a patentee-subsidiary. Generally, remedies in equity are created in order to avoid unfair results. There is nothing unfair about a corporate subsidiary owning title to a patent, or a corporate parent exercising substantial control over its subsidiary. Furthermore, it is not clear how far such an equitable right would extend and how it would be exercised—surely not every corporate parent has an equitable title to patents held by every

corporate subsidiary. Perhaps most importantly, extending the doctrine in such circumstances directly contradicts the statutory requirement that assignment of patent rights must be by an "instrument in writing." *See* 35 U.S.C. § 261.

In summary, Abiomed has not pleaded plausible facts from which it can be reasonably inferred that Getinge has either legal or equitable rights to the '238 patent that would afford it standing in an infringement suit against Abiomed. Thus, under the circumstances, the third-party complaint does not allege that there is an "actual controversy" as to infringement of the '238 patent between it and Getinge, and therefore fails to state a claim upon which relief can be granted. *See* 28 U.S.C. § 2201(a); *MedImmune*, 549 U.S. at 126-27.

## IV. Conclusion

For the foregoing reasons, Getinge's motion to dismiss is GRANTED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor, IV
Dated: September 4, 2018                United States District Judge