UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| MAQUET CARDIOVASCULAR LLC, | ) ) ) | |
| Plaintiff/Counterdefendant, | ) ) | |
| v. | ) ) ) | Civil Action No. 17-12311-FDS |
| ABIOMED, INC., ABIOMED R&D, INC., and ABIOMED EUROPE GMBH, | ) ) ) ) | |
| Defendants/Counterclaimants, | ) ) | |

# MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

**SAYLOR, C.J.**

This is a case for patent infringement derived from related litigation between the parties in *Abiomed, Inc. v. Maquet Cardiovascular LLC*, No. 16-cv-10914-FDS (D. Mass.) ("*Abiomed I*").

Here, plaintiff Maquet Cardiovascular LLC has sued defendants Abiomed, Inc., Abiomed R&D, Inc., and Abiomed Europe GmbH for infringing U.S. Patent No. 10,238,783 ("the '783 patent").[1] Defendants (collectively "Abiomed") have counterclaimed for declaratory judgment of noninfringement.

This case, like *Abiomed I*, concerns patents owned by Maquet directed to guidable intravascular blood pumps and methods related to their use. Abiomed manufactures the "Impella" line of intravascular blood pumps, which Maquet alleges infringes its related patents.

---

[1] Initially, Maquet filed suit alleging infringement of U.S. Patent No. 9,789,238 ("the '238 patent"); however, the suit has since been narrowed to claims of infringement of the more recently issued '783 patent.

Abiomed has filed a motion for a partial judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c).  It contends that Claim 24 of the '783 patent is invalid due to the on-sale bar of 35 U.S.C. § 102.

For the following reasons, the motion for partial judgment on the pleadings will be denied.

I.     **Background**

    A.     **Factual Background**

        1.     **Pigtail-Shaped Distal Tip**

Claim 24 of the '783 patent describes

> [a]n intravascular blood pump system comprising . . . a pigtail shaped distal tip or a J-shaped distal tip, wherein when the intravascular blood pump is positioned in the patient to provide left-heart support the pigtail shaped distal tip or the J-shaped distal tip are wholly within a left ventricle of the patient.

('783 patent, col. 37 ll. 32-33, col. 38 ll. 10-14).  According to the parties, that claim finds support in the specification through the incorporation of U.S. Patent Application No. 09/280,988 ("the '988 application"), entitled "Steerable Cannula."  (*Id.*, col. 20 ll. 24-44; *id.*, col. 21 l. 24-col. 27 l. 11).  That application, as set forth in the '783 patent, explains that

> [v]arious distal tip configurations can be selected for cannula 1120, depending on the particular application as appreciated by those of ordinary skill in the art.  For example, a pigtail shape can be used for crossing the aortic valve retrograde.  The pigtail shape, illustrated in FIG. 30, can be formed by bonding or thermal welding or otherwise attaching a thermoplastic rod 1174 formed into a loop at the distal end of cannula 1120.

(*Id.*, col. 26 ll. 37-44).  The parties do not contest, and the Court has previously noted, that the '988 application was abandoned and never published, except to the extent that it may have been incorporated into later patents.  (*See Abiomed I*, Docket No. 241 ("*Abiomed I* Mem. & Order on Claim Constr.") at 3 n.1).

2.      **Patent and Claim Priority**

The application for the '783 patent was filed on September 21, 2018, although the patent claims priority through a lineage of applications dating back to September 3, 1999. The priority claim of the '783 patent provides:

> This application is a divisional of co-pending U.S. patent application Ser. No. 15/675,310, filed Aug. 11, 2017, which is a divisional of U.S. patent application Ser. No. 14/966,669, filed Dec. 11, 2015 (now U.S. Pat. No. 9,789,238), which is a divisional of U.S. patent application Ser. No. 14/543,815, filed Nov. 17, 2014 (now U.S. Pat. 9,327,068, issued May 3, 2016), which is a continuation of U.S. patent application Ser. No. 12/772,810, filed May 3, 2010 (now U.S. Pat. No. 8,888,728, issued Nov. 18, 2014), which is a continuation of U.S. patent application Ser. No. 11/375,926, filed Mar. 15, 2006 (now U.S. Pat. No. 7,731, 675, issued Jun. 8, 2010), which is a divisional of U.S. patent application Ser. No. 10/070,178, filed Jul. 19, 2002, (now U.S. Pat. No. 7,022,100, issued Apr. 4, 2006), which claims the benefit of PCT/US00/24515, filed Sep. 1, 2000, which claims the benefit of provisional U.S. patent application Ser. No. 60/152,249 filed Sep. 3, 1999. We hereby claim priority to the aforementioned application(s) and also incorporate herein by reference each of the afore-listed patents and application in their entirety.

('783 patent, col. 1 ll. 6-25).

However, the description of a pigtail-shaped distal tip present in the '783 patent is absent from the earliest patent in the priority chain, U.S. Patent No. 7,022,100 ("the '100 patent"). The '100 patent does not have a claim analogous to Claim 24, nor does it reproduce the '988 application within the specification. Instead, the '100 patent incorporates the '988 application (as well as another related application) by reference:

> It is also contemplated to incorporate various pressure sensing and/or guidability features into at least one of the cannula 14 and pump 12. Such features may include, but are not necessarily limited to, those shown and described in commonly-owned and co-pending U.S. patent application Ser. No. 09/280,988 (filed March 30, 1999) entitled "Steerable Cannula," and U.S. patent application Ser. No. 09/280,970 (filed March 30, 1999) entitled "Pressure Sensing Cannula," the disclosures of which are hereby expressly incorporated by reference as if set forth herein in their entirety.

('100 patent, col. 18 ll. 21-30).

### 3. 37 C.F.R. § 1.57

In 2004, the United States Patent and Trademark Office ("PTO") issued 37 C.F.R. § 1.57 to codify standards concerning the incorporation by reference of materials into a patent's specification. *See* Changes to Support Implementation of the United States Patent and Trademark Office 21st Century Strategic Plan, 69 Fed. Reg. 56,482-01, 2004 WL 2092623, (Sept. 21, 2004). That regulation sets forth restrictions on the kind of material that may be incorporated by reference to support an application.

As relevant here, the regulation mandates that "'[e]ssential material' may be incorporated [in a specification] by reference, but only by way of an incorporation by reference to a U.S. patent or U.S. patent application publication," as long as the referenced patent or application "[did] not itself incorporate such essential material by reference." 37 C.F.R. § 1.57(d).[2] As a result, "essential material" may no longer be conveyed in a specification by incorporating by reference an unpublished or abandoned patent application.

The regulation defines "essential material" in relevant part as follows:

"Essential material" is material that is necessary to

1. Provide a written description of the claimed invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and set forth the best mode contemplated by the inventor of carrying out the invention as required by [35 U.S.C. § 112(a); or]

2. Describe the claimed invention in terms that particularly point out and distinctly claim the invention as required by [35 U.S.C. § 112(b).]

*Id.* § 1.57(d).

---

[2] At the time, the relevant provision was promulgated as 37 C.F.R. § 1.57(c) (2004). For the sake of clarity, the Court will cite to the current version of the regulation.

4

### 4.     Amendments to Priority Chain Applications

After the promulgation of 37 C.F.R. § 1.57 in 2004, Maquet prosecuted three patents that claimed priority to the '100 patent: U.S. Patent Nos. 7,731,675 ("the '675 patent"); 8,888,728 ("the '728 patent"), and 9,327,068 ("the '068 patent"). The specifications for each incorporated by reference (using language identical to that in the '100 patent) the description of a pigtail-shaped distal tip in the abandoned '988 application.

In November 2016, Maquet sought to amend the specification of a pending patent application, which claimed priority to the '100 patent, that would eventually issue as the '238 patent. (Docket No. 236, Ex. 9). Specifically, Maquet amended the specification by physically incorporating the '988 application into the specification rather than incorporating it by reference, thereby reproducing the '988 application's description of the pigtail-shaped distal tip within the specification itself. ('238 patent, col. 26 ll. 23-30). On June 21, 2017, the PTO permitted the amendment, stating that "no new matter ha[d] been added." (Docket No. 236, Ex. 10 at 2).

In September 2018, Maquet applied for what became the '783 patent. That application physically incorporated the '988 application in the same manner as the '238 patent. Thus, the '238 and '783 patents both contain the written description of a pigtail-shaped distal tip that had been incorporated by reference in previous patents in the priority chain. The '675, '728, and '068 patents, however, do not.

### B.     Procedural Posture

The '238 patent was issued on October 17, 2017, during the pendency of *Abiomed I*. Maquet sought to add allegations of infringement of the '238 patent in *Abiomed I*, but when Abiomed objected, it agreed to assert those claims in a separate lawsuit. Maquet accordingly filed this action on November 22, 2017.

On March 26, 2019, the PTO issued the '783 patent, and Maquet thereafter amended the

complaint to add allegations of infringement of the '783 patent.

Abiomed has moved for partial judgment on the pleadings on the ground that claim 24 of the '783 patent is invalid. Specifically, it contends that the '783 patent cannot claim priority to the '988 application, and therefore it is invalid due to the on-sale bar of 35 U.S.C. § 102.

## II.  Standard of Review

A Rule 12(c) motion for judgment on the pleadings "is treated much like a Rule 12(b)(6) motion to dismiss." *Perez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008). It differs from a Rule 12(b)(6) motion primarily because it is filed after the close of pleadings and "implicates the pleadings as a whole." *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 54-55 (1st Cir. 2006). Because a Rule 12(c) motion "calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom to the nonmovant's behoof." *R.G. Financial Corp. v. Vergara-Nunez*, 446 F.3d 178, 182 (1st Cir. 2006).

However, to survive a motion for judgment on the pleadings, a complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if the facts as alleged do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (alterations omitted) (internal quotations omitted).

**III.     Analysis**

Abiomed contends that Claim 24 can only claim priority to August 2016—that is, the date when Maquet amended its application for the '283 patent to include the description of a pigtail-shaped distal tip in the '988 application. Before then, patents within the priority chain had incorporated the abandoned '988 application only by reference. Abiomed asserts that after the promulgation of 37 C.F.R. § 1.57 in 2004, Maquet was no longer permitted to incorporate such "essential material" by reference. As a result, according to Abiomed, Maquet's practice of incorporating the '988 application only by reference in three patents that issued after 2004 (the '675, '728, and '068 patents) broke the priority chain. Because Abiomed's Impella devices had been sold since 2008, Maquet's attempts to mend the priority chain in 2016 were futile, and Claim 24 is invalid due to the on-sale bar of § 102.

In opposition, Maquet contends that 37 C.F.R. § 1.57(d) is inapposite and that the incorporation of the '988 application was proper, and, therefore, there was continuity of disclosure throughout the entire priority chain. In addition, it contends that even if the '988 application were to be read out of the priority chain, a genuine issue of material fact remains as to whether the specification language alone would disclose to a person of skill in the art the pigtail-shaped distal tip described in Claim 24.[3]

Section 120 of the patent code provides, in substance, that claims in a patent can claim priority to a previously filed application if there is continuity of disclosure that satisfies the requirements set forth in 35 U.S.C. § 112(a). 35 U.S.C. § 120. Section 112(a), in turn, requires as follows:

[t]he specification shall contain a written description of the invention, and of the

---

[3] Because the Court does not find that the incorporation of the '988 application was improper, it does not reach the latter contention.

manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention.

35 U.S.C. § 112(a).

Thus, "[t]he priority date for later-added patent claims depends on when the claimed subject matter first appeared in the chain of patent applications from which the claims arose." *Paice LLC v. Ford Motor Co.*, 881 F.3d 894, 906 (Fed. Cir. 2018) (citing *Augustine Med., Inc. v. Gaymar Indus., Inc.*, 181 F.3d 1291, 1302 (Fed. Cir. 1999)). "For claims to be entitled to a priority date of an earlier-filed application, the application must provide adequate written description support for the later claimed limitations." *Id.* Furthermore, "if any application in the priority chain fails to make the requisite disclosure of subject matter, the later-filed application is not entitled to the benefit of the filing date of applications preceding the break in the priority chain." *Droplets, Inc. v. E*TRADE Bank*, 887 F.3d 1309, 1320 (Fed. Cir. 2018) (quoting *Hollmer v. Harari*, 681 F.3d 1351, 1355 (Fed. Cir. 2012)). Amendments in later applications cannot mend the chain and restore an application's entitlement to priority. *See Encyclopedia Britannica, Inc. v. Alpine Elecs. of Am., Inc.*, 609 F.3d 1345, 1351 (Fed. Cir. 2010).

The "[d]etermination of a patent's priority date is purely a question of law if the facts underlying that determination are undisputed." *Droplets, Inc.*, 887 F.3d at 1315 (quoting *Medtronic CoreValve, LLC v. Edwards Lifesciences Corp.*, 741 F.3d 1359, 1363 (Fed. Cir. 2014)). In addition, "[w]hether and to what extent a patent incorporates material by reference also is a legal question." *Hollmer*, 681 F.3d at 1355.

The parties do not dispute that the '783 patent physically incorporates the '988 application's description of a pigtail-shaped distal tip. They do not dispute (at least for purposes of this motion) that the '988 application contains sufficient written support for Claim 24. And

they do not dispute that the '988 application was incorporated by reference into the original '100 patent, which was published before § 1.57(d) took effect.

However, Abiomed contends that three of the patents in the priority chain (the '675, '728, and '068 patents) impermissibly incorporated the '988 application by reference in violation of § 1.57(d), thereby breaking the continuity of disclosure. Again, that regulation provides that "essential material" in a patent application may be incorporated by reference, "but only by way of an incorporation by reference to a U.S. patent or U.S. patent application publication . . . ." 37 C.F.R. § 1.57(d). There appears to be no reported case directly on point, and therefore the court will look to other sources for guidance.

### A. The Manual of Patent Examining Procedure

The PTO's own interpretative guidance provides that § 1.57(d) does not apply to applications that are relied on only to establish a priority date. Specifically, the PTO Manual of Patent Examining Procedure ("MPEP") states the following:

> The limitations on the material which may be incorporated by reference in U.S. patent applications which are to issue as U.S. patents do not apply to applications relied on only to establish an earlier effective filing date under . . . 35 U.S.C. § 120. [Section 120 does not] place[] any restrictions or limitations as to how the claimed invention must be disclosed in the earlier application to comply with 35 U.S.C. § 112(a). Accordingly, an application is entitled to rely upon the filing date of an earlier application, even if the earlier application itself incorporates essential material by reference to another document.

MPEP § 608.01(p)(I)(B) (citation omitted). Thus, in substance, the MPEP provides that § 1.57(d) applies to material relied upon to satisfy the requirements of § 112 (the written description requirement), but not § 120 (the continuity of disclosure requirement). Because Abiomed challenges the priority date of the '783 patent and not the sufficiency of its written description, Maquet contends that § 1.57(d) does not apply.

Abiomed contends that the MPEP guidance, insofar as it conflicts with § 1.57(d), must

9

give way to the regulation. It further contends that the express purpose of the regulation, as stated by the PTO when it was promulgated, was to prevent the incorporation by reference of unpublished and abandoned patent applications that are not readily available to the public. 69 Fed. Reg. 56,482-01 ("[T]he Office considered but rejected including unpublished abandoned applications which are open to the public under § 1.14(a)(iv) as acceptable documents to incorporate by reference since the text of abandoned applications is not published on the Internet after abandonment in a text searchable form.").

The MPEP addresses the latter issue, stating as follows:

> The reason for incorporation by reference practice with respect to applications which are to issue as U.S. patents is to provide the public with a patent disclosure which minimizes the public's burden to search for and obtain copies of documents incorporated by reference which may not be readily available. . . . The same policy concern does not apply where the sole purpose for which an applicant relies on an earlier U.S. or foreign application is to establish an earlier filing date. Incorporation by reference in the earlier application of (1) patents or applications published by foreign countries or regional patent offices, (2) nonpatent publications, (3) a U.S. patent or application which itself incorporates "essential material" by reference, or (4) a foreign application, is not critical in the case of a "benefit" application.

MPEP § 608.01(p)(I)(B). While that interpretation is not binding in this court, it is nonetheless strong evidence as to how the PTO interprets its own regulation.[4]

### B.   *Ex Parte Nebrigic*

The decision of the Patent Trial and Appeal Board in *Ex parte Nebrigic*, 2016 WL 949023 (P.T.A.B. Mar. 10, 2016), is instructive. There, the PTAB found that notwithstanding the requirements of § 1.57(d), material incorporated by reference in a parent application can

---

[4] Abiomed also notes that the language quoted above does not include "unpublished" patent applications in its list of the types of materials that may be incorporated by reference in priority applications, which (it contends) suggests the omission was intentional. The list uses the word "published" in the phrase "patents or applications published by foreign countries or regional patent offices." The fact that the word "published" is not used to modify the phrase "U.S. patent or application" suggests that both published and unpublished applications are included.

maintain continuity of disclosure for essential material used to support a descendant application's claims. In that case, the patent examiner had ruled that the descendant patent's claims lacked sufficient descriptive support in the parent application because material essential to the descendant claims had been incorporated by reference. *Id.* The examiner determined that the incorporation of the essential material by the parent application could not provide support for the claims of the descendant patent because the material essential to those claims would be an improper "double incorporation" in violation of § 1.57(d).

The Appeal Board overturned that determination on the ground that the descendant application claimed priority to the parent application under 35 U.S.C. § 120 and "an application is entitled to rely upon the filing date of an earlier application, even if the earlier application itself incorporates essential material by reference." *Id.* (citing MPEP § 608.01(p)). That is, when a parent application incorporates essential material by reference, "all subject matter in [that] reference is present in the parent application." *Id.* (citing *Harari v. Lee*, 656 F.3d 1331 (Fed. Cir. 2011)). Therefore, when the descendant application claims priority back to the parent application under § 120, "there is no issue of improper 'double incorporation' of essential subject matter" in violation of 37 C.F.R. § 1.57(d). *Id.* While not directly on point, the decision certainly supports the conclusion that § 1.57(d) does not preclude continuity of disclosure under § 120 when a parent application incorporates by reference material essential to claims in later descendant patents.

C. **The Prosecution History**

That conclusion is also supported by the prosecution history of the '238 patent. When Maquet sought to amend its application for the '238 patent so that the specification would physically incorporate the '988 application, the examiner permitted the amendment, stating "[n]o new matter has been added." (Docket No. 236, Ex. 10 at 2). In other words, in the view of the

11

patent examiner, the prior incorporations by reference were sufficient to retain the '988 application in the priority chain such that its physical incorporation in the '238 patent (and thereafter the '783 patent) did not affect the continuity of disclosure.

Abiomed contends that the amendment was permitted only because Maquet misled the examiner as to the status of the '988 application. Specifically, Maquet stated that the '988 application was a "priority application." (*Id.*). However, the '988 application was, in fact, an unpublished and abandoned application as to which none of the patents at issue claimed priority. Nevertheless, whether that characterization—albeit apparently inaccurate—misled the examiner is an issue of fact that, at this stage, must be construed in Maquet's favor.

Assuming that the examiner was not misled, it appears that the PTO has already determined that the intervening patents were successful in incorporating by reference the '988 application such that its physical incorporation in the later patents did not add any new material. And that determination is "entitled to an especially weighty presumption of correctness." *Commonwealth Sci. & Indus. Rsch. Org. v. Buffalo Tech. (USA), Inc.*, 542 F.3d 1363, 1380 (Fed. Cir. 2008) (quoting *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1574-75 (Fed. Cir. 1992)).

D.  **"Essential Material" and *Ex Parte Maziere***

The requirements set forth in § 1.57(d) only apply to "essential material." That is defined by the regulation as any material necessary to "[p]rovide a written description . . . in such full, clear, concise, and exact terms" as to enable any person of skill in the art "to make and use the same." Whether the '988 application constitutes "essential material" for Claim 24 in the '783 patent is not the issue, because that patent physically reproduced the '988 application in its specification rather than incorporating it by reference. Rather, what the Court must determine is whether the '988 patent was "essential material" for the '675, '728, and '068 patents. If so, then

12

those patents' attempts to incorporate by reference the '988 application would have failed because § 1.57(d) does not permit the incorporation by reference of unpublished patent applications.

However, Abiomed does not argue that the '988 application was essential material for the claims in the '675, '728, and '068 patents—only that it was essential to the disclosure of Claim 24 in the '783 patent. It does not follow that the '988 application should have been reproduced in its entirety in the preceding patents to maintain continuity of disclosure throughout the patent chain. Material that was nonessential and incorporated by reference in a preceding patent can later be called upon to serve as essential material for claims made in a later patent without compromising the continuity of disclosure.

*Ex parte Maziere*, 27 U.S.P.Q.2d 1705, 1993 WL 322908 (B.P.A.I. Jan. 26, 1993), is illustrative. There, the Board of Patent Appeals and Interferences concluded that nonessential subject matter incorporated by reference in earlier parent applications could serve as essential material for claims in a descendant application without disrupting the continuity of disclosure required by § 120. The Board stated that the "claimed invention" in the descendant patent must "be disclosed in an earlier application in the manner provided by [§ 112(a)]" but that § 120 "does not place any restriction or limitation as to how the now claimed invention must be disclosed in the earlier application." *Id.* at *2. In addition, the Board stated that because the subject matter at issue was nonessential in the parent application, the applicants "were quite correct in not further burdening the record of that file by including the text which was incorporated by reference," even though that material would prove essential in the descendant patent. *Id.* at *3. And although *Ex parte Maziere* predates the promulgation of § 1.57(d), that principle nevertheless has been carried forward in the current version of the MPEP concerning the requirements and scope

13

of § 1.57(d).  *See* MPEP § 608.01(p)(I)(B).

Again, Abiomed does not argue that the '988 application was "essential material" to the claims of the '675, '728, and '068 patents.  Nor does it appear that the question of whether that material was essential is a matter of law for the Court to decide.  *See Regents of the Univ. of Cal. v. Dako N. Am., Inc.*, 2009 WL 1404736, at *5 (N.D. Cal. May 19, 2009) (stating that the question of whether incorporated material was "essential" to support claims and adequately disclose invention was "a factual question for the jury to determine").  At this stage of the proceedings, the Court must construe the facts in the light most favorable to Maquet, and construing the '988 application as inessential material in the intervening patents would render § 1.57(d) inapplicable and vitiate Abiomed's central contention.

       **E.**      <u>**Other Case Law**</u>

As noted, the parties have not pointed to any case law that appears to answer the issue in question directly, although Abiomed does cite to several cases for general propositions that it believes are applicable.  However, those authorities are not dispositive here, nor does the Court find them persuasive under the circumstances.

In *Nomadix, Inc. v. Second Rule LLC*, 2009 WL 10668158 (C.D. Cal. Jan. 16, 2009), the court analyzed whether a patent's incorporation by reference of a provisional application satisfied the requirements of § 112(a) and § 1.57(d).  *Id.* at *24.  The court held that incorporating the application by reference would have violated § 1.57(d); however, the patent had been filed before the regulation went into effect and there was no indication that the regulation was retroactively applicable.  In addition, the court held that the incorporation by reference satisfied the requirements of § 112(a).  *Id.* at *24-26.  Abiomed contends that the court's statements in *dicta* that the incorporation by reference to the provisional application would have violated § 1.57(d) suggests that the incorporations by reference of the '988

14

application in the '675, '728, and '068 patents (all filed after the promulgation of the regulation) were improper.

However, the *Nomadix* court was only considering whether the incorporation by reference satisfied the requirements of § 112(a), and the issue here concerns the '783 patent's priority claim under § 120.  Thus, while it may have been improper under § 112(a) for the patent in *Nomadix* to have incorporated essential material by reference to a provisional application, the '783 patent in this case does not do so.  Rather, it *physically* incorporates the disputed material.  And, as described above, whether that material was sufficiently presented in the preceding chain of patents is governed by § 120, which does not restrict the manner in which preceding patents can incorporate essential material.

In *Zenon Environmental, Inc. v. U.S. Filter Corp.*, 506 F.3d 1370 (Fed. Cir. 2007), the court addressed whether continuity of disclosure had been maintained throughout a chain of patents.  *Id.* at 1379.  Specifically, the original patent in the chain disclosed a gas-distribution system that, if also disclosed in the intervening patents, would have supported the claims asserted by the descendant patent.  However, the intervening patents incorporated the information in the original patent by reference only.  Furthermore, the language used to incorporate by reference the original gas-distribution system limited the incorporation to "only relevant disclosures of the patent[]," thereby "indicating that the disclosures [were] not being incorporated in their entirety." *Id.*

The central issue in *Zenon*, then, was whether the language limiting the incorporation by reference in the intervening patents failed to incorporate the original patent disclosures needed to support the descendant patent's claims.  The court determined that due to the limited incorporation language, the gas-distribution system disclosed in the original patent had not been

15

disclosed in the intervening patents, resulting in a break in the chain of continuity. *Id.* at 1381.[5] However, the fact that the court analyzed the scope of the intervening patent's incorporations by reference suggests that had the intervening patents referenced the original patent in its entirety, continuity would have been maintained.

Such was the case here. Abiomed does not contend that the incorporation language throughout the patent chain lacked specificity or was insufficient in some way. Each patent in the priority chain incorporated the application in precisely the same manner. And, again, the parties do not dispute that the '988 application contains material that would properly support Claim 24. As a result, *Zenon*, by analogy, supports Maquet's contention that the incorporation of '988 was proper and that it maintained the required continuity of disclosure.[6]

### F. Policy Considerations

Finally, Abiomed contends that, as a matter of policy, the practice of incorporating by reference material from unpublished applications in ancestor patents, and then deploying that material as essential material in later filed descendant applications to state additional claims, should not be permissible. Abiomed compares that to the abuses that were common in patent practice before applications were commonly published. At that time, applicants could file an application and leave it pending for a prolonged period outside of the public's view. These

---

[5] The court in *Zenon* analyzed the incorporation language according to the "reasonable person of ordinary skill in the art standard." *Id.* at 1379. That standard asks whether the language in the specification "identif[ies] with detailed particularity what specific material it incorporates to a person of ordinary skill." *Hollmer*, 681 F.3d at 1358 (Fed. Cir. 2012). Maquet cites repeatedly to this standard, but it is not clear how it is relevant here. Abiomed does not contend that the language used to incorporate the '988 application was insufficiently precise. Rather, it contends that the incorporation failed because the '988 application was improper material for incorporation.

[6] Other cases cited by Abiomed fare no better. *Droplets, Inc. v. E*TRADE Bank* concerned a patent that sought to incorporate by reference an application for the purposes of stating a priority claim, thereby violating the requirements of § 120; that case did not concern continuity of disclosure. 887 F.3d 1309 (Fed. Cir. 2018). *Hollmer v. Harari* concerned the question of when the "reasonable person of ordinary skill in the art" standard applied to the parsing of incorporation language in patents; accordingly, the issue in that case centered on the incorporation language as opposed to the nature of the material being incorporated. 681 F.3d 1351 (Fed. Cir. 2012).

"submarine" patents would apparently remain "submerged" for years, allowing the applicants to assess the developing technology in the field and then amend the application's claims to "ensnare the most valuable innovations in a particular field, thereby maximizing potential damages in ensuing infringement litigation." *UCB, Inc. v. Yeda Rsch. & Dev. Co.*, 117 F. Supp. 3d 755, 762 n.6 (E.D. Va. 2015). Here, Abiomed contends that Maquet engaged in a similar practice because public access to the '988 application was limited, yet it served as support for new claims decades after the publication of the original patent. While the issues raised by Abiomed are not entirely without merit, they are not sufficient to mandate a different result here.

### G. Conclusion

In summary, Maquet's incorporation of the '988 application by reference appears to be consistent with case law and administrative guidance. Furthermore, the amendment of the '238 patent to physically incorporate the '988 application was approved by the PTO, and that decision is "entitled to an especially weighty presumption of correctness." *Commonwealth Sci. & Indus. Rsch. Org.*, 542 F.3d at 1380. Under the circumstances, the Court concludes that the incorporation by reference of the '988 application was permissible, and does not require dismissal of the claims arising out of Claim 24 of the '783 patent based on the on-sale bar of 35 U.S.C. § 102.

### IV. Conclusion

For the foregoing reasons, Abiomed's motion for partial judgment on the pleadings is DENIED.

**So Ordered.**

|  |  |
|---|---|
|  | /s/ F. Dennis Saylor IV |
|  | F. Dennis Saylor IV |
| Dated: September 12, 2022 | Chief Judge, United States District Court |