# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ————————————————— ) <br> MAQUET CARDIOVASCULAR LLC, ) <br> ) <br>     **Plaintiff/Counterdefendant,** ) <br> ) <br>     **v.** ) <br> ) <br> ABIOMED, INC., ABIOMED R&D, INC., ) <br> and ABIOMED EUROPE GMBH, ) <br> ) <br>     **Defendants/Counterclaimants** ) <br> ————————————————— ) | **Civil Action No.** <br> **17-12311-FDS** |

## MEMORANDUM AND ORDER ON MOTIONS TO STRIKE
## PORTIONS OF THE EXPERT REPORT AND REBUTTAL
## EXPERT REPORT OF PROFESSOR LAKSHMI PRASAD DASI

**SAYLOR, J.**

This is an action for patent infringement. It is the second lawsuit between the parties concerning a line of intravascular blood pumps. *See Abiomed, Inc. v. Maquet Cardiovascular LLC*, No. 16-cv-10914-FDS (D. Mass.) ("*Abiomed I*"). In this case, plaintiff Maquet Cardiovascular LLC has sued defendants Abiomed, Inc., Abiomed R&D, Inc., and Abiomed Europe GmbH for infringing U.S. Patent No. 10,238,783 (filed Sept. 21, 2018) ("the '783 patent"). Defendants (collectively, "Abiomed") have counterclaimed for declaratory judgment of noninfringement.

Maquet has moved to strike portions of the expert report and rebuttal expert report of Dr. Lakshmi Prasad Dasi, one of Abiomed's experts. Maquet contends that Dr. Dasi's reports raise new invalidity and noninfringement theories that were not disclosed in Abiomed's contentions in violation of the Federal Rules of Civil Procedure, this district's local patent rules, and the Court's

scheduling orders.  Maquet also contends that Dr. Dasi's rebuttal expert report impermissibly introduces the affirmative defense of ensnarement.  Because the ensnarement issue overlaps with Abiomed's pending motion for partial summary judgment of no infringement under the doctrine of equivalents, the Court will also address that motion in part here.

For the reasons that follow, the Court will grant in part and deny in part both the motion to strike Dr. Dasi's expert report and the motion to strike his rebuttal expert report.

## I.    **Background**

In September 2022, the Court issued its claim construction order in this case.  (Dkt. No. 248).  In May 2023, the parties entered a stipulation that Maquet could not prove infringement based on that construction, and the Court entered a final appealable judgment.  (Dkt. No. 274; Dkt. No. 275).  Maquet then appealed the Court's construction of certain claims of the '783 patent.  In March 2025, the Federal Circuit modified the construction of certain claim terms and remanded the case to this Court.  *See Maquet Cardiovascular LLC v. Abiomed Inc.*, 131 F.4th 1330 (Fed. Cir. 2025).

The parties then proceeded with discovery.  On April 28, 2025, Maquet served its Final Infringement Contentions and Abiomed served its Amended Final Invalidity Contentions.  One month later, Abiomed served Amended Non-Infringement Contentions.  Neither party has moved to amend those final contentions.

Fact discovery closed on June 27, 2025, and the parties served opening expert reports on July 25, 2025.  Maquet then moved to strike portions of Dr. Dasi's report.  (Dkt. No. 385).  The parties served rebuttal expert reports on August 22, 2025.  Maquet also moved to strike portions of Dr. Dasi's rebuttal report.  (Dkt. No. 412).

## II.    **Legal Standard**

This district's Local Rule 16.6 governs patent proceedings.  D. Mass. R. ["L.R."] 16.6.

In patent cases, the "objective [of] allowing the parties to discover their opponent's theories of liability . . . has been difficult to achieve through traditional discovery mechanisms." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365 (Fed. Cir. 2006). This Court has adopted local patent rules "designed to address this problem by requiring both the plaintiff and the defendant in patent cases to provide early notice of" infringement, noninfringement, and invalidity contentions. *Id.* at 1365-66; *see* L.R. 16.6(d). "Mandating such disclosures is intended to 'require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed.'" *Philips N. Am. LLC v. Fitbit LLC*, 2021 WL 5417103, at *3 (D. Mass. Nov. 19, 2021) (quoting *O2 Micro Int'l Ltd.*, 467 F.3d at 1366 n.12).

As relevant here, Local Rule 16.6(d)(4) requires the party accused of infringement to make certain disclosures concerning its noninfringement and invalidity theories early in the litigation. Those disclosures "may be amended and supplemented only by leave of the court upon a timely showing a good cause." L.R. 16.6(d)(5). However, "[t]he duty to supplement discovery responses does not excuse the need to obtain leave of the court to amend disclosures." *Id.*; *see* Fed. R. Civ. P. 26(e) (duty to supplement).

Courts have "wide discretion" in enforcing local patent rules. *Finjan, Inc. v. Proofpoint, Inc.*, 2015 WL 9460295, at *1 (N.D. Cal. Dec. 23, 2015) (citing *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1292 (Fed. Cir. 2005)). The law of the Federal Circuit governs the Court's interpretation of the rules in question, as they are "unique to patent cases [and] likely to directly affect the substantive patent law theories that may be presented at trial." *O2 Micro Int'l Ltd.*, 467 F.3d at 1364. While "[t]he local patent rules do not specify the actions that the district court may or must take if there is non-compliance with the requirements for disclosure of contentions . . . , the rules are essentially a series of case management orders . . . ." *Id.* at 1363.

Under Federal Rule of Civil Procedure 16(f), "[t]he court may impose any 'just' sanction for the failure to obey a scheduling order." *Id.* In particular, the Federal Circuit "ha[s] concluded that the exclusion of evidence is often an appropriate sanction for a party's failure to comply with the patent local rules." *Phigenix, Inc. v. Genentech, Inc.*, 783 F. App'x 1014, 1020 (Fed. Cir. 2019). The Court may issue such a sanction "even where the violation at issue does not cause prejudice." *Medline Indus., Inc. v. C.R. Bard, Inc.*, 511 F. Supp. 3d 883, 889 (N.D. Ill. 2021) (citing Fed. R. Civ. P. 16(f)(1)(C), 37(b)(2)(A)(ii); *Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1323 (Fed. Cir. 2016)).

## III.    Invalidity Theories in Dr. Dasi's Expert Report

Maquet first contends that Dr. Dasi's expert report introduces new invalidity theories for lack of written description and obviousness. Because the local rules require different disclosures for those two grounds, the Court will address each in turn.

### A.    Written-Description Opinions

Maquet has moved to strike three portions of Dr. Dasi's report that contain written-description opinions that it alleges were not disclosed in Abiomed's contentions. Local Rule 16.6(d)(4)(F) requires the accused infringer to disclose "[a]ny asserted grounds of invalidity based on patentability under 35 U.S.C. § 101, indefiniteness under 35 U.S.C. § 112, or lack of enablement or written description under 35 U.S.C. § 112 of any asserted claim." Local Rule 16.6(d)(4)(G) further mandates disclosure of "[d]ocuments sufficient to support any asserted invalidity defense." The Court's scheduling order imposed similar requirements: "If applicable, defendants shall also specify any other grounds for invalidity, such as indefiniteness, best mode, enablement, or written description. If defendants have not already done so, they shall produce

documents relevant to the invalidity defenses and/or identify any such supporting documents produced by plaintiff."  (Dkt. No. 36, at 2).

### 1.     Written-Description Opinions on Intravascular Blood Pump Connected to a Cannula (Dasi Report ¶¶ 345, 380-82, and 391-92)

First, Maquet has moved to strike Dr. Dasi's theory that Claim 1 of the '783 patent is invalid because "the written description supports only a 'blood pump' connected to a cannula, but not a blood pump that *includes* a cannula."  (Dkt. No. 387-1 ¶ 345).  Maquet contends that "[t]his is an entirely new theory that Abiomed failed to disclose in its invalidity contentions or through discovery."  (Dkt. No. 386, at 6).  Abiomed responds that Dr. Dasi provides a permissible explanation of the "amply-disclosed theory" that "intravascular blood pump" lacks written description.  (Dkt. No 398, at 3).

Abiomed's final invalidity contentions alleged that the claim term "intravascular blood pump" lacks written description.  (Dkt. No 387-2, at 84-87).  It provided a single explanation for why:  the '783 patent only disclosed cable-driven pumps.  (*Id.*).  While Dr. Dasi's expert report supports that explanation, it also provides "a further reason for why" that was not disclosed in the final invalidity contentions:  the '783 patent only disclosed a blood-pump connected to a cannula.  (Dkt. No 387-1 ¶ 342, 345).

Abiomed's invalidity contentions disclosed the general ground for invalidity ("lack of written description"); the claim limitation at issue ("intravascular blood pump"); and the ground (the patent only disclosed cable-driven pumps).  But Dr. Dasi's report adds a new explanation ("supports only a 'blood pump' connected to a cannula").  If the local rules governing invalidity contentions simply required Abiomed to state the legal conclusion "intravascular blood pump invalid for lack of written description," without more, then the late disclosure of this new explanation would be permissible.

However, that is not the case.  While the local rules do not specify the requisite detail for "assert[ing] grounds of invalidity," they do require the party asserting invalidity to disclose evidence "sufficient to support" its invalidity defense.  L.R. 16.6(d)(4)(F), (G).  Such a disclosure necessarily requires that a party go beyond a bare legal conclusion, as such evidence would be meaningless without some sort of underlying explanation or theory of how it supports the invalidity defense.  The local rules therefore require the party asserting invalidity to disclose its underlying reasoning to at least some reasonable extent.

Moreover, mandating disclosure of invalidity theories is consistent with one of the principal purposes of the local patent rules, which is "allow[ing] the plaintiff to pin down the defendant's theories of defense, thus confining discovery and trial preparation to information that is pertinent to the theories of the case." *O2 Micro Int'l Ltd.*, 467 F.3d at 1365.  Here, Abiomed bears the burden of proof as to invalidity.  *See* 35 U.S.C. § 282.  If it were permitted to introduce alternative invalidity theories after the close of fact discovery, then Maquet would be forced to explore, during the discovery period, all possible ways that "intravascular blood pump" might be invalid for lack of written description, as it would not have notice of which theory Abiomed would ultimately choose to assert.  That would make "[t]he contentions requirement . . . virtually meaningless as a mechanism for shaping the conduct of discovery and trial preparation." *O2 Micro Int'l Ltd*, 467 F.3d at 1366.

Abiomed did not move to amend its invalidity contentions to include the theory that the written description for "intravascular blood pump" supports only a "blood pump" connected to a cannula.  The Court will therefore strike ¶¶ 345, 380-82, and 391-92 in Dr. Dasi's expert report.

## 2. Written-Description Opinions Citing the '100 Patent (Dasi Report ¶¶ 383-92)

Next, Maquet asks the Court to strike the portions of Dr. Dasi's report that cite to U.S.

Patent No. 7,022,100 ("the '100 patent") as support for his written-description opinions.  (Dkt. No. 386, at 8).  The '100 patent is an earlier related patent in the same family as the '783 patent, and was the subject of *Abiomed I*.  Dr. Dasi's expert report contains a section entitled "Earlier Related Patents in the Family Support My Opinion."  (Dkt. No. 387-1 ¶¶ 383-93).  In it, he describes how the '100 patent supports both the cable-driven (¶¶ 383-90) and the "'blood pump' connected to a cannula" (¶¶ 391-92) theories.  Because the Court will strike the second theory, it will address only ¶¶ 383-90, which concern the cable-driven theory.

Abiomed's final invalidity contentions do not cite to the '100 patent for support of its disclosed theory that the written description supports only cable-driven pumps.  However, while Local Rule 16.6(d)(4)(G) requires the party asserting invalidity to disclose "sufficient" evidence for its theories, it does not mandate disclosing *all* evidence.  *See Oracle Am., Inc. v. Google Inc.*, 2011 WL 4479305, at *3 (N.D. Cal. Sept. 26, 2011) (stating that a local patent rule "did *not* require identification of every evidentiary *item of proof* showing that the accused element did in fact practice the limitation."); *American Fireglass v. Moderustic, Inc.*, 365 F. Supp. 3d 1062, 1074 (S.D. Cal. 2019) ("A 'citation to previously undisclosed references may be permissible . . . where these references are used to *support* a theory of invalidity that has been disclosed in a party's invalidity contentions.'" (quoting *Volterra Semiconductor Corp. v. Primarion, Inc.*, 796 F. Supp. 2d 1025, 1099 (N.D. Cal. 2011))).  Maquet's expert had the opportunity to respond to Dr. Dasi's analysis in his rebuttal report.  Moreover, Maquet has been litigating the '100 patent since 2016.  *See Abiomed I*.  Its relevance in this closely related dispute could hardly come as a surprise to Maquet.  The Court will therefore deny the motion to strike ¶¶ 383-90 of Dr. Dasi's expert report.

### 3.     Written-Description Opinions on Pigtail or J-Shaped Distal Tip (Dasi Report ¶¶ 396 and 426-29)

Maquet has also moved to strike Dr. Dasi's opinions that the '783 patent is invalid because it does not teach placing a pigtail or J-shaped distal tip onto an intravascular blood pump.

In its final invalidity contentions, Abiomed disclosed that it intended to challenge the term "a pigtail shaped distal tip or a J-shaped distal tip" in Claim 24 as invalid for lack of written description. (Dkt. No. 387-2, at 106-10). It explained that a person of ordinary skill in the art would not consider the pigtail to be related to a guide wire, much less that it could serve as the lumen for a guide wire. (*Id.* at 108). Abiomed did not, however, discuss the placement of the pigtail. Dr. Dasi's expert report does refer to that placement; his report adds: "Second, . . . the specification does not teach placing a pigtail shaped distal tip *onto an intravascular blood pump* or a J-shaped distal tip *onto an intravascular blood pump*." (Dkt. No. 387-1 ¶ 396).

Dr. Dasi's placement theory poses the same issue as the late-disclosed "'intravascular blood pump' connected to a cannula" theory discussed above. In its invalidity contentions, Abiomed disclosed the general ground for invalidity ("lack of written description") and the claim limitation ("a pigtail [or J] shaped distal tip"), but adds a new explanation or theory (pigtail placement) through Dr. Dasi's report. Abiomed was required to disclose that theory in its invalidity contentions. Because it did not, the Court will strike ¶¶ 396 and 426-29 of Dr. Dasi's expert report.

### B.     Obviousness Opinions in Dr. Dasi's Expert Report

Maquet also challenges five obviousness theories discussed in Dr. Dasi's expert report. Local Rule 16.6(d)(4)(E) requires the accused infringer to disclose "[i]nvalidity claim charts

identifying all prior art that such party contends anticipates or renders obvious the patent claims identified by the patentee." There are specific rules about what must be disclosed:

(i) For each such prior-art reference, the accused infringer shall specify whether it anticipates or renders the asserted claim obvious and shall also identify specifically where in each alleged reference each element of each asserted claim can be found. For each element that the accused infringer contends is a means-plus-function term under 35 U.S.C. § 112, the chart shall include the identity of the structures, acts, or materials in each prior-art reference that perform the claimed function.

(ii) If the accused infringer asserts that a combination of prior-art references renders a claim obvious, then the accused infringer shall identify each such combination and the reason to combine the references. For each combination, the accused infringer shall identify specifically where in the combination of references each element of each asserted claim can be found. For each element that the accused infringer contends is a means-plus-function term under 35 U.S.C. § 112, the chart shall include the identity of the structures, acts, or materials in each combination that performs the claimed function. If applicable, the accused infringer shall also identify the primary and secondary references in each such combination.

L.R. 16.6(d)(4)(E). The Court's scheduling order similarly required defendants to "identify prior art that anticipates or renders obvious the identified patent claims in question and, for each such prior art reference, shall specify whether it anticipates or is relevant to the obviousness inquiry." (Dkt. No. 36).

### 1. Obviousness Opinion on Siess-Voelker Device Modified by Hemopump (Dasi Report Section IX(B)(3)(c))

Dr. Dasi's expert report asserts that "Siess in view of Voelker and Hemopump renders obvious claims 1, 2, 3, and 24" and that a person of ordinary skill in the art would "have been motivated to modify the Siess-Voelker device based on the teachings of Hemopump relating to guide mechanisms and guide wires and fluid columns for detecting blood pressure." (Dkt. No. 387-1 ¶¶ 256-57). Maquet contends that this Siess/Voelker/Hemopump combination is a "new, never-before-seen theory" in the case. (Dkt. No. 386, at 11).

Without question, the local rules require Abiomed to disclose prior-art references and combinations.  *See* L.R. 16.6(d)(4)(E)(ii).  Abiomed contends that it did sufficiently disclose the Siss/Voelker/Hemopump combination.  It cites to its element-by-element primary reference chart for Siess along with its disclosure that "the Asserted Claims of the '783 patent are invalid . . . as obvious in view of Siess alone, or in combination with the reference(s) specifically identified . . . in the list below," which include Voelker and Hemopump.  (Dkt. No. 398, at 8-9 (quoting Dkt. No. 399-6, at 1)).  Abiomed's invalidity contentions also provided element-by-element claim charts for Voelker and Hemopump.  (Dkt. Nos. 387-10 to -12).  The invalidity contentions do not, however, specifically identify a three-part Siess/Voelker/Hemopump combination.

Abiomed's obviousness disclosures are at odds with the language and purpose of the local rules.  The local rules require the accused infringer to disclose "*each* such combination and the reason to combine the references."  L.R. 16.6(d)(4)(E )(ii) (emphasis added).  In addition, "[f]or each combination, the accused infringer shall identify *specifically* where in the combination of references each element of each asserted claim can be found."  *Id.* (emphasis added).  The disclosure of a list of prior art that might be combined in some manner is not the same as disclosure of an actual combination.  *See, e.g.*, *Pactiv Corp. v. Multisorb Techs., Inc.*, 2013 WL 2384249, at *3 (N.D. Ill. May 29, 2013) (excluding combinations of prior art that were disclosed only in an "exemplary claim chart" that "did not 'exhaust the permutations for combinations of primary art'").  The claim charts included with Abiomed's invalidity contentions listed dozens of secondary references, such that combining multiple secondary references would result in many thousands of possible combinations.  (Dkt. No. 387-3, at 1-4).

Maquet was not required to sift through all possibilities to guess which Abiomed's expert would ultimately assert.

Because the three-part combination of Siess/Voelker/Hemopump was not specifically disclosed, the Court will strike Section IX(B)(3)(c) of Dr. Dasi's report, along with the portions of Exhibit 8 to the report that discuss the Siess/Voelker/Hemopump combination.  (Dkt. No. 387-4, at 25-28 (highlighting relevant portions of Exhibit 8)).

### 2.     Obviousness Opinions on Siess Modified with Voelker (Dasi Report ¶¶ 251-55)

Next, Maquet has moved to strike obviousness opinions in Dr. Dasi's report based upon undisclosed modifications.  Maquet contends that Dr. Dasi's opinion concerning modification of Siess by Voelker's rapid exchange guide mechanism is new.[1]  Abiomed did disclose that Siess may be modified with "an integrated lumen on the cannula, for example, by using a conventional 'side rigger' implementation," as "specified in the references above" that, among dozens of other references, include Voelker.  (Dkt. No. 387-3, at 47).  In the Voelker chart, it specifically identifies Voelker's side-rigger configuration.  (Dkt. No. 387-11, at 29).  While "in the references above" introduces some ambiguity, Abiomed did identify Voelker for its referenced "side rigger" implementation.  It would be reasonable under the circumstances to expect that Maquet would recognize that it was a combination with Voelker that was being disclosed.

While the local rules do require the accused infringer to disclose the "reason" for an identified prior-art combination, expert reports need not repeat the invalidity contentions word-

---

[1] In addition, Maquet has moved to strike ¶¶ 225 and 231-34 of Dr. Dasi's report for introducing the theory that Aboul-Hosn would be modified by Jegaden's removable guide lumen to form a modified integrated guide lumen.  (Dkt. No. 386, at 12).  Maquet has also moved to strike those paragraphs for combining Aboul-Hosn with Hemopump, as disclosed in Jegaden, for limitations that it previously contended were disclosed by Aboul-Hosn alone.  (*Id.* at 16-19).  Because, as explained below, the Court will strike ¶¶ 225, 231-34 for the latter reason, it will not address whether the modification was proper.

for-word.  L.R. 16(d)(4)(E)(ii).  "The scope of contentions and expert reports are
not . . . coextensive," *Apple Inc. v. Samsung Elecs. Co.*, 2014 WL 173409, at *1 (N.D. Cal. Jan.
9, 2014), and an "expert's further explanation of [a previously disclosed] theory is proper as
elaboration on [that] theory," *Bombardier Recreational Prods., Inc. v. Arctic Cat, Inc.*, 2016 WL
8291968, at *9 (D. Minn. Apr. 19, 2016), *aff'd in part, rev'd in part on other grounds*, 2017 WL
690186 (D. Minn. Feb. 21, 2017).  While Dr. Dasi's report goes beyond the invalidity
contentions to some extent, it is a difference of degree rather than kind.  Maquet was on notice of
the combination and reasons for it, and the modification discussed by Dr. Dasi's report was not
substantially different from those disclosed.

The Court will therefore deny Maquet's motion to strike ¶¶ 251-55 of Dr. Dasi's expert
report.

### 3.    Single-Reference Obviousness Opinions on Aboul-Hosn (Dasi Report Exhibit 3, Claim Elements 1.e, 2, 3.b, 24.g, 24.h, 24.i, and 24.m)

Next, Maquet contends that Dr. Dasi's report improperly asserts new theories of single-
reference obviousness.  It contends that for certain limitations, Abiomed's invalidity contentions
expressly stated it would be "obvious" to modify with Aboul-Hosn and specifically stated the
reasons why.  Abiomed disclosed no modifications for claim elements 1.e, 2, 3.b, 24.g, 24.h,
24.i, and 24.m.  Nevertheless, Dr. Dasi's report asserts single-reference obviousness theories for
those claim elements.  (Dkt. No. 387-8 (annotating Exhibit 3 of Dr. Dasi's report)).  According
to Maquet, those obviousness theories should be struck because "it was reasonable for Maquet to
understand that Abiomed did not intend to rely on single-reference obviousness for those
limitations for which it did not disclose such a theory when other limitations did."  (Dkt. No.
386, at 14).  In response, Abiomed refers to the cover of its Aboul-Hosn claim chart, which states
that "the asserted claims of the '783 Patent . . . are invalid . . . as obvious in view of Aboul-Hosn

alone or optionally in view of the knowledge of a POSA."  (Dkt. No. 398, at 14 (citing Dkt. No. 399-2, at 1)).

The local rules do not require the disclosure of single-reference obviousness theories with the same specificity as prior-art combination obviousness theories.  Local Rule 16.6(d)(4)(E)(i) mandates that "[f]or each such prior-art reference, the accused infringer shall specify whether it anticipates or renders the asserted claim obvious and shall also identify specifically where in each alleged reference each element of each asserted claim can be found."  Unlike with prior-art combinations, reasons are not explicitly required.  *See* L.R. 16.6(d)(4)(E)(ii).

It is not clear whether the local rules require disclosure of proposed modifications or any other explanation of how a single reference renders a certain claim obvious.  While explanations of certain limitations, but not others, may have led Maquet to assume Abiomed was not contending obviousness for certain limitations, it is not clear the local rules required it to do so.  Under the circumstances, and without a clear violation, the Court will deny the motion to strike the single-reference obviousness theories.

### 4.    Aboul-Hosn Combined with Hemopump (Dasi Report Exhibit 4, Claim Elements 1.e, 2, 3.b, and 24.m)

Maquet has also moved to strike certain obviousness opinions for Aboul-Hosn combined with Hemopump.  The Aboul-Hosn claim chart in Abiomed's invalidity contentions alleges that claim elements 1.e, 2, 3.b, and 24.m are disclosed by Aboul-Hosn alone.  (Dkt. No. 387-7, at 41-53, 65-67, 72-79, 144-45).  Dr. Dasi's report, however, alleges that those claim elements are disclosed by Aboul-Hosn modified by Hemopump.  Abiomed contends that it did explicitly disclose the Hemopump-Aboul Hosn combination for at least claim element 1.e in its Hemopump claim chart.  (Dkt. No. 398, at 16-17).

Again, element-by-element charts, along with the general statement that any two references might be combined, are insufficient to meet the requirements of Local Rule 16.6(d)(4)(E)(ii) for disclosing prior-art combinations.  Furthermore, and in any event, disclosing Hemopump modified by Aboul-Hosn is not the same as disclosing Aboul-Hosn modified by Hemopump.  By alleging in the Aboul-Hosn claim chart that claim element 1.e was disclosed by Aboul-Hosn alone, it would be reasonable for Maquet to conclude that Abiomed would not be asserting a combination to meet that element.  Abiomed cannot, after the close of fact discovery, assert an alternative theory.

Because Dr. Dasi's report asserts new combinations without the required disclosures under the local rules, the Court will strike his obviousness opinions concerning Aboul-Hosn modified by Hemopump in the report and its Exhibit 4.  (Dkt. No 387-1 ¶¶ 225, 231-34, 238-43; Dkt. No. 387-5, at 27-32, 45-47, 51-59, 106-113 (annotating Exhibit 4 to Dr. Dasi's report)).

### 5.    Annotation of the "Axis Coaxial" Limitation (Exhibit 4, pp. 37-39, 46)

Finally, Maquet has moved to strike an annotation by Dr. Dasi of the "axis coaxial" limitation allegedly disclosed by Jegaden.  The annotation in Abiomed's invalidity contentions discloses one axis; Dr. Dasi's report discloses a different one.  (*Compare* Dkt. No. 387-10, at 59, *with* Dkt. No. 387-5, at 38).  For single-reference obviousness theories, the local rules require that the accused infringer "identify specifically where in each alleged reference each element of each asserted claim can be found."  L.R. 16.6(d)(4)(E)(i).  The axis is one such claim element. (Claim 1.f).  Having specified in its invalidity contentions where in the Jegaden reference the axis element could be found, Abiomed cannot, at least without leave of court, assert a different axis.  Moreover, the altered annotation is unlike the ones in *Pavo Sols. LLC v. Kingston Tech. Co., Inc.*, where the court declined to strike "minor" changes that "d[id] not set forth an

14

altogether new theory." 2019 WL 8138163, at *10 (C.D. Cal. Nov. 20, 2019). Here, Dr. Dasi's

axis moots arguments raised by Maquet in its rebuttal validity contentions, which suggests that

the new axis asserts an entirely new theory rather than explains an existing one. (Dkt. No. 406-1,

at 5). The Court will therefore strike the portions of Exhibit 4 of the Dasi report that disclose and

discuss the different axis. (Dkt. No. 487-5, at 37-39, 46).

## IV.    Noninfringement Theories in Dr. Dasi's Rebuttal Expert Report

Maquet has also moved to strike portions of Dr. Dasi's rebuttal expert report on the

ground that it advances three noninfringement theories allegedly absent from its final

contentions. In addition, it contends that certain of Dr. Dasi's opinions use a claim construction

inconsistent with that of the Court's, and thus should be struck.

The local patent rules require disclosure of noninfringement theories.[2] Under Local Rule

16.6(d)(4)(D), the accused infringer must disclose "[n]oninfringement charts identifying

specifically which elements of the asserted claims each accused product or method fails to

practice."

### A.    No "Second Lumen" Theory (Dasi Rebuttal Report ¶¶ 85-95, 100, 114-15, 147, 149, 152-53)

First, Maquet seeks to strike Dr. Dasi's theory that accused products do not meet Claim

1's "guide mechanism" limitation because the pigtail lumen is not a "second lumen" from the

cannula lumen. In its claim construction order, the Court construed Claim 1's "guide

mechanism" limitation as requiring a "second lumen [that] must be a separate structural element

---

[2] While the District of Massachusetts requires the disclosure of noninfringement theories, not all districts with local patent rules do. *See, e.g., Apple Inc. v. Samsung Elecs. Co.*, 2013 WL 3246094, at *2 (N.D. Cal. June 26, 2013) ("The rules notably do not require disclosure of theories of noninfringement . . . ."); *Clear with Computers, LLC v. Hyundai Motor Am., Inc.*, 2011 WL 11562328, at *1 (E.D. Tex. July 5, 2011) ("Under the Patent Rules, accused infringers are not required to disclose their theories of non-infringement."). Given this difference, the persuasive value of decisions from these districts for interpreting this district's local rules is limited.

from the cannula itself." (Dkt. No. 248, at 11). Maquet has maintained that the accused

product's pigtail satisfies the "guide mechanism" limitation. In his rebuttal expert report, Dr.

Dasi contends that the accused products do not meet that limitation because the pigtail lumen is

not a second, separate lumen from the cannula lumen. (Dkt. No. 414-1 ¶¶ 85-95, 100, 114-15,

147, 149, 152-53). Rather, he asserts that a "full lumen" extends through the pigtail, inlet cage,

cannula, pump housing, impeller, and outflow cage. (*Id.* ¶ 91).

Maquet maintains that Dr. Dasi's "no second lumen" theory is "entirely new." (Dkt. No.

413, at 6). Upon reviewing Abiomed's final noninfringement contentions and Dr. Dasi's rebuttal

report, the Court agrees. In its final amended noninfringement contentions, Abiomed disclosed

several theories as to why the accused products' pigtail does not infringe the "guide mechanism"

limitation. (Dkt. No. 414-2, at 4-16). None indicated that the accused products did not have a

second lumen. In its opposition, Abiomed points to several sentences in its noninfringement

contentions that could support a "no second lumen" theory. (Dkt. No. 476, at 5-6). However,

read in context, they address other theories that are either inconsistent with or different than there

being a single "full lumen."[3]

While Abiomed did disclose several theories as to why the accused products do not meet

the "guide mechanism" limitation, the local rules require "identifying specifically which

elements of the asserted claims each accused product or method fails to practice." L.R.

16.6(d)(4)(D). Prior to Dr. Dasi's rebuttal report, Abiomed had not disclosed that the accused

---

[3] For example, Abiomed quotes a portion of its noninfringement contentions that states that "[t]he guidewire, and the lumen through which it slides, are at the center of the Impella cannula, then pass through the rotor blades to the outlet cage." (Dkt. No. 476, at 5 (quoting Dkt. No. 414-2, at 8)). But that sentence is in support of the theory that the accused products' pigtail "is not one of the three types of 'guide mechanisms' that fall within the scope of the claims." (Dkt. No. 414-2, at 5). In the same paragraph, Abiomed also contends that "the accused pigtail and its lumen are not an 'over-the-wire' guide mechanism because they do not extend coaxially through the catheter, pump, and cannula." (*Id.* at 8). That contention is seemingly inconsistent with the theory that the pigtail's lumen *is* the same lumen that extends through the cannula.

products fail to practice the "second lumen" as required by the Court's claim construction. Introducing such a theory through a rebuttal report gives Maquet no opportunity to respond with fact or expert discovery.  *See Asia Vital Components Co. v. Asetek Danmark A/S*, 377 F. Supp. 3d 990, 1003 (N.D. Cal. 2019) ("A rule that an accused infringer may wait until its expert rebuttal report to set forth theories of non-infringement for the first time would forfeit the benefits of contention interrogatories.").  It was reasonable for Maquet to confine discovery to the theories disclosed.  The Court will therefore strike ¶¶ 85-95, 100, 114-15, 147, 149, 152-53 of Dr. Dasi's rebuttal report to the extent that they discuss that theory.

**B.    "Free Space Between the Rotor Blades" Theory (Dasi Rebuttal Report ¶¶ 85-88, 96-100, 114-15, 147, 149, 152-53)**

In its claim construction order, the Court construed the term "guide mechanism comprising a lumen" as including the limitation that the guide wire lumen "does not extend through the free space between the rotor blades."  (Dkt. No. 248, at 14-15).  Maquet contends that Dr. Dasi's rebuttal expert report asserts a new theory that the accused products do not infringe because they do, in fact, contain a guide wire lumen that extends through the free space between the rotor blades.  The rebuttal report states that a "full" lumen comprising the pigtail, inlet cage, cannula, pump housing, and cannula extends through the rotor blade, and therefore does not meet the Court's construction of the claim limitation.  (Dkt. No. 414-1 ¶ 87).  Maquet also contends that that theory misconstrues the Court's claim construction, and thus should be struck on that ground as well.

Abiomed does not identify any portion of its noninfringement contentions that addresses the claim construction that the guide mechanism's guide wire lumen does not extend through the free space between the rotor blades.  While its contentions do mention that the "guidewire, and the lumen through which it slides" pass through the rotor blades, it does so as part of a

contention that the accused products' pigtail is not a "side rigger"/"rapid-exchange" guide mechanism. (Dkt. No 414-2, at 8). The contentions draw no connection to the "free space" construction, and Maquet had no notice that Abiomed would rely on that element to assert noninfringement. The Court will strike ¶¶ 85-88, 96-100, 114-15, 147, 149, 152-53 of Dr. Dasi's rebuttal report. Because the Court finds that Dr. Dasi's rebuttal expert report impermissibly introduces new noninfringement theories, it does not reach the issue of whether those theories are contrary to this Court's claim construction.

### C. "EasyGuide Lumen" Theories (Dasi Rebuttal Report ¶¶ 85-86, 101-09, 147, 149, 152-53)

Maquet next takes issue with Dr. Dasi's theory that certain accused products do not infringe due to the "EasyGuide Lumen." The EasyGuide Lumen is not mentioned specifically in Abiomed's noninfringement contentions. Abiomed contends, however, that the EasyGuide Lumen was sufficiently addressed in its 2019 Supplemental Preliminary Non-Infringement Contentions. (Dkt. No. 477-3, at 5 ("The accused products also do not infringe because the guidewire and the EasyGuide Lumen extend through the free space between the rotor blades.")). Abiomed removed that reference in its 2025 Amended Non-Infringement Contentions, although those final contentions did explicitly incorporate by reference all of its preliminary noninfringement contentions. (Dkt. No 414-2, at 1).

The local patent rules are designed to narrow issues over the course of the litigation. It would undermine that purpose to allow Abiomed to eliminate any reference to a preliminary contention in a subsequent set of amended contentions, and then insert that preliminary contention back into the case on the ground that the amended contentions incorporated all of its preliminary contentions by reference. In such a case, amended contentions would only ever expand issues, never narrow them. The Court does not now decide whether earlier contentions

may ever be incorporated by reference in later disclosures; rather, it is sufficient to say that Abiomed cannot use a rebuttal expert report to expand upon a single sentence from a preliminary contention served six years earlier.  Moreover, Maquet's expert did not discuss the EasyLumen, and thus Dr. Dasi's assertion of the theory in his rebuttal report was not in response to an issue raised by Maquet.  The Court will therefore strike the discussion of the EasyGuide Lumen at ¶¶ 85-86, 101-09, 147, 149, 152-53.

## V.  Ensnarement

Finally, Maquet has moved to strike the portions of Dr. Dasi's rebuttal expert report that discuss ensnarement.  (Dkt. No. 413, at 12-13).  That issue overlaps with Abiomed's motion for partial summary judgment of noninfringement under the doctrine of equivalents for ensnarement of prior art.  (Dkt. No. 432, at 8-10).  The Court will address the ensnarement disputes raised by both motions here.

### A.  Background on Ensnarement

Maquet has asserted theories of infringement under the doctrine of equivalents for a number of claim limitations.  On July 15, 2025, two weeks after the close of fact discovery and one week before opening expert reports were due, Abiomed's counsel emailed Maquet's counsel concerning the doctrine-of-equivalents theories disclosed in Maquet's final infringement contentions.  (Dkt. No. 434-6).  Abiomed asserted an ensnarement defense and asked Maquet to provide hypothetical claims by the deadline for opening expert reports.  (*Id.*).  The parties do not dispute that the July 15 email was the first time that Abiomed had raised the issue of ensnarement in this case.[4]  Maquet declined to engage in hypothetical claim or other ensnarement analysis on the ground that the assertion of the defense was untimely.  (*Id.*).

---

[4] Abiomed contends that Maquet was on notice of its ensnarement defense because its expert had raised ensnarement in *Abiomed I*.  (Dkt. No. 476, at 14-15).  However, that was in a different case concerning a different

On July 25, 2025, the parties served opening expert reports.  Maquet's expert, Boris Leschinsky, asserted a doctrine-of-equivalents theory as to thirteen claim limitations.  (Dkt. No. 433 ¶¶ 12-24).  Abiomed's expert, Dr. Dasi, did not directly discuss the ensnarement defense.  (Dkt. 387-1).  He did, however, provide an element-by-element mapping of how prior art disclosed the asserted claims.  (Dkt. No. 504-4).

On August 22, 2025, the parties served rebuttal expert reports.  In his rebuttal report, Dr. Dasi addressed the issue of ensnarement.  (Dkt. No. 414-1 ¶¶ 995-1000).  On October 2, 2025, Maquet moved to strike those portions of Dr. Dasi's rebuttal report.  (Dkt. No. 412).  The next day, Abiomed moved for partial summary judgment of noninfringement under the doctrine of equivalents, based in part on the contention that Maquet failed to meet its burden to prove that its equivalence theories did not ensnare prior art.  (Dkt. No. 431).  Maquet did not move for summary judgment of infringement under its doctrine-of-equivalents theories.

### B.    Legal Standard

A patentee may be able to prove infringement even if an accused device does not literally infringe a claim.  *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997).  Under the doctrine of equivalents, an accused product may "be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention."  *Id.* at 21.  The patentee "bears the burden of proving it is entitled to 'the range of equivalents which it seeks.'"  *Jang v. Boston Scientific Corp.*, 872 F.3d 1275, 1287 (Fed. Cir. 2017) (quoting *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 677, 685 (Fed. Cir. 1990)).  That burden of persuasion never shifts.  *See Streamfeeder, LLC v.*

---

patent and different (albeit similar) claim limitations, and cannot reasonably be assumed to have put Maquet on notice that Abiomed intended to raise ensnarement in this case.

*Sure-Feed Sys., Inc.*, 175 F.3d 974, 982-83 (Fed. Cir. 1999). "[I]nfringement, whether literal or under the doctrine of equivalents, is a question of fact." *Id.* at 981.

The doctrine of equivalents, however, is subject to a number of limitations. Ensnarement is one. "A patentee may not assert 'a scope of equivalency that would encompass, or ensnare, the prior art.'" *Intendis GMBH v. Glenmark Pharms. Inc., USA*, 822 F.3d 1355, 1363 (Fed. Cir. 2016) (quoting *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1322 (Fed. Cir. 2009)). To do so, the patentee would be asserting a right over claims that would not have been patentable independently. Ensnarement is an affirmative defense to infringement, whether literal or under the doctrine of equivalents. *Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1323 (Fed. Cir. 2000). The accused infringer has the burden of production to "come forward with evidence to establish this defense." *Id.* at 1323. While the patentee maintains the burden of persuasion, it need not "negate an affirmative defense that has not been [pleaded] and supported with evidence." *Id.* Unlike infringement, "ensnarement is a legal question for the district court to decide." *Jang*, 872 F.3d at 1288.

There is no single method to determine whether a claim of equivalence ensnares prior art. *See Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1576 (Fed. Cir. 1994); *Jang*, 872 F.3d at 1285 n.4. One option is a hypothetical claim analysis. *See Int'l Visual Corp. v. Crown Metal Mfg. Co.*, 991 F.2d 768, 772 (Fed. Cir. 1993) ("Hypothetical claim analysis is an optional way of evaluating whether prior art limits the application of the doctrine of equivalents."). That method involves a "two-step process." *Intendis GMBH*, 822 F.3d at 1363. First, the patentee "construct[s] a hypothetical claim that literally covers the accused device." *Id.* (quoting *DePuy Spine*, 567 F.3d at 1324); *see also Ultra-Tex Surfaces, Inc. v. Hill Bros. Chem. Co.*, 204 F.3d 1360, 1364 (Fed. Cir. 2000). Second, "prior art introduced by the accused infringer is assessed

to 'determine whether the patentee has carried its burden of persuading the court that the hypothetical claim is patentable over the prior art.'" *Intendis GMBH*, 822 F.3d at 1363 (quoting *DePuy Spine*, 567 F.3d at 1325)).

### C.    <u>Analysis</u>

Maquet contends that Abiomed waived its ensnarement defense by failing to raise it before the close of fact discovery.  (Dkt. No. 413, at 12).  It has moved to strike those portions of Abiomed's rebuttal expert report that discuss ensnarement.  Abiomed disagrees that its defense is untimely and alleges that an ensnarement defense may be asserted as late as a pretrial motion *in limine*.  (Dkt. No. 476, at 15).  Abiomed further contends that once it raised its ensnarement defense, Maquet, as the patentee, had the burden to propose a hypothetical claim.  (*Id.* at 14).  It has moved for partial summary judgment of noninfringement under the doctrine of equivalents on the ground that Maquet failed to meet that burden.  (Dkt. No. 432, 8-10).  Maquet responds that it need not propose a hypothetical claim until *after* Abiomed puts forward evidence of ensnared prior art, and Abiomed has not done so.  (Dkt. No. 480, at 13-14).  In its reply brief, Abiomed contends it did identify ensnared prior art through Dr. Dasi's element-by-element mapping in his opening report.  (Dkt. No. 502, at 7).

### 1.    <u>Timeliness of Abiomed's Ensnarement Defense</u>

As to the timeliness issue, *Jang v. Boston Scientific Corp.* is instructive.  In *Jang*, the Federal Circuit found that there is "nothing legally unsound in [the alleged infringer] raising ensnarement through its pretrial motion in limine, and the district court conducting a post-trial hearing on the defense contingent on an infringement verdict under the doctrine of equivalents." 872 F.3d 1275, 1288 (Fed. Cir. 2017).  It appears, therefore, that unlike other affirmative defenses, ensnarement need not even be pleaded.  *See* Fed. R. Civ. P. 8(c); *Jewelers Mut. Ins.*

*Co. v. N. Barquet, Inc.*, 410 F.3d 2, 11 (1st Cir. 2005) ("Affirmative defenses must be [pleaded] or they will generally be deemed waived and excluded from the case.").

*Jang* did not hold, however, that the defense of ensnarement can never be waived. The Federal Circuit left open the possibility that prejudice to the opposing party may bar an untimely ensnarement defense. *See Jang*, 872 F.3d at 1289 (finding no prejudice by "any lack of pretrial discovery as to ensnarement" because "between the jury's verdict and the ensnarement hearing, the parties had three weeks to develop evidence, expert opinion, and argument." (citation modified)).

Nonetheless, it is very much unclear when a party must raise an ensnarement defense. It is true that district courts have wide discretion in enforcing court-ordered deadlines and local rules. *See Rivera-Aponte v. Gomez Bus Line, Inc.*, 62 F.4th 1, 7 (1st Cir. 2023); *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1292 (Fed. Cir. 2005). But here, neither the local rules governing patent cases nor the Court's scheduling order specify the appropriate time to raise an ensnarement defense. (Dkt. No. 36; L.R. 16.6). The Court cannot, therefore, preclude the defense as untimely on that basis.

Under the circumstances—without a clear court-ordered deadline and with months remaining before trial—the Court cannot say that Abiomed has waived its ensnarement defense, or that Maquet has suffered unfair prejudice. At the time the defense was raised, the parties had not yet served expert reports nor had trial been scheduled. And there remains ample time, even now, to cure any prejudice as to Maquet. In short, while the Court certainly does not endorse, as a general matter, the practice of asserting ensnarement after the close of fact discovery, it will not strike the relevant portions of Dr. Dasi's rebuttal report as untimely.

### 2.    <u>Hypothetical Claim Analysis</u>

The second issue is the order of operations in a hypothetical-claim analysis.  District court cases point opposite ways.  *Compare Fluidigm Corp. v. IONpath, Inc.*, 2021 WL 292033, at *8 (N.D. Cal. Jan. 28, 2021)  ("[P]atent owner asserts that an accused infringer must identify specific prior art before any ensnarement analysis occurs.  Not so.  The ensnarement analysis begins with the patent owner's articulation of a 'hypothetical claim that literally covers the accused device.'" (quoting *Jang*, 872 F.3d at 1285-87)), *with Arigna Tech. Ltd. v. Nissan Motor Co., Ltd.*, 2022 WL 18046696, at *3 (E.D. Tex. Oct. 24, 2022) ("[T]he accused infringer bears the initial burden of producing evidence of ensnared prior art to challenge a doctrine of equivalents infringement theory.").

The Court concludes that Abiomed has the initial burden to identify allegedly ensnared prior art before Maquet proposes a hypothetical claim.  First, the ensnarement defense carries with it a burden of production.  *See National Presto Indus., Inc. v. West Bend Co.*, 76 F.3d 1185, 1192 (Fed.Cir.1996) ("When the patentee has made a prima facie case of infringement under the doctrine of equivalents, the burden of coming forward with evidence to show that the accused device is in the prior art is upon the accused infringer.").  It is not enough to simply name the defense.  If Abiomed were to raise the ensnarement defense, and never "come forward with evidence to establish this defense," it would fail to meet its burden of production and Maquet would prevail.  *Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1323 (Fed. Cir. 2000).  Maquet "is not required to negate an affirmative defense that has not been [pleaded] and supported with evidence." *Id.*  Of course, Maquet still bears the burden of proving infringement, but it cannot respond to something that has not yet been asserted.  *See id.* ("Absent any evidence proffered by

[the alleged infringer] to show that its device was in the prior art, there was nothing for [the patentee] to rebut.").

Furthermore, Maquet has no obligation to engage in a hypothetical-claim analysis at all. Hypothetical-claim analysis is just one option for Maquet to meet its burden of persuasion. Another method is to "directly compare[] the prior art with a single element . . . of the accused device in an attempt to determine the extent to which prior art limits the application of the doctrine of equivalents." *Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1576 (Fed. Cir. 1994). Such a method requires, first, the identification of prior art. It follows that the patentee's burden to prove that its asserted equivalents do not ensnare prior art cannot precede the accused infringer's burden of production. Without the produced prior art, there would be nothing to analyze. Abiomed has the burden of production to come forward with evidence supporting ensnarement before Maquet must address the affirmative defense, through hypothetical claim analysis or otherwise.

In its reply brief to its motion for summary judgment, Abiomed contends that it has satisfied its "burden of going forward" through the element-by-element mapping in Dr. Dasi's expert report, served on July 25, 2025. (Dkt. No. 502, at 7). Even so, Abiomed makes that argument too late. In its emails to Maquet and earlier briefings, Abiomed maintained that it did not need to meet its burden of production until Maquet proposed a hypothetical claim. (Dkt. No. 434-6; Dkt. No. 476, at 15). The reply brief is the first time Abiomed claims to have already met its burden. Under the circumstances, Maquet did not have sufficient notice of the allegedly ensnared prior art to propose a hypothetical claim or other analysis for purposes of summary judgment. The issue is not yet ripe.

In summary, Abiomed has not raised ensnarement so late that the issue is waived. The Court will therefore deny Maquet's motion to strike the portions of Dr. Dasi's rebuttal report that address ensnarement. However, Abiomed did not meet its burden of going forward prior to filing its motion for partial summary judgment. In a separate memorandum and order addressing Abiomed's motion for partial summary judgment of noninfringement, the Court will deny Abiomed's motion as to ensnarement.

## VI.    **CONCLUSION**

For the foregoing reasons, the motions of plaintiff Maquet Cardiovascular LLC to strike portions of Dr. Dasi's expert report (Dkt. No. 385) and rebuttal expert report (Dkt. No. 412) are GRANTED in part and DENIED in part. Specifically, the Court:

- GRANTS the motion to strike ¶¶ 345, 380-82, and 391-92 of Dr. Dasi's expert report.

- DENIES the motion to strike ¶¶ 383-90 of Dr. Dasi's expert report.

- GRANTS the motion to strike ¶¶ 396 and 426-29 of Dr. Dasi's expert report.

- GRANTS the motion to strike Section IX(B)(3)(c) of Dr. Dasi's expert report, along with the related portions of Exhibit 8 to the report. (Dkt. No. 387-4 (annotating Exhibit 8)).

- DENIES the motion to strike ¶¶ 251-55 of Dr. Dasi's expert report.

- DENIES the motion to strike the single-reference obviousness theories in Exhibit 3 of Dr. Dasi's expert report.

- GRANTS the motion to strike ¶¶ 225, 231-34, 238-43 of Dr. Dasi's report and the related portions of Exhibit 4. (Dkt. No. 387-5 (annotating Exhibit 4)).

- GRANTS the motion to strike the new axis in Exhibit 4 of Dr. Dasi's report. (Dkt. No. 387-5 (annotating Exhibit 4)).

- GRANTS the motion to strike the theories concerning Claim 1's "guide mechanism" at ¶¶ 85-109, 114-15, 147, 149, 152-53 of Dr. Dasi's rebuttal expert report.

- DENIES the motion to strike the ensnarement theories at ¶¶ 995-100 of Dr. Dasi's rebuttal expert report.

**So Ordered.**


                                            /s/ F. Dennis Saylor IV
                                            F. Dennis Saylor IV
Dated: January 16, 2026                     United States District Judge