# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| _____ ) | |
| MAQUET CARDIOVASCULAR LLC, ) | |
| ) | |
| Plaintiff/Counterdefendant, ) | |
| ) | **Civil Action No.** |
| v. ) | **17-12311-FDS** |
| ) | |
| ABIOMED, INC., ABIOMED R&D, INC., ) | |
| and ABIOMED EUROPE GMBH, ) | |
| ) | |
| Defendants/Counterclaimants ) | |
| _____ ) | |

## MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION
## TO COMPEL AND MOTION FOR ADVERSE INFERENCE
## REGARDING ASSIGNOR ESTOPPEL PRIVITY

**SAYLOR, J.**

This is an action for patent infringement. It is the second lawsuit between the parties concerning a line of intravascular blood pumps. *See Abiomed, Inc. v. Maquet Cardiovascular LLC*, No. 16-cv-10914-FDS (D. Mass.) ("*Abiomed I*"). In this case, plaintiff Maquet Cardiovascular LLC has sued defendants Abiomed, Inc., Abiomed R&D, Inc., and Abiomed Europe GmbH for infringing U.S. Patent No. 10,238,783 (filed Sep. 21, 2018) ("the '783 patent"). Defendants (collectively, "Abiomed") have counterclaimed for declaratory judgment of noninfringement.

Maquet contends that Abiomed has spoliated evidence concerning Dr. Walid Aboul-Hosn, who is both the first-named inventor on the '783 patent, the rights to which are owned by Maquet, and a former consultant to Abiomed. It has moved (1) to compel discovery and (2) for an adverse inference that Dr. Aboul-Hosn is in privity with Abiomed for purposes of the doctrine of assignor estoppel.

The '783 patent issued in 2019.  The rights to that patent, which is the latest in the line of patents concerning intravascular blood pumps, are owned by Maquet.  Dr. Aboul-Hosn began working for Abiomed as a consultant in 2007, providing services in the research and design of intravascular blood pumps.  He was compensated for his services at a fairly high level, earning between €100,000 and €300,000 per year; by 2019, he had been paid more than €2,000,000 by Abiomed.

Abiomed hired Dr. Aboul-Hosn as a consultant, not an employee.  He worked primarily out of an office in Germany, using a company-owned computer.  When not in Germany, he used his personal laptop to access his Abiomed emails through a web portal.  Abiomed has apparently never identified, much less searched, Dr. Aboul-Hosn's company computer and, until November 2025, inaccurately maintained that he used his personal laptop to perform work for Abiomed.

Regardless of whether Dr. Aboul-Hosn accessed the Abiomed system through his company-provided computer or his personal laptop, it appears to be undisputed that he sent and received emails and other documents to others at Abiomed throughout the period of time he was a consultant—that is, from 2007 onward.

In January 2016, after Maquet had threatened litigation in December 2015, Abiomed sent him a litigation hold notice directing him to preserve documents.  Presumably, it did so because Abiomed recognized that it was likely he had relevant and discoverable documents.

Nonetheless, in October 2022, when Abiomed produced documents concerning work performed by Dr. Aboul-Hosn, it produced no emails prior to April 2016.  That was apparently because Abiomed had decommissioned the servers on which, at a minimum, his earlier emails were maintained.  While Abiomed was eventually able to recover his Office 365 account, which contains some additional emails, there are serious questions about its completeness.

If Abiomed had a document retention policy, it is not part of the record.  Nonetheless, it is a virtual certainty that there were emails to and from Dr. Aboul-Hosn on the Abiomed system from 2015 and earlier years that should have been preserved but were not.

Maquet has thus raised credible, indeed largely unrebutted, issues of spoliation. Nonetheless, the precise nature of the appropriate remedy is uncertain, as there are substantial gaps in the evidentiary record, and a dearth of evidence that Abiomed deleted ESI intentionally. For the reasons that follow, the motion to compel will be granted in part and denied in part, and the motion for an adverse inference will be denied without prejudice.

## I.    Background

The following facts are undisputed unless otherwise noted.

### A.    Dr. Walid Aboul-Hosn

Dr. Walid Aboul-Hosn has been involved in the development of intravascular blood pumps since 1982.  (Dkt. No. 451-1, at 14-18).  He is the first named inventor of U.S. Patent No. 7,022,100 and its progeny, which includes the '783 patent.

In 1996, Dr. Aboul-Hosn founded A-Med Systems, Inc., a company that endeavored to develop intravascular pumps used during heart surgery.  (*Id.* at 20-22).  While there, he invented the patented technology with his colleagues.  (Dkt. No. 451-2, at -158).  He worked at A-Med until October 2000, although he continued to consult for the company for a time thereafter.  (Dkt. No. 451-1, at 28-29).  At the time, he considered A-Med a direct competitor to Abiomed.  (*Id.* at 140-41).

In July 2002, Dr. Aboul-Hosn assigned to A-Med all his rights to the technology disclosed in the application for the '100 patent.  (Dkt. No. 451-2, at -160 to -61).  In January 2008, those rights were assigned to Maquet.  (*Id.* at -171).

In 2007, Dr. Aboul-Hosn began working for Abiomed as a consultant.  (Dkt. No. 451-3).

He did so approximately one year before Abiomed released the accused device in the United

States.  (Dkt. No. 451-5, at 3).

Dr. Aboul-Hosn primarily worked out of Abiomed's office in Aachen, Germany.  (Dkt.

No. 481-5 ¶ 3).  While there, he was provided by Abiomed with a computer that had limited

access to Abiomed servers.  (*Id.*).  He saved his work to those servers.  (*Id.* ¶ 4).  According to

Dr. Aboul-Hosn, he worked on Abiomed documents only on the provided computer, as he did

not have access to Abiomed shared resources and file servers from his personal computer.  (*Id.*

¶ 6).

When not in Germany, Dr. Aboul-Hosn used a web portal on a personal laptop to access

his Abiomed emails.  (*Id.* ¶ 5).  He has identified two personal laptops that he used to check his

Abiomed emails beginning in approximately 2016.  (*Id.* ¶¶ 8-9).

Dr. Aboul-Hosn ended his consulting work with Abiomed in late 2024.  (*Id.* ¶ 12).

Dr. Aboul-Hosn received between €100,000 and €300,000 per year for his consulting

work.  (Dkt. No. 451-1, at 155).  By 2019, he had received more than €2,000,000 in

compensation.  (*Id.*).

It is undisputed that Dr. Aboul-Hosn invented the technology that is the subject matter of

the asserted patent, and then began consulting with the accused infringer before the accused

products were offered for sale in the United States.  The parties dispute, however, the scope of

his involvement in the accused product line.  According to Maquet, his "role at Abiomed was

significant."  (Dkt. No. 450, at 3).  He was an "insider . . . sitting with the engineering and design

teams for Impella."  (Dkt. No. 451-4, at 114).  Abiomed disputes that characterization.  It alleges

that "he was not involved in the design or development of the accused Impella products," and

that he never worked with the employees who did design, engineer, and manufacture that line of products.  (Dkt. No. 479, at 8 (emphasis omitted)).  Instead, according to Abiomed, he assessed clinical issues and assisted with patent work.  (Dkt. No. 451-21 ¶¶ 8, 12).

### B.    Discovery Disputes Concerning Dr. Aboul-Hosn

Maquet first accused Abiomed of patent infringement in December 2015.  (Dkt. No. 451-8).  On January 21, 2016, Abiomed sent a litigation hold notice to Dr. Aboul-Hosn.  (Dkt. No. 451-10).[1]  Abiomed contends that he responded the same day, agreeing to comply with the terms of that notice.  (*Id.*).  One year later, Abiomed identified Dr. Aboul-Hosn as "an individual likely to have discoverable information" in its Rule 26(a) disclosures for *Abiomed I.*  (Dkt. No. 451-11).  The disclosure identified separate counsel as the point of contact for Dr. Aboul-Hosn.  (*Id.*).

In August 2018, during discovery in *Abiomed I,* Maquet sought to take Dr. Aboul-Hosn's deposition.  (Dkt. 451-12).  His counsel would not accept service of a deposition subpoena, and Maquet was unable to serve a subpoena on Dr. Aboul-Hosn in Lebanon, where he lives.  (*Id.*).

On August 22, 2019, counsel for Abiomed and counsel for Maquet deposed Dr. Aboul-Hosn in Brussels, Belgium.  (Dkt. No. 451-1, at 6).  He did not appear in response to a subpoena, but rather appeared voluntarily.  He was represented at the deposition by his separate counsel, whom Dr. Aboul-Hosn "assume[d] Abiomed" was paying for.  (*Id.* at 6-7, 225).

In the course of that deposition, Dr. Aboul-Hosn testified that Abiomed hired him as a consultant because it wanted his assistance in the research and design of intravascular heart pumps.  (*Id.* at 145).  When counsel for Maquet asked him if he, in fact, provided that assistance, his counsel instructed him not to answer the question.  (*Id.* at 145-46).  Dr. Aboul-Hosn refused

---

[1] That litigation-hold notice, and Dr. Aboul Hosn's response, have not been produced in discovery and are the subject of Maquet's motion to compel, which is addressed below.

to answer any question, in any form, concerning his participation in the creation of any Impella product for Abiomed.  (*Id.* at 146-52).  Indeed, counsel for Dr. Aboul-Hosn made it "very clear" that Dr. Aboul-Hosn would not "talk about his work at Abiomed."  (Dkt. No. 451-1, at 142, 146).  Counsel represented that Dr. Aboul-Hosn would not discuss that work due to the confidentiality provision of his consulting agreement and because he was appearing voluntarily.  (*Id.* at 183).  Counsel for Abiomed was present but declined to opine on Dr. Aboul-Hosn's confidentiality agreement.  (*Id.* at 185-85).

On September 6, 2019, Maquet filed several motions to compel in *Abiomed I*.  One motion sought to compel deposition testimony for a corporate representative under Fed. R. Civ. P. 30(b)(6).  (*Abiomed I*, Dkt. No. 404).  As part of that motion, Maquet sought to compel the deposition of a witness concerning "[a]ll facts and circumstances concerning communications between Abiomed and any third party relating to the Patents-in-Suit, . . . including communications between Abiomed and the named inventors of the Patents-in-Suit—Walid Aboul-Hosn, William Kanz, and Bruce Baker."  (*Abiomed I*, Dkt. No. 405, at 6).  The other motion sought to compel, among other things, discovery related to the issue of assignor estoppel. (*Abiomed I*, Dkt. No. 409, at 6).  The same day, Maquet filed a letter with the court addressing Abiomed's alleged obstruction of discovery related to Dr. Aboul-Hosn and the assignor-estoppel issue.  (*Abiomed I*, Dkt. No. 394).

On September 10, 2019, Maquet filed a motion for contempt on the ground that Abiomed had failed to provide responsive documents concerning the activities of Dr. Aboul-Hosn. (*Abiomed I*, Dkt. No. 418).

The discovery motions and the motion for contempt were referred to the assigned Magistrate Judge.  On November 22, 2019, Magistrate Judge Boal denied Maquet's motions to

6

compel discovery concerning Dr. Aboul-Hosn.  (*Abiomed I*, Dkt. No. 615, at 4, 6).  The motion

for contempt was also denied on the ground that Abiomed had been required to produce

technical documents only, not emails and other non-technical documents, with respect to

Maquet's requests for production.  (*Abiomed I*, Dkt No. 614, at 6).  Moreover, Maquet had not

designated Dr. Aboul-Hosn as a custodian for the purposes of ESI discovery, despite there being

a process for adding custodians if necessary.  (*Id.* at 6-7).  Maquet did not appeal those orders.

Prior to Judge Boal's discovery rulings in *Abiomed I*, Maquet had moved in this case for

leave to take ESI discovery concerning Dr. Aboul-Hosn.  (Dkt. No. 145).  Maquet sought

discovery that would result from the application of ten search terms across Dr. Aboul-Hosn's

emails, contending that the discovery was relevant to Abiomed's defense of assignor estoppel.

On September 12, 2022, the Court issued a memorandum and order on discovery motions

in this case.  (Dkt. No. 249).  The Court ordered additional discovery (albeit narrowed from

Maquet's request) concerning Dr. Aboul-Hosn, as it was "almost certainly relevant to the issue

of assignor estoppel, and possibly issues concerning infringement and damages."  (*Id.* at 6).  In

doing so, the Court noted that "[Dr.] Aboul-Hosn is apparently an independent contractor, not an

employee, and presumably, therefore, he is not subject to Abiomed's control.  And he apparently

resides outside the United States, and is therefore not subject to subpoena.  Nonetheless, the

discovery in question is not directed to [Dr.] Aboul-Hosn, but to Abiomed itself."  (*Id.*).  The

Court did not, at that time, consider the issues arising from Dr. Aboul-Hosn's deposition and his

refusal to answer questions concerning his work at Abiomed.  (*Id.*).

In response to that order, in October 2022 Abiomed produced ESI from Dr. Aboul-Hosn.

(Dkt. No. 345-1).  That production, however, did not contain any of Dr. Aboul-Hosn's emails

from before April 2016.  (Dkt. No. 296).  Abiomed later represented to Maquet that those emails

were on servers whose contents had been deleted.  (*Id.*).  According to Abiomed, before February 2, 2016, Abiomed had used onsite Microsoft Exchange servers to manage its emails.  (Dkt. No. 451-15).  These servers were annually backed up using tape storage.  (*Id.*).  On February 2, 2016, Abiomed activated an external Mimecast service that preserved all emails going forward.  (*Id.*).  Then, in 2017, Abiomed transitioned the onsite Microsoft Exchange servers to cloud-based Microsoft Exchange Online servers, then decommissioned the onsite servers.  (*Id.*).  It seems that Dr. Aboul-Hosn's pre-February 2016 emails were not transitioned to the cloud, or at least that Abiomed was not able to retrieve those emails, because Abiomed's "email collection [for Dr. Aboul-Hosn] contain[ed] the post-February 2, 2016 emails from the Mimecast service."  (*Id.*).

The discovery dispute was not resolved at that time, however, because the parties entered a stipulation that Maquet could not prove infringement based upon the Court's claim construction.  (Dkt. No. 274).  The Court entered a final appealable judgment and stayed the remainder of the case pending disposition of any appeal.  (Dkt. No. 275).

Meanwhile, in *Abiomed I*, Maquet moved for summary judgment on the issue of assignor estoppel.  (Dkt. No. 761).  In March 2023, the Court ruled in that case that there was a genuine issue of material fact as to "whether Abiomed is in privity with Dr. Aboul-Hosn for the purposes of the application of the doctrine of assignor estoppel."  (*Abiomed I*, Dkt. No. 1000, at 26).

In 2025, the Federal Circuit remanded *Abiomed II* and discovery resumed in this case.  On remand, Maquet has raised three discovery issues concerning Dr. Aboul-Hosn.

First, Maquet has raised a spoliation issue concerning the pre-2016 emails.  Again, Dr. Aboul-Hosn began consulting for Abiomed in 2007.  Abiomed sent a litigation hold notice to him in January 2016.  By the time Abiomed produced emails from Dr. Aboul-Hosn, in October

2022, all emails from Dr. Aboul-Hosn from before February 2016 had been deleted with Abiomed's decommissioned onsite servers.

Maquet first raised the spoliation issue in a letter to the Court in April 2025.  (Dkt. No. 296).  The Court ordered that any spoliation motion must be filed by May 13, 2025.  (Dkt. No. 297).  On May 10, days before the motion was due, Abiomed emailed Maquet that it had located Dr. Aboul-Hosn's Office 365 account, which purportedly contained emails from before February 2, 2016.  (Dkt. No. 451-10).

Maquet did not file a spoliation motion at that time, and Abiomed provided Maquet supplemental discovery from that account on May 16, 2025.  (Dkt. No. 345-2).  Maquet contends that there is an "absence of documents *generated by* or *sent from* Dr. Aboul-Hosn" in Abiomed's productions.  (Dkt. No. 450, at 7).  Abiomed maintains, however, that it produced "hundreds of emails that were sent from Dr. Aboul-Hosn," and submitted one as an exhibit that was sent before February 2, 2016.  (Dkt. No. 479, at 7; Dkt. No. 481-3).

On June 3, 2025, Maquet moved to compel additional discovery.  (Dkt. No. 315).  Among other things, it sought an order requiring that Abiomed supplement its October 2022 discovery production with ESI through January 2025.  (Dkt. No. 316, at 2-3).  While Abiomed initially opposed that disclosure, it did eventually produce those documents without a court order—although Maquet contends that the production did not contain any emails sent by Dr. Aboul-Hosn or any other documents generated by him.  (Dkt. No. 454, at 1).

Second, Maquet seeks to compel discovery from Dr. Aboul-Hosn's laptops.  In his 2019 deposition, Dr. Aboul-Hosn stated that he was given "a computer from the company [in other words, *not* a personal device] to work on."  (Dkt. No. 451-1, at 144).  In May 2025, when Maquet inquired into what computer Dr. Aboul-Hosn used, Abiomed responded that "[b]ecause

Dr. Aboul-Hosn was a consultant (and not an employee) for Abiomed, he conducted his work for Abiomed on a personal device," and that he "was represented by independent counsel and denied Abiomed access to his personal device." (Dkt. No. 451-17). Based on other evidence in the record, that statement was false, and is directly at odds with Dr. Aboul-Hosn's deposition testimony and the affidavit he later provided Abiomed.

In its June 3, 2025 motion to compel, Maquet also sought to compel production of ESI from Dr. Aboul-Hosn's personal laptops. Abiomed maintained that it did not have possession, custody, and control of Dr. Aboul-Hosn's laptops, given his status as an independent contractor. (Dkt. No. 344, at 3). Maquet cited to language in Abiomed's consulting agreement that suggested Abiomed could have exercised control over Abiomed information on the laptops, although at that point Dr. Aboul-Hosn was no longer consulting for Abiomed. (Dkt. No. 316, at 4-5; Dkt. No. 451-13). Over the summer of 2025, Abiomed communicated with Dr. Aboul-Hosn's separate counsel, who responded that he no longer represented him. (Dkt. No. 344, at 3-4). Abiomed then reached out to Dr. Aboul-Hosn directly. (Dkt. No. 453). At that time, according to Abiomed, Dr. Aboul-Hosn agreed to check his two personal laptops himself. One laptop, which he has used since around 2019, is operational, and he reported that his search did not produce any Abiomed documents. (Dkt. No. 481-5 ¶ 8). The second laptop, which was used from 2016 to 2019, had allegedly suffered smoke damage from a fire and was in storage in Germany. (*Id.* ¶ 9). Dr. Aboul-Hosn's son retrieved the laptop and shipped it to Dr. Aboul-Hosn in Lebanon. (*Id.* ¶ 10). He then allegedly took the laptop to a repair shop in Lebanon, but the repair shop was unable to turn it on or access any files on it. (*Id.*). The laptop remains at the repair shop. (*Id.*).

Any Abiomed-provided computer that Dr. Aboul-Hosn worked on in Germany has not, apparently, been identified, located, or searched.  (Dkt. No. 450, at 6).

Third, Maquet sought to take the deposition of Dr. Aboul-Hosn in this case.  In April 2025, Maquet contacted Abiomed concerning that deposition.  Abiomed replied that Dr. Aboul-Hosn was not an employee and that Maquet should contact his separate counsel.  (Dkt. No. 356-3).  Maquet contacted counsel who had represented Dr. Aboul-Hosn in his 2019 deposition, but did not receive a response.  (Dkt. No. 372, at 6; Dkt. No. 373-5).

On June 23, 2025, Abiomed moved to take the deposition of Dr. Aboul-Hosn, among other inventors.  (Dkt. No. 354).  Maquet opposed that request as untimely, given the imminent close of fact discovery, and the Court denied the motion in July.  (Dkt. No. 372; Dkt. No. 375).  Nevertheless, in August 2025, Abiomed secured an affidavit from Dr. Aboul-Hosn describing his work (or lack thereof) on the accused products.  (Dkt. No. 451-21).[2]

In October 2025, while its motion to compel remained pending, Maquet moved for an adverse inference concerning assignor estoppel privity based on the spoliation of ESI on Dr. Aboul-Hosn's work and personal laptops.  (Dkt. No. 449).  In response to that motion, in November 2025, Abiomed secured another affidavit from Dr. Aboul-Hosn explaining that he used an Abiomed-provided laptop while working in Germany and his personal laptops to access emails while elsewhere.  (Dkt. No. 481-5 ¶¶ 4-5).  He also stated that, while using the Abiomed-provided computer, he saved all his work to the Abiomed servers.  (*Id.* ¶¶ 4).  That declaration is

---

[2] That affidavit is hearsay.  *See* Fed. R. Evid. 801.  Moreover, it is on the very topic on which Maquet has repeatedly sought, without success, to depose Dr. Aboul-Hosn.  Because Maquet has never had the opportunity to cross-examine Dr. Aboul-Hosn on his work for Abiomed, the Court will not consider that affidavit in deciding the motions at issue here.

directly contradictory to the May 2025 statement from Abiomed's counsel that, as a contractor, Dr. Aboul-Hosn only performed Abiomed work on his personal laptop.  (Dkt. No. 451-17).

## C. **Procedural History**

Maquet filed a motion to compel discovery on May 20, 2025.  (Dkt. No. 315).  The motion sought the production of five categories of discovery:  (1) all ESI from Dr. Aboul-Hosn from October 2022 to January 2025; (2) ESI from Dr. Aboul-Hosn's laptops; (3) the litigation hold notice sent to Dr. Aboul-Hosn and his response; (4) certain documents withheld for claimed privilege and/or work-product protections; and (5) certain patent-opinion documents.  At the hearing on that motion, Maquet withdrew its request for the opinion documents.  (Dkt. No. 348, at 10).  The Court ordered Abiomed to produce claimed work-product privileged documents for *in camera* review.  (*Id.* at 21).  The Court also set aside the question of the production of the litigation hold, as it was apparently relevant only to the spoliation issue, and no spoliation motion had yet been filed.  (*Id.* at 22-23).  The Court ordered the parties meet and confer on the other issues.  Abiomed then produced the documents for *in camera* review.

On October 3, 2025, the parties each filed an update on the status of the motion to compel.  (Dkt. Nos. 453 and 454).  The parties represented that Abiomed had produced all ESI from Dr. Aboul-Hosn between October 2022 and January 2025 that it had located.  Accordingly, there remain three issues from the motion to compel:  (1) production of ESI from Dr. Aboul-Hosn's personal laptops, (2) production of the litigation-hold documents, and (3) claimed privileged documents submitted to the Court for *in camera* review.

On October 3, 2025, Maquet filed a motion for an adverse inference regarding assignor estoppel privity, based on the spoliation of ESI from Dr. Aboul-Hosn's work and personal laptops.  (Dkt. No. 449).

II.    **Motion to Compel**

    A.    **Legal Standard**

    Under Fed. R. Civ. P. 26(b),

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

    B.    **Analysis**

       1.    **ESI on Dr. Aboul-Hosn's Laptops**

    Dr. Aboul-Hosn has identified two personal laptops that he used to access his Abiomed email dating back to 2016. (Dkt. No. 481-5 ¶ 6). The first, in use from 2016 to 2019, is apparently nonoperational and in a repair shop in Lebanon. (*Id.* ¶ 9). The second, in use since 2019, is operational and in the possession of Dr. Aboul-Hosn. (*Id.* ¶ 8). According to his affidavit, he searched that laptop and found no Abiomed ESI. (*Id.*). Nevertheless, Maquet considers its motion to compel any relevant ESI stored on these laptops an open issue, as Abiomed itself never searched for any such data nor attempted to restore it. (Dkt. No. 454).

    The Court will not compel Abiomed to retrieve and search the personal laptops. The laptops are Dr. Aboul-Hosn's personal property, and he is no longer a consultant for Abiomed. He lives in Beirut, Lebanon, and, according to Abiomed, is dealing with significant health issues. (Dkt. No. 344, at 1). To be sure, Abiomed has a contractual right to Abiomed documents and confidential information on the laptops. (Dkt. Nos. 451-3, 451-13). However, its right to access his laptops presumes the existence of such information, and Dr. Aboul-Hosn represented that he

did not store such documents on his personal laptops.  (Dkt. No. 481-5, ¶ 6).  And it is unclear what, if any, power of compulsion Abiomed has over Dr. Aboul-Hosn.

Moreover, searching the laptops is not proportional to the needs of the case at this stage.  Taking Dr. Aboul-Hosn's affidavit as true, he used his personal laptops to access his Abiomed emails through a web portal and performed no other Abiomed work on them.  Any relevant ESI would be limited to emails since 2016, which Abiomed has already produced.  Furthermore, the laptop in use since 2016 is apparently nonoperational.  While conceivably an expert would be able to recover data, it is unlikely.  Any ESI on the laptop in use since 2019 also has limited discovery value, as the term of the '783 patent ended in 2020.

Given the difficulty of retrieving the laptops, the low probability of recovering responsive, non-duplicative ESI, and the questions about whether Abiomed has custody or control over documents on the laptops, the Court will deny the motion to compel as to Dr. Aboul-Hosn's personal laptops.  The Court will, however, consider Abiomed's actions with respect to Dr. Aboul-Hosn's laptops in connection with the motion for an adverse inference.

### 2. Withheld Communications Reviewed *In Camera*

Maquet seeks the production of twenty withheld or redacted documents that reflect correspondence with Dr. Aboul-Hosn.  It contends that Abiomed cannot treat Dr. Aboul-Hosn as an employee for purposes of shielding documents under the attorney-client privilege while simultaneously asserting that it is not in privity with him for purposes of assignor estoppel.  Abiomed maintains that those documents are protected by the work-product doctrine or attorney-client privilege.

Abiomed produced thirteen exhibits for *in camera* review.  Exhibits 1 and 2 were withheld on the ground of work-product protection, and Exhibits 3-13 were withheld on the ground of privilege.  The Court will address each set of documents in turn.

14

Rule 26(b)(3) essentially codifies the work-product doctrine.  It provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative."  Fed. R. Civ. P. 26(b)(3)(A).  Nevertheless, "those materials may be discovered if:  (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  *Id.*

Rule 26(b)(3) is limited to "things that are prepared . . . by or for another party or its representative."  Fed. R. Civ. P. 26(b)(3)(A); *see also F.T.C. v. Grolier Inc.*, 462 U.S. 19, 25 (1983) (stating that "the literal language of the Rule protects materials prepared for *any* litigation or trial as long as they were prepared by or for a party to the subsequent litigation").  The reviewing court must consider two questions:  (1) were the documents prepared in anticipation of litigation? and (2) has the party seeking discovery made a showing of substantial need and an inability without undue hardship, to obtain their substantial equivalent by other means?  *See Hoffman v. Owens-Illinois Glass Co.*, 107 F.R.D. 793, 794-95 (D. Mass. 1985).

Work-product protection may be waived by third-party disclosure.  *See Bryan Corp. v. Chemwerth, Inc.*, 296 F.R.D. 31, 38 (D. Mass. 2013).  That waiver is not automatic, however, and occurs "only when documents are used in a manner contrary to the doctrine's purpose, when disclosure substantially increases the opportunity for potential adversaries to obtain the information."  *Id.* at 40 (citation modified); *see also United States v. Massachusetts Inst. of Tech.*, 129 F.3d 681, 687 (1st Cir. 1997).  "[T]he critical inquiry 'is whether disclosure of documents protected by the work product doctrine . . . [substantially] increases the opportunities

for potential adversaries to obtain the information.'" *Bryan Corp.*, 296 F.R.D. at 40 (quoting *In re Raytheon Sec. Litig.*, 218 F.R.D. 354, 360 (D. Mass. 2003)).

Exhibits 1 and 2 are email chains from September 14, 2016, and November 23, 2016, respectively, that were withheld as protected work-product.  The email chains were initiated by outside counsel and seek assistance from Dr. Thorsten Siess, Abiomed's Chief Technical Officer, in addressing certain issues in pending or anticipated litigation.  Dr. Siess then forwarded the emails chains to Dr. Aboul-Hosn to seek his further assistance.  The email chains do not include Dr. Aboul-Hosn's responses, if there were any.

The emails were certainly prepared in anticipation of litigation.  Moreover, Dr. Aboul-Hosn's inclusion on these emails does not destroy the work-product privilege.  While he was not an Abiomed employee, he was not an adversary nor likely to disclose information to an adversary.  He was a longtime consultant and had entered into a contractual agreement not to disclose certain confidential Abiomed information.  (Dkt. No.  451-3).  Abiomed's communications with Dr. Aboul-Hosn did not substantially increase the risk for an adversary to obtain the information, and thus are protected work-product.  Maquet has not argued a "substantial need" for the otherwise protected documents under Rule 26(b)(3)(A)(ii).  The Court will therefore deny Maquet's motion to compel the documents marked for *in camera* reviews as Exhibits 1 and 2.

The attorney-client privilege, on the other hand, attaches to communications "(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." *Mississippi Pub. Employees' Ret. Sys. v. Bos. Sci. Corp.*, 649

F.3d 5, 30 n.23 (1st Cir. 2011) (quoting *Cavallaro v. United States*, 284 F.3d 236, 245 (1st Cir. 2002)).  The privilege "protects 'only those communications that are confidential and are made for the purpose of seeking or receiving legal advice,'" although the request for legal advice need not be explicit.  *Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 24 (1st Cir. 2011) (quoting *In re Keeper of the Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003)).  The privilege applies when the client is a corporation and protects communications between its employees and counsel.  *Upjohn Co. v. United States*, 449 U.S. 383, 397 (1981).

In general, "disclosing attorney-client communications to a third party undermines the privilege," *Cavallaro*, 284 F.3d at 246-47, because it "destroys the confidentiality upon which the privilege is premised," *Lluberes*, 663 F.3d at 24 (quoting *In re Keeper of the Records*, 348 F.3d at 22).  Unlike the work-product doctrine, the inclusion of external consultants and advisors on emails—even those containing otherwise-privileged communications—will normally amount to a waiver of the attorney-client privilege as to those documents.  A limited "exception to this general rule exists for third parties employed to assist a lawyer in rendering legal advice." *Cavallaro*, 284 F.3d at 247.  Abiomed, who bears the burden of showing that the privilege has not been waived, has not claimed that the exception applies here.  *Lluberes*, 663 F.3d at 24.

Exhibits 3 to 13—which were either produced partially or fully redacted—include draft patent applications authored by attorneys and meeting minutes in which summaries of conversations with council have been redacted that were withheld for privilege.

If Abiomed disclosed those documents to Dr. Aboul-Hosn, a third-party consultant, it waived the attorney-client privilege.  The Court will therefore order Abiomed to produce, without redactions, Exhibits 3-13 to the extent that those documents were disclosed to Dr. Aboul-Hosn.

### 3.   Litigation-Hold Notice

Maquet also seeks production of the litigation-hold notice sent to Dr. Aboul-Hosn in January 2016 by Abiomed's in-house counsel. Abiomed has withheld the notice on the grounds of privilege. Although litigation-hold notices are generally within the attorney-client and work-product privileges, "the prevailing view . . . is that when spoliation occurs the letters are discoverable." *In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, 2016 WL 11212334, at *1 (D. Mass. Jan. 26, 2016) (quoting *Major Tours, Inc. v. Colorel*, 2009 WL 2413631, at *2 (D.N.J. Aug. 4, 2009)).

Maquet has made a preliminary showing that spoliation has likely occurred. The litigation-hold notice is relevant and probative to the spoliation issue. The Court will therefore order that Abiomed produce the litigation-hold notice and Dr. Aboul-Hosn's response.

## III.   Motion for an Adverse Inference

### A.   Legal Standard

"[S]poliation is the intentional, negligent, or malicious destruction of relevant evidence." *Townsend v. American Insulated Panel Co.*, 174 F.R.D. 1, 4 (D. Mass. 1997). Rule 37(e) governs sanctions for the spoliation of electronically-stored information. Under that rule, sanctions are appropriate "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). A court may presume that the lost information was unfavorable to the party that destroyed it only if it was destroyed "with the intent to deprive another party of [its] use in the litigation." Fed. R. Civ. P. 37(e)(2). If there is no such showing, but the destruction still prejudices another party, the court may order sanctions "no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1).

In other words, a party seeking an adverse-inference instruction under Rule 37(e)(2) must first make the "rudimentary . . . show[ing] that there is evidence that has been spoiled (i.e., destroyed or not preserved)." *Gomez v. Stop & Shop Supermarket Co.*, 670 F.3d 395, 399 (1st Cir. 2012). If so, it then "must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with [the 'intent to deprive' another party of the lost evidence]; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002); *Hoffer v. Tellone*, 128 F.4th 433, 438 (2d Cir. 2025) (clarifying that the imposition of sanctions under Rule 37(e)(2) requires a finding of specific intent).

### B.    Analysis

It is abundantly clear from the record that Abiomed has failed to preserve potentially relevant ESI. Again, Abiomed hired Dr. Aboul-Hosn, the first-named inventor on the relevant patents, as a consultant. Presumably, it did so at least in part because of his experience in the design and development of intravascular blood pumps. He was compensated for his services at a fairly high level, earning between €100,000 and €300,000 per year, which suggests that his work was not insignificant.

From at least December 2015, when Maquet first accused Abiomed of infringement of the patent family that Dr. Aboul-Hosn had invented, it should have been apparent to Abiomed that assignor estoppel was a potential issue, and that his ESI would be relevant to that issue. Indeed, Abiomed sent Dr. Aboul-Hosn a litigation-hold notice in January 2016, and identified him in its initial Rule 26(a)(1)(A)(i) disclosures as likely to have discoverable information on the "[s]ubject [m]atter described in the [p]atents-in-[s]uit." (Dkt. No. 451-11). And the importance

of Dr. Aboul-Hosn's ESI to the assignor-estoppel issue was repeatedly raised in both *Abiomed I* and this case.

Nevertheless, Abiomed's approach to preserving Dr. Aboul-Hosn's ESI was casual and haphazard, at the very least. On January 21, 2016, when the litigation-hold notice was sent, all of Dr. Aboul-Hosn's then-existing documents and emails that were in Abiomed's possession, custody, and control should have been preserved. Unless Abiomed had a one-day document retention policy—the record does not indicate what retention policy it did have, if any—it is reasonable to assume that some universe of emails and other documents, probably dating back multiple years, were then available and could have been preserved.

Instead, in 2017, Abiomed decommissioned its onsite servers. It apparently did so without ensuring that Dr. Aboul-Hosn's ESI was transferred to the cloud or otherwise preserved. In May 2025—more than ten years after the litigation hold—Abiomed was able to recover Dr. Aboul Hosn's Office 365 account that included at least one email from 2015. But in the midst of active litigation, his ESI should never have been relegated to backups in the first place. And Maquet has raised serious and fair concerns about whether the recovered Office 365 account is a complete snapshot of Dr. Aboul-Hosn's emails as they existed in January 2016.

Abiomed should have also been aware of the importance of preserving the data on Dr. Aboul-Hosn's computer that Abiomed itself supplied. In response to Maquet's first document request in December 2016, "Abiomed collected the Office 365 accounts of its custodians." (Dkt. No. 451-15). In addition to onsite Microsoft Exchange servers and cloud Microsoft Exchange Online servers, "some custodians also saved old emails as PST files that were retained on their local laptops[.] [T]hese emails were also collected from the Abiomed custodians who were Abiomed employees by imaging their devices." (*Id.*). Maquet did not select Dr. Aboul-Hosn as

20

a custodian, and Judge Boal ruled that Abiomed was not required to produce his emails at that stage. (*Abiomed I*, Dkt. No. 614). Nevertheless, the fact that some custodians had old emails retained on local laptops suggests that Dr. Aboul-Hosn may have too, and that Abiomed knew or should have known that fact.

Maquet's efforts to pursue discovery on Dr. Aboul-Hosn's laptops have also been derailed, at least in part, by false information provided by Abiomed's counsel. In May 2025, Abiomed counsel told Maquet that Dr. Aboul-Hosn performed his consulting work for Abiomed on a personal, not a company, laptop. It further represented that Abiomed had not imaged Dr. Aboul-Hosn's laptop because it "did not have access to [it]; as [Maquet's counsel] know[s], he was a contractor for Abiomed who was separately represented by counsel." (Dkt. No. 451-15). That representation may have led Maquet to pursue ESI on Dr. Aboul's personal laptops, filing the motion for contempt and the motion for adverse inference that are before the Court.

Then, in November 2025, almost six months after Maquet filed its motion for contempt, Abiomed reversed course and filed an affidavit from Dr. Aboul-Hosn explaining that he had in fact worked on an Abiomed-provided computer. That statement is corroborated by Dr. Aboul-Hosn's 2019 deposition testimony. However, it should not have taken Abiomed almost ten years of litigation and two pending discovery motions to identify what laptops Dr. Aboul-Hosn used. Moreover, while Abiomed has a colorable claim that it does not now have access to Dr. Aboul-Hosn's personal laptops, surely it had access at some point to the Abiomed-provided computer.

It is thus likely that the company-provided computer Dr. Aboul-Hosn was working on in January 2016, and the relevant servers, had discoverable information that was not preserved. That ESI, to the extent it existed at the time, is almost entirely lost.

It is true that the Court cannot say that evidence relevant to Maquet's assignor-estoppel defense has been destroyed. Abiomed contends that it located Dr. Aboul Hosn's Office 365 account with emails from the pre-February 2, 2015 time period. (Dkt. No. 451-10). It has also submitted as exhibits several exemplary emails generated by Dr. Aboul-Hosn. (Dkt. Nos. 481-1 to -3). The Court does not have before it a full picture of the Dr. Aboul-Hosn emails that have been produced. Nor is there evidence of Abiomed's email retention policy as of January 2016. And because Maquet never had an opportunity to question or cross-examine Dr. Aboul-Hosn on what work he performed at Abiomed, it is not clear what types of emails were likely created or when they were created.

In any event, it was Abiomed's responsibility to preserve the evidence that existed as of the beginning of 2016. It failed to do so. The Court therefore has no difficulty concluding that evidence has been spoliated. What is less clear is whether Abiomed did so negligently, or "with the intent to deprive another party of [its] use in the litigation." *See* Fed. R. Civ. P. 37(e)(2). That question must await further factual development, including, potentially, testimony at the trial. It is also possible that sanctions other than an adverse inference instruction may be appropriate.

Accordingly, the Court will deny Maquet's motion for an adverse inference instruction without prejudice to its renewal, and without prejudice to its ability to seek other relief.

## IV.   <u>Conclusion</u>

For the foregoing reasons, the motion of plaintiff Maquet Cardiovascular LLC to compel discovery (Dkt. No. 315) is GRANTED to the extent it requested production of (1) the litigation-hold documents and (2) Exhibits 3 through 13 that were submitted for *in camera* review, to the extent those exhibits were disclosed to Dr. Walid Aboul-Hosn, and otherwise DENIED.

Plaintiff's motion for an adverse inference instruction (Dkt. No. 449) is DENIED without prejudice.

**So Ordered.**


/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Dated: February 11, 2026        United States District Judge