**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| MAQUET CARDIOVASCULAR LLC,<br><br>Plaintiff/Counter-Defendant,<br><br>v.<br><br>ABIOMED, INC., ABIOMED R&D, INC.,<br>AND ABIOMED EUROPE GMBH,<br><br>Defendants/Counter-Claimants. | No. 1:17-cv-12311-FDS |

**JOINT PRETRIAL MEMORANDUM**

Case 1:17-cv-12311-FDS    Document 580    Filed 03/31/26    Page 2 of 69

**TABLE OF CONTENTS**

I.     CONCISE SUMMARY OF THE EVIDENCE. ....................................................... 2
       a.     Maquet's Statement. .......................................................................... 2
       b.     Abiomed's Statement. ........................................................................ 3

II.    FACTS ESTABLISHED BY PLEADINGS OR BY STIPULATION OR
       ADMISSIONS OF COUNSEL ...................................................................... 5
       a.     The Parties. ........................................................................................ 5
       b.     Present Litigation. ............................................................................. 5
       c.     U.S. Patent No. 10,238,783 .............................................................. 6
       d.     The Accused Products. ...................................................................... 6
              1.     Impella 2.5. ............................................................................. 6
              2.     Impella 5.0. ............................................................................. 6
              3.     Impella CP. ............................................................................. 7
              4.     Impella CP with SmartAssist. ................................................ 7
       e.     Damages. ............................................................................................ 7

III.   CONTESTED ISSUES OF FACT ................................................................... 7
       a.     Infringement. ..................................................................................... 7
              1.     Direct Infringement. ............................................................... 7
              2.     Infringement Under 35 U.S.C. § 271(f). ................................ 8
              3.     Contributory Infringement. .................................................... 8
              4.     Reverse Doctrine of Equivalents. ........................................... 8
              5.     Willful Infringement. ............................................................. 8
       b.     Invalidity. .......................................................................................... 9
              1.     35 U.S.C. § 103. ...................................................................... 9
              2.     35 U.S.C. § 112. ...................................................................... 9
       c.     Equitable Issues for the Court. ......................................................... 9
              1.     Prosecution Laches. ................................................................ 9
              2.     Assignor Estoppel. .................................................................. 9
       d.     Damages and Other Remedies to be Decided After Trial. .................. 10

IV.    JURISDICTIONAL QUESTIONS. ............................................................... 10

V.     QUESTIONS RAISED BY PENDING MOTIONS. ....................................... 10
       a.     Maquet's Pending Motions. ............................................................... 10
              1.     Maquet's Motion to Exclude Mr. Bone's Opinions and Testimony
                     (D.I. 423). ............................................................................... 10
              2.     Maquet's Motion for Partial Summary Judgment on No
                     Prosecution Laches (D.I. 419). ............................................... 10
              3.     Maquet's Motion for Partial Summary Judgment on Abiomed's
                     Written Description, Enablement, and Indefiniteness Theories
                     (D.I. 438). ............................................................................... 11
              4.     Maquet's Motion for Rule 37(e) Sanction Finding Privity and
                     Assignor Estoppel (D.I. 545). ................................................ 11
              5.     Maquet's Motions *in Limine* ................................................ 12

ii

1.      Maquet's Motion *in Limine* No. 1 to Preclude Abiomed from Introducing Evidence, Testimony, or Argument Contrary to the Court's Claim Constructions or Referencing the Court's Reasoning (D.I. 552)................................................................................. 12

2.      Maquet's Motion *in Limine* No. 2 to Preclude Abiomed from Introducing Evidence, Testimony, or Argument Comparing the Accused Products to the Preferred Embodiments, Specification, or any Non-Accused Product for Purposes of Infringement or Non-Infringement (D.I. 554)............................................................ 12

3.      Maquet's Motion *in Limine* No. 3 to Preclude Abiomed from Introducing Evidence, Testimony, or Argument Comparing the Accused Products to the '783 Patent's Written Description for Purposes of Invalidity and 35 U.S.C. § 112 (D.I. 556)............................. 12

4.      Maquet's Motion *in Limine* No. 4 to Preclude Dr. Walid Aboul-Hosn's Live Testimony, Either in Person or by Remote Videoconference (D.I. 558) ......................................................... 13

5.      Maquet's Motion *in Limine* No. 5 to Preclude Abiomed from Introducing Evidence, Testimony, or Argument Regarding the Dollar Amount of the Thoratec License and Negotiations (D.I. 564). ........................................................................................... 13

6.      Maquet's Motion *in Limine* No. 6 to Preclude Abiomed from Introducing Evidence, Testimony, or Argument Regarding Abiomed's Own Patents for Any Purpose Other than Invalidity (D.I. 567)................................................................................. 13

7.      Maquet's Motion *in Limine* No. 7 to Preclude Abiomed from Introducing Evidence, Testimony, or Argument Regarding Writing Patent Claims to Cover an Accused Product (D.I. 569). ......................... 13

8.      Maquet's Motion *in Limine* No. 8 to Preclude Abiomed from Introducing Evidence, Testimony, or Argument Suggesting that there is Anything Improper About a Company Enforcing a Patent that it Does Not Itself Practice (D.I. 571). .............................................. 14

9.      Maquet's Motion *in Limine* No. 9 to Preclude Abiomed from Introducing Evidence, Testimony, or Argument regarding Any Delay in Alleging Infringement (D.I. 572). .............................. 14

10.    Maquet's Motion *in Limine* No. 10 to Preclude Abiomed from Introducing Evidence, Testimony, or Argument Regarding the Expiration of the '783 Patent (D.I. 573). ................................. 14

11.    Maquet's Motion *in Limine* No. 11 to Preclude Abiomed from Introducing Evidence, Testimony, or Argument Regarding Any Recall, Personal Injury Lawsuit, Wrongful Death Lawsuit, Products Liability Lawsuit, or Tort Claim Associated with the PHP (D.I. 575)................................................................................. 14

12.    Maquet's Motion *in Limine* No. 12 to Preclude Abiomed from Eliciting Testimony, Evidence, or Argument Disparaging the Patent Office (D.I. 577). ......................................................... 15

b.      Abiomed's Pending Motions. ............................................................. 15

             1.      Abiomed's Motion for Partial Summary Judgment of No Infringement Under the Doctrine of Equivalents (D.I. 431). ..................... 15

             2.      Abiomed's Motion to Exclude Opinions and Testimony of Boris Leschnisky (D.I. 436). ................................................................... 15

             3.      Abiomed's Motion to Exclude Opinions and Testimony of James E. Malackowski (D.I. 444). ...................................................... 15

             4.      Abiomed's Motions *in Limine*. ................................................... 16

      c.      Agreed Upon Motions *in Limine*. ........................................................ 17

VI.     ISSUES OF LAW, INCLUDING EVIDENTIARY QUESTIONS, TOGETHER WITH SUPPORTING EVIDENCE. ......................................................................... 18

      a.      Infringement Under 35 U.S.C. § 271(a). ............................................ 18

             1.      Doctrine of Equivalents. ............................................................. 19

             2.      Ensnarement. ............................................................................. 20

             3.      Vitiation. .................................................................................... 23

             4.      Reverse Doctrine of Equivalents. ............................................... 23

      b.      Infringement Under 35 U.S.C. § 271(c). ............................................ 25

      c.      Infringement Under 35 U.S.C. § 271(f). ............................................ 26

      d.      Obviousness Under 35 U.S.C. § 103. ................................................. 26

      e.      Written Description, Enablement, and Indefiniteness Under 35 U.S.C. § 112. ......................................................................................................... 28

             1.      Written Description. .................................................................... 28

             2.      Enablement. ............................................................................... 29

             3.      Indefiniteness. ............................................................................ 31

      f.      Willful Infringement. .......................................................................... 31

      g.      Assignor Estoppel. ............................................................................. 33

      h.      Reasonable Royalty. ........................................................................... 36

      i.      Enhanced Damages. ............................................................................ 40

      j.      Prosecution Laches. ............................................................................ 41

      k.      Prejudgment Interest. .......................................................................... 42

      l.      Post-Judgment Interest. ....................................................................... 43

      m.     Exceptional Case. ............................................................................... 44

VII.    REQUESTED AMENDMENTS TO THE PLEADINGS. ............................................. 44

VIII.   ADDITIONAL MATTERS TO AID IN THE DISPOSITION OF TRIAL. ................... 44

      a.      Sanctions Under Fed. R. Civ. P. 37(e). ............................................. 44

             1.      Maquet's Statement. ................................................................... 44

             2.      Abiomed's Statement .................................................................. 46

      b.      Claim Construction. ........................................................................... 46

             1.      Abiomed's Statement. ................................................................. 46

             2.      Maquet's Statement. ................................................................... 48

      c.      Federal Judicial Center Patent Video. ................................................ 49

      d.      Juror Notebooks. ................................................................................ 49

      e.      Translations. ....................................................................................... 50

IX.     PROBABLE LENGTH OF TRIAL. ................................................................................... 50

X.      WITNESSES AND WHETHER ANY WITNESS IS INTENDED TO BE
        PRESENTED BY DEPOSITION. ...................................................................................... 51
        a.      Deposition Designations. ...................................................................................... 53

XI.     PROPOSED EXHIBITS. ................................................................................................... 56
        a.      Impeachment. ......................................................................................................... 57
        b.      No Advance Notification. ....................................................................................... 57
        c.      Opening Demonstratives. ....................................................................................... 57
        d.      Trial Exhibits. ........................................................................................................ 57
        e.      Demonstrative Exhibits. ......................................................................................... 58
        f.      Witness Binders. .................................................................................................... 59
        g.      Written Discovery. ................................................................................................. 60

XII.    THE PARTIES RESPECTIVE POSITIONS ON ANY REMAINING
        OBJECTIONS TO THE EVIDENCE IDENTIFIED IN THE PRETRIAL
        DISCLOSURE REQUIRED BY FED. R. CIV. P. 26(a)(3). ............................................ 60
        a.      Dr. Aboul-Hosn Live Testimony. ........................................................................... 61
                1.      Maquet's statement ..................................................................................... 61
                2.      Abiomed's Statement .................................................................................. 62

v

In advance of the final pretrial conference, and pursuant to Local Rule 16.5(d), Plaintiff Maquet Cardiovascular LLC ("Maquet" or "Plaintiff") and Defendants Abiomed, Inc., ("Abiomed Inc.") Abiomed R&D, Inc., ("Abiomed R&D") and Abiomed Europe GMBH ("Abiomed Europe") (collectively, "Abiomed" or "Defendants") hereby submit this joint pretrial memorandum.

**Maquet's Statement.** A pretrial conference has not yet been set in this litigation. Maquet respectfully requests that the Court set a pretrial conference at its earliest convenience.

Additionally, Abiomed's proposal to consolidate *Maquet I* and *Maquet II* would only add further delay to litigations that have already been pending for nearly a decade. It also directly contradicts the position Abiomed took in 2017 when it told the Court that additional patents should not be added to *Maquet I*. Throughout this case, the Court has been explicit that, once it set a trial date in *Maquet II*, that trial would not move. April 1, 2025 Hearing Tr. at 9:23–24 ("I do want to set a real trial date, and . . . once I set it, I don't want to move it."). Abiomed's proposal asks the Court to do exactly what it sought to avoid—and without just cause. Therefore, Abiomed's proposal should be denied.

**Abiomed's Statement.** On February 9, 2026, the Federal Circuit issued a decision in *Maquet I*, vacating certain claim constructions and remanding that case for further proceedings involving five additional Maquet patents. Abiomed proposes that *Maquet I* and *Maquet II* be consolidated for further discovery on the Maquet I patents on a compressed schedule, which would allow the related patents in these two cases to be tried in a single trial. D.I. 550 ("Joint Letter Re Case Scheduling"). The parties request a status conference at the Court's earliest convenience to discuss these issues.

1

## I.    CONCISE SUMMARY OF THE EVIDENCE.

### a.    Maquet's Statement.

In this patent infringement case, Maquet contends that Defendants' Impella 2.5, Impella 5.0, Impella CP, and Impella CP with SmartAssist—intravascular blood pumps—infringe claims 1, 3, and 24 of U.S. Patent No. 10,238,783 (the "'783 patent"). Maquet contends that Defendants directly infringe literally and/or under the doctrine of equivalents under 35 U.S.C. § 271(a), contributorily under 35 U.S.C. § 271(c), and under 35 U.S.C. § 271(f). Maquet further contends that Defendants' infringement is willful. Abiomed does not dispute that the Impella 2.5, Impella 5.0, Impella CP, and Impella CP with SmartAssist (the "Accused Products") meet many of the claim elements of the '783 patent. For example, with respect to claim 1, Abiomed simply challenges that the products at issue have a "guide mechanism" with the claimed axis. Overwhelming evidence will show that the Accused Products contain a "guide mechanism" that satisfies the axis requirement as claimed, and that Abiomed knows that the Accused Products practice these limitations. The evidence will further show that Abiomed's defense under the reverse doctrine of equivalents—a doctrine that the Federal Circuit has "never affirmed a decision finding noninfringement based on"—is meritless. *Steuben Foods, Inc. v. Shibuya Hoppmann Corp.*, 127 F.4th 348, 357 (Fed. Cir. 2025). Similarly, the evidence will likewise show that Abiomed's defenses under ensnarement and vitiation are likewise meritless. In short, the evidence will show that Abiomed has infringed claims 1, 3, and 24 of the '783 patent under each of the above identified subsections of § 271 and that Abiomed's infringement is willful.

The evidence will further show that the claims 1, 3, and 24 of the '783 patent are valid under any theory of invalidity, including 35 U.S.C. § 103 and 35 U.S.C. § 112. Maquet further contends that Abiomed is estopped from challenging the validity of the patent under the doctrine of assignor estoppel. Privity between Dr. Walid Aboul-Hosn and Abiomed is the sole remaining

factual predicate to the application of assignor estoppel. The evidence will show that Dr. Aboul-Hosn, the first named inventor and longtime consultant of Abiomed, is in privity to Abiomed for purposes of assignor estoppel. Worse, as detailed in Maquet's Motion for Rule 37(e), Abiomed never required Dr. Aboul-Hosn to preserve any of the technical documents reflecting his work at Abiomed—the key pieces of evidence that would unequivocally confirm privity.

Abiomed's defense under the doctrine of prosecution laches also fails. To succeed Abiomed must prove by *clear and convincing evidence* that (1) Maquet unreasonably and inexcusably delayed the prosecution of the '783 patent under a totality of circumstances and (2) that Abiomed was prejudiced by that delay. Abiomed cannot prove either. For example, as a matter of law, the evidence will show that Abiomed cannot show prejudice because Maquet did not delay in disclosing the pigtail-shaped distal tip.

Maquet seeks damages in the form of a lump sum payment representing a reasonable royalty for Defendant's infringement as well as enhanced damages under 35 U.S.C. § 284. Maquet likewise seeks pre-judgment interest, post-judgment interest, and its attorneys' fees and costs.

### b. Abiomed's Statement.

Abiomed denies that Impella 2.5, Impella 5.0, Impella CP, and Impella CP with SmartAssist (the "Accused Products") directly infringe any of claims 1, 3, or 24 of U.S. Patent No. 10,238,783, either literally or under the doctrine of equivalents. The Accused Products also do not infringe under the reverse doctrine of equivalents. Abiomed further denies infringement under 35 U.S.C. §§ 271(c) and 271(f). In addition, Maquet's assertions of infringement under the doctrine of equivalents are barred in whole or in part by the doctrines of ensnarement and vitiation. Abiomed further denies that any infringement was willful.

Abiomed contends that the asserted claims of the '783 patent are invalid under 35 U.S.C. §§ 103 and 112.

Several equitable issues also remain to be tried.  Abiomed contends that the '783 patent is unenforceable under the doctrine of prosecution laches. Maquet waited seventeen years from the filing of the abandoned "Steerable Cannula" application, and sixteen years from the priority date of the '100 patent, to claim a "pigtail-shaped distal tip" limitation for the first time, using the abandoned "Steerable Cannula" application as Appendix A to the specification. None of the earlier patents in the '783 patent family included a claim that recites a "pigtail-shaped distal tip" or described a pigtail of any kind, until Maquet's prosecution conduct in August 2016. Maquet's delay in prosecution prejudiced Abiomed. Abiomed worked on and commercialized the accused technology during the period of Maquet's delay. As laches is an equitable defense, Abiomed seeks a concurrent bench trial for the Court to receive argument and additional evidence relevant to the laches issues.

Abiomed is not estopped from challenging the validity of the '783 patent.  Maquet asserts that assignor estoppel—which is an equitable doctrine—bars Abiomed's invalidity challenges, but assignor estoppel requires a "contradiction" between the assignor's past representations of patentability and Abiomed's invalidity arguments, as well as privity.  Those requirements are not met here.  No representations about validity of claims 1, 3, and 24 of the '783 patent were made by Dr. Walid Aboul-Hosn because Dr. Aboul-Hosn did not sign an oath or affirmation for the continuation application that became the '783 patent, and thus did not aver that he believes the asserted claims to constitute patentable inventions.  And the Impella 2.5 had already been designed, tested, and submitted for FDA approval before Abiomed engaged Dr. Walid Aboul-Hosn as a consultant in 2007.  Dr. Aboul-Hosn's consulting responsibilities did not include product development of the Accused Products.

Maquet is not entitled to any damages in this case, including any lump sum payment, pre-judgment interest, post-judgment interest, enhanced damages under 35 U.S.C. § 284, attorneys' fees, or any other exceptional relief, because Abiomed does not infringe the '783 patent, the '783 patent is invalid, and prosecution laches renders the '783 patent unenforceable.

## II.    FACTS ESTABLISHED BY PLEADINGS OR BY STIPULATION OR ADMISSIONS OF COUNSEL.

### a.    The Parties.

1.  Maquet Cardiovascular LLC is a limited liability company formed and existing under the laws of Delaware with its principal place of business at 45 Barbour Pond Dr., Wayne, New Jersey 07470.

2.  Abiomed, Inc. is a Delaware corporation with its principal place of business at 22 Cherry Hill Drive, Danvers, Massachusetts, 01923.

3.  Abiomed, Inc. had made, used, offered for sale, sold, and/or imported into the United States intravascular blood pumps including at least the Impella 2.5, Impella 5.0, Impella CP, and Impella CP with SmartAssist products.

4.  Abiomed, Inc.'s customers and end users have used, offered for sale, sold, or imported into the United States the Impella line of intracardiac heart pumps, including the Impella 2.5, Impella 5.0, Impella CP, and Impella CP with SmartAssist.

### b.    Present Litigation.

1.  On November 22, 2017, Maquet filed the Complaint asserting infringement of U.S. Patent No. 9,789,238.

2.  On April 2, 2019, Maquet filed the Amended Complaint asserting infringement of U.S. Patent No. 9,789,238 and U.S. Patent No. 10,238,783.

3.  On April 23, 2019, Maquet filed the Second Amended Complaint asserting infringement of U.S. Patent No. 9,789,238 and U.S. Patent No. 10,238,783.

4.  The Asserted Claims in the above-captioned action are claims 1, 3, and 24 of the '783 patent.

5.  The Accused Products in the above-captioned action are the Impella 2.5, the Impella 5.0, the Impella CP, and the Impella CP with SmartAssist.

5

### c.  U.S. Patent No. 10,238,783.

1. On September 3, 1999, provisional application No. 60/152,249 titled "Intravascular Blood Pump" was filed with the United States Patent and Trademark Office.

2. On September 1, 2000, U.S. Application No. 10/070,178 filed as International Application No. PCT/US00/24515 titled "Guidable Intravascular Blood Pump and Related Methods" was filed with the United States Patent and Trademark Office.

3. The named inventors of the '515 PCT Application and the '178 Application are Walid N. Aboul-Hosn, William R. Kanz, and Bruce A. Baker.

4. On September 21, 2018, Maquet filed U.S. Patent Application No. 16/138,788.

5. On January 31, 2019, the United States Patent and Trademark Office published U.S. Patent Application No. 16/138,788 as US 2019/0030231 A1.

6. Abiomed received by mail a letter from Maquet dated January 31, 2019.

7. The United States Patent and Trademark Office granted Maquet's U.S. Patent Application No. 16/138,788 as U.S. Patent No. 10,238,783 on March 26, 2019.

8. The '783 patent is titled "Guidable Intravascular Blood Pump and Related Methods."

9. The named inventors of the '783 patent are Walid N. Aboul-Hosn, William R. Kanz, and Bruce A. Baker.

10. The priority date of claims 1, 3 and 24 of the '783 patent is no earlier than September 1, 2000.

### d.  The Accused Products.

#### 1.  Impella 2.5.

1. The FDA cleared the Impella 2.5 for marketing and selling in the United States on May 30, 2008.

2. The first U.S. sale after FDA approval of the Impella 2.5 was in June 2008.

#### 2.  Impella 5.0.

1. The FDA cleared the Impella 5.0 for marketing and selling in the United States on April 16, 2009.

2. The first U.S. sale after FDA approval of the Impella 5.0 was April 17, 2009.

6

### 3.  Impella CP.

1. The FDA cleared the Impella CP for marketing and selling in the United States in September 2012.

2. The first U.S. sale after FDA approval of the Impella CP was September 7, 2012.

### 4.  Impella CP with SmartAssist.

1. The FDA cleared the Impella CP with SmartAssist for marketing and selling in the United States in 2018.

2. The first U.S. sale after FDA approval of the Impella CP with SmartAssist was in April 2018.

### e.  Damages.

1. Abiomed does not have a license to practice the '783 patent.

## III.    CONTESTED ISSUES OF FACT.

The parties identify the following issues that remain to be litigated. The parties reserve the right to identify additional factual or legal issues that may arise, including issues raised by the Court's rulings on any pending motion, or a ruling made at the pretrial conference in this action. By providing this statement, the parties do not concede that all of these issue are appropriate for trial or that they are purely factual questions. The parties do not waive any of their pending motions.

### a.  Infringement.

#### 1.  Direct Infringement.

1. Whether Defendants have each directly infringed claim 1 of the '783 patent in violation of 35 U.S.C. § 271(a) literally and/or under the doctrine of equivalents by making, using, offering to sell, selling, and/or importing into the United States the Impella 2.5, the Impella 5.0, the Impella CP, and the Impella CP with SmartAssist.

2. Whether Defendants have each directly infringed  claim 3 of the '783 patent in violation of 35 U.S.C. § 271(a) literally and/or under the doctrine of equivalents by making, using, offering to sell, selling, and/or importing into the United States the Impella 2.5, the Impella 5.0, the Impella CP, and the Impella CP with SmartAssist.

7

3. Whether Defendants have each directly infringed  claim 24 of the '783 patent in violation of 35 U.S.C. § 271(a) literally and/or under the doctrine of equivalents by making, using, offering to sell, selling, and/or importing into the United States the Impella 2.5, the Impella 5.0, the Impella CP, and the Impella CP with SmartAssist.

### 2.  Infringement Under 35 U.S.C. § 271(f).

1. Whether Defendants, in concert or individually, literally or under the doctrine of equivalents directly infringed claim 1 of the '783 patent in violation of 35 U.S.C. § 271(f)(1) and/or 35 U.S.C. § 271(f)(2).

2. Whether Defendants, in concert or individually, literally or under the doctrine of equivalents directly infringed claim 3 of the '783 patent in violation of 35 U.S.C. § 271(f)(1) and/or 35 U.S.C. § 271(f)(2).

3. Whether Defendants, in concert or individually, literally or under the doctrine of equivalents directly infringed claim 24 of the '783 patent in violation of 35 U.S.C. § 271(f)(1) and/or 35 U.S.C. § 271(f)(2).

### 3.  Contributory Infringement.

1. Whether Abiomed Europe indirectly infringed claim 1 of the '783 patent in violation of 35 U.S.C. § 271(c).

2. Whether Abiomed Europe indirectly infringed claim 3 of the '783 patent in violation of 35 U.S.C. § 271(c).

3. Whether Abiomed Europe indirectly infringed claim 24 of the '783 patent in violation of 35 U.S.C. § 271(c).

### 4.  Reverse Doctrine of Equivalents.

1. Whether Defendants, if the Accused Products are found to literally meet the elements of claim 1 of the '783 patent, do not infringe claim 1 of the '783 patent under the reverse doctrine of equivalents.

2. Whether Defendants, if the Accused Products are found to literally meet the elements of claim 3 of the '783 patent, do not infringe claim 3 of the '783 patent under the reverse doctrine of equivalents.

3. Whether Defendants, if the Accused Products are found to literally meet the elements of claim 24 of the '783 patent, do not infringe claim 24 of the '783 patent under the reverse doctrine of equivalents.

### 5.  Willful Infringement.

1. Whether, if Defendants are found to have infringed claim 1 of the '783 patent, Defendants' infringement was willful and deliberate because Defendants knew, or willfully and

deliberately ignored, that each of their actions have constituted infringement of claim 1 of the '783 patent.

2. Whether, if Defendants are found to have infringed claim 3 of the '783 patent, Defendants' infringement was willful and deliberate because Defendants knew, or willfully and deliberately ignored, that each of their actions have constituted infringement of claim 3 of the '783 patent.

3. Whether, if Defendants are found to have infringed claim 24 of the '783 patent, Defendants' infringement was willful and deliberate because Defendants knew, or willfully and deliberately ignored, that each of their actions have constituted infringement of claim 24 of the '783 patent.

### b. Invalidity.

#### 1. 35 U.S.C. § 103.

1. Whether claim 1 of the '783 patent is invalid as obvious in view of the prior art under 35 U.S.C. §103.

2. Whether claim 3 of the '783 patent is invalid as obvious in view of the prior art under 35 U.S.C. §103.

3. Whether claim 24 of the '783 patent is invalid as obvious in view of the prior art under 35 U.S.C. §103.

#### 2. 35 U.S.C. § 112.

1. Whether claim 1 of the '783 patent is invalid for failure to satisfy the requirements of 35 U.S.C. § 112.

2. Whether claim 3 of the '783 patent is invalid for failure to satisfy the requirements of 35 U.S.C. § 112.

3. Whether claim 24 of the '783 patent is invalid for failure to satisfy the requirements of 35 U.S.C. § 112.

### c. Equitable Issues for the Court.

#### 1. Prosecution Laches.

1. Whether the '783 patent is unenforceable under the doctrine of prosecution laches.

#### 2. Assignor Estoppel.

1. Whether Abiomed's challenges to the validity of the '783 patent are barred by assignor estoppel.

9

d.  **Damages and Other Remedies to be Decided After Trial.**

1.  If Abiomed is found to infringe any valid claim of the '783 patent, what amount of damages should be awarded to Maquet to compensate for Abiomed's infringement under 35 U.S.C. § 271.

2.  If damages are awarded, whether Maquet is entitled to pre-judgment interest.

3.  If damages are awarded, an award of post-judgment interest to Maquet pursuant to 28 U.S.C. § 1961.

4.  If damages are awarded, whether Maquet is entitled to enhanced damages.

5.  If damages are awarded, whether Maquet is entitled to its attorneys' fees and costs.

6.  If no damages are awarded, whether Abiomed is entitled to its attorneys' fees and costs.

## IV.    JURISDICTIONAL QUESTIONS.

None.

## V.    QUESTIONS RAISED BY PENDING MOTIONS.

### a.  Maquet's Pending Motions.

#### 1.  Maquet's Motion to Exclude Mr. Bone's Opinions and Testimony (D.I. 423).

Maquet's pending Motion to Exclude was filed on October 3, 2025. The Motion is fully briefed, and oral argument was heard by Judge Saylor on December 11, 2025. This Motion seeks to exclude Mr. Bone's opinions regarding damages apportionment as unreliable and inadmissible where his opinions are predicated entirely on generalized surveys that do not measure the portion of value the accused Impella products attributable to the inventive features of the asserted claims of the '783 patent.

#### 2.  Maquet's Motion for Partial Summary Judgment on No Prosecution Laches (D.I. 419).

Maquet's pending Motion for Partial Summary Judgment was filed on October 3, 2025. The Motion is fully briefed, and oral argument was heard by Judge Saylor on December 11, 2025. This Motion seeks a finding that no reasonable factfinder could conclude that the pigtail-shaped

distal tip subject matter was not reasonably disclosed nor that Abiomed has suffered prejudice and thus Maquet is entitled to partial summary judgment on the issue of prosecution laches.

### 3. Maquet's Motion for Partial Summary Judgment on Abiomed's Written Description, Enablement, and Indefiniteness Theories (D.I. 438).

Maquet's pending Motion for Partial Summary Judgment was filed on October 3, 2025. The Motion is fully briefed, and oral argument was heard by Judge Saylor on December 11, 2025. This Motion seeks summary judgment for Maquet on certain of Abiomed's invalidity theories under 35 U.S.C. §112 including that: (1) Abiomed's written description and enablement theories as to the alleged unclaimed "pump" of the claimed "intravascular blood pump" are contrary to law; (2) no reasonable fact finder could find that the "intravascular blood pump" of claim 1 must include a cannula; and (3) no reasonable fact finder could find that the phrase "partially disposed" in claim 24 and "elongate catheter extending proximally with respect to the intravascular blood pump" in claim 3 are indefinite.

### 4. Maquet's Motion for Rule 37(e) Sanction Finding Privity and Assignor Estoppel (D.I. 545).

Maquet's pending Motion for Rule 37(e) Sanction Finding Privity and Assignor Estoppel was filed on March 10, 2026. The Motion is currently in the briefing phase with no date for oral argument set. This Motion seeks sanctions under Federal Rule of Civil Procedure 37(e) finding that Defendants are in privity with Dr. Walid Aboul-Hosn for purposes of assignor estoppel. Because privity is the sole remaining factual predicate to the application of assignor estoppel, Maquet also seeks an order holding that assignor estoppel precludes Abiomed from challenging the validity of U.S. Patent No. 10,238,783. Maquet further requests that the Court award Maquet its reasonable attorneys' fees and costs incurred in connection with this Motion and any related discovery, pursuant to Rule 37(e) and the Court's inherent authority.

**5.  Maquet's Motions *in Limine*.**

    **1.  Maquet's Motion *in Limine* No. 1 to Preclude Abiomed from Introducing Evidence, Testimony, or Argument Contrary to the Court's Claim Constructions or Referencing the Court's Reasoning (D.I. 552).**

Maquet's pending Motion *in Limine* No. 1 to Preclude Abiomed from Introducing Evidence, Testimony, or Argument Contrary to the Court's Claim Constructions or Referencing the Court's Reasoning was filed on March 26, 2026. The Motion will be fully briefed on April 3, 2026.

    **2.  Maquet's Motion *in Limine* No. 2 to Preclude Abiomed from Introducing Evidence, Testimony, or Argument Comparing the Accused Products to the Preferred Embodiments, Specification, or any Non-Accused Product for Purposes of Infringement or Non-Infringement (D.I. 554).**

Maquet's pending Motion *in Limine* No. 2 to Preclude Abiomed from Introducing Evidence, Testimony, or Argument Comparing the Accused Products to the Preferred Embodiments, Specification, or any Non-Accused Product for Purposes of Infringement or Non-Infringement was filed on March 26, 2026. The Motion will be fully briefed on April 3, 2026.

    **3.  Maquet's Motion *in Limine* No. 3 to Preclude Abiomed from Introducing Evidence, Testimony, or Argument Comparing the Accused Products to the '783 Patent's Written Description for Purposes of Invalidity and 35 U.S.C. § 112 (D.I. 556).**

Maquet's pending Motion *in Limine* No. 3 to Preclude Abiomed from Introducing Evidence, Testimony, or Argument Comparing the Accused Products to the '783 Patent's Written Description for Purposes of Invalidity and 35 U.S.C. § 112 was filed on March 26, 2026. The Motion will be fully briefed on April 3, 2026.

12

**4.    Maquet's Motion *in Limine* No. 4 to Preclude Dr. Walid Aboul-Hosn's Live Testimony, Either in Person or by Remote Videoconference (D.I. 558)**

Maquet's pending Motion *in Limine* No. 4 to Preclude Dr. Walid Aboul-Hosn's Live Testimony, Either in Person or by Remote Videoconference was filed on March 26, 2026. The Motion will be fully briefed on April 3, 2026.

**5.    Maquet's Motion *in Limine* No. 5 to Preclude Abiomed from Introducing Evidence, Testimony, or Argument Regarding the Dollar Amount of the Thoratec License and Negotiations (D.I. 564).**

Maquet's pending Motion *in Limine* No. 5 to Preclude Abiomed from Introducing Evidence, Testimony, or Argument Regarding the Dollar Amount of the Thoratec License and Negotiations was filed on March 26, 2026. The Motion will be fully briefed on April 3, 2026.

**6.    Maquet's Motion *in Limine* No. 6 to Preclude Abiomed from Introducing Evidence, Testimony, or Argument Regarding Abiomed's Own Patents for Any Purpose Other than Invalidity (D.I. 567).**

Maquet's pending Motion *in Limine* No. 6 to Preclude Abiomed from Introducing, Evidence, Testimony, or Argument Regarding Abiomed's Own Patents for Any Purpose Other than Invalidity was filed on March 26, 2026. The Motion will be fully briefed on April 3, 2026.

**7.    Maquet's Motion *in Limine* No. 7 to Preclude Abiomed from Introducing Evidence, Testimony, or Argument Regarding Writing Patent Claims to Cover an Accused Product (D.I. 569).**

Maquet's pending Motion *in Limine* No. 7 to Preclude Abiomed from Introducing Evidence, Testimony, or Argument Regarding Writing Patent Claims to Cover an Accused Product was filed on March 26, 2026. The Motion will be fully briefed on April 3, 2026.

**8.  Maquet's Motion *in Limine* No. 8 to Preclude Abiomed from Introducing Evidence, Testimony, or Argument Suggesting that there is Anything Improper About a Company Enforcing a Patent that it Does Not Itself Practice (D.I. 571).**

Maquet's pending Motion *in Limine* No. 8 to Preclude Abiomed from Introducing Evidence, Testimony, or Argument Suggesting that there is Anything Improper About a Company Enforcing a Patent that it Does Not Itself Practice was filed on March 26, 2026. The Motion will be fully briefed on April 3, 2026.

**9.  Maquet's Motion *in Limine* No. 9 to Preclude Abiomed from Introducing Evidence, Testimony, or Argument regarding Any Delay in Alleging Infringement (D.I. 572).**

Maquet's pending Motion *in Limine* No. 9 to Preclude Abiomed from Introducing Evidence, Testimony, or Argument regarding Any Delay in Alleging Infringement was filed on March 26, 2026. The Motion will be fully briefed on April 3, 2026.

**10. Maquet's Motion *in Limine* No. 10 to Preclude Abiomed from Introducing Evidence, Testimony, or Argument Regarding the Expiration of the '783 Patent (D.I. 573).**

Maquet's pending Motion *in Limine* No. 10 to Preclude Abiomed from Introducing Evidence, Testimony, or Argument Regarding the Expiration of the '783 Patent was filed on March 26, 2026. The Motion will be fully briefed on April 3, 2026.

**11. Maquet's Motion *in Limine* No. 11 to Preclude Abiomed from Introducing Evidence, Testimony, or Argument Regarding Any Recall, Personal Injury Lawsuit, Wrongful Death Lawsuit, Products Liability Lawsuit, or Tort Claim Associated with the PHP (D.I. 575).**

Maquet's pending Motion *in Limine* No. 11 to Preclude Abiomed from Introducing Evidence, Testimony, or Argument Regarding Any Recall, Personal Injury Lawsuit, Wrongful Death Lawsuit, Products Liability Lawsuit, or Tort Claim Associated with the PHP was filed on March 26, 2026. The Motion will be fully briefed on April 3, 2026.

14

**12. Maquet's Motion *in Limine* No. 12 to Preclude Abiomed from Eliciting Testimony, Evidence, or Argument Disparaging the Patent Office (D.I. 577).**

Maquet's pending Motion *in Limine* No. 12 to Preclude Abiomed from Eliciting Testimony, Evidence, or Argument Disparaging the Patent Office was filed on March 26, 2026. The Motion will be fully briefed on April 3, 2026.

**b. Abiomed's Pending Motions.**

**1. Abiomed's Motion for Partial Summary Judgment of No Infringement Under the Doctrine of Equivalents (D.I. 431).**

Abiomed's pending Motion for Partial Summary Judgment of No Infringement Under the Doctrine of Equivalents was filed on October 3, 2025. The Motion is fully briefed, and oral argument was heard on December 11, 2025. Abiomed seeks partial summary judgment that the Accused Products do not infringe under the doctrine of equivalents.

**2. Abiomed's Motion to Exclude Opinions and Testimony of Boris Leschnisky (D.I. 436).**

Abiomed's pending Motion to Exclude Opinions and Testimony of Boris Leschinsky was filed on October 3, 2025. The Motion is fully briefed, and oral argument was heard on December 11, 2025. Abiomed seeks to exclude opinions and testimony relating to technical apportionment approaches 1, 3, and 4 that Mr. Leschinsky used in evaluating the Accused Products.

**3. Abiomed's Motion to Exclude Opinions and Testimony of James E. Malackowski (D.I. 444).**

Maquet's pending Motion to Exclude Opinions and Testimony of James E. Malackowski was filed on October 3, 2025. The Motion is fully briefed, and oral argument was heard on December 11, 2025. Abiomed seeks to exclude the opinions and testimony of Mr. Malackowski relating to (i) his use of technical apportionment values from Mr. Leschinsky, (ii) his improper

15

application of the entire market value rule ("EMVR"), and (iii) opinions regarding consumable and service revenue as convoyed sales.

### 4. Abiomed's Motions *in Limine*.

1. **Motion *in limine* No. 1: Preclude evidence, testimony, or argument regarding (1) the value of the 2022 Johnson & Johnson acquisition of Abiomed and related financial projections for Impella; (2) the value of the 2006 merger of Guidant and Boston Scientific; (3) the value of the 2007 Getinge acquisition of Boston Scientific's cardiac surgery and vascular surgery businesses; and (4) executive compensation (D.I. 559).**

Abiomed's pending Motion *in Limine* No. 1 to preclude evidence, testimony, or argument regarding (1) the value of the 2022 Johnson & Johnson acquisition of Abiomed and related financial projections for Impella; (2) the value of the 2006 merger of Guidant and Boston Scientific; (3) the value of the 2007 Getinge acquisition of Boston Scientific's cardiac surgery and vascular surgery businesses; and (4) executive compensation was filed on March 26, 2026. The Motion will be fully briefed on April 3, 2026.

2. **Motion *in limine* No. 2: Preclude evidence, testimony, or argument regarding technical apportionment percentages not included in Maquet's expert reports (D.I. 560).**

Abiomed's pending Motion *in Limine* No. 2 to preclude evidence, testimony, or argument regarding technical apportionment percentages not included in Maquet's expert reports was filed on March 26, 2026. The Motion will be fully briefed on April 3, 2026.

3. **Motion *in limine* No. 3: Preclude evidence, testimony, or argument regarding any *inter partes* review or reexamination proceedings at the U.S. Patent & Trademark Office, including any *inter partes* review or reexamination proceedings involving the '783 patent and/or any other related patents (D.I. 561).**

Abiomed's pending Motion *in Limine* No. 3 to preclude evidence, testimony, or argument regarding any *inter partes* review or reexamination proceedings at the U.S. Patent & Trademark Office, including any *inter partes* review or reexamination proceedings involving the '783 patent

16

and/or any other related patents was filed on March 26, 2026. The Motion will be fully briefed on April 3, 2026.

> **4. Motion *in limine* No. 4: Preclude evidence, testimony, or argument related to a party's changes of counsel, or that different experts provided reports in *Maquet I* than in *Maquet II* (D.I. 562).**

Abiomed's pending Motion *in Limine* No. 4 to preclude evidence, testimony, or argument related to a party's changes of counsel, or that different experts provided reports in *Maquet I* than in *Maquet II* was filed on March 26, 2026. The Motion will be fully briefed on April 3, 2026.

### c. Agreed Upon Motions *in Limine*.

1. AGREED Motion *in Limine* No. 1 – to preclude evidence, testimony, or argument regarding any recall, personal injury lawsuit, wrongful death lawsuit, products liability lawsuit, or tort claim regarding safety, of Getinge's products or Abiomed's products. This motion *in limine* does not preclude evidence, testimony, or argument related to the PHP product, which is the subject of a separate motion *in limine*.

2. AGREED Motion *in Limine* No. 2 - The parties shall be precluded from referring to any other person or entity as a "patent troll," "pirate," "bounty hunter," "bandit," "playing the lawsuit lottery," "shell company," "shakedown artist," "patent assertion entity," or as "corrupt," or "evil."

3. AGREED Motion *in limine* No. 3: Preclude evidence, testimony, or argument regarding Johnson & Johnson's overall revenues or financial size.

4. AGREED Motion *in limine* No. 4: Preclude evidence, testimony, or argument about alleged bribery, alleged kickbacks, false claims, whistleblower complaints, or settlements with the Department of Justice.

5. AGREED Motion *in limine* No. 5: Preclude evidence, testimony, or argument regarding F.R.C.P. Rule 12 motions, motions for leave, motions to strike, summary judgment motions, *Daubert* motions, and motions to exclude; Court orders on any of the preceding motions; dropped claims or defenses; redactions to expert reports; and the Federal Circuit's opinion regarding *Maquet I* patents.

6. AGREED Motion *in limine* No. 6: Preclude evidence, testimony, or argument that raises religious or political beliefs, race, ethnicity, gender, national origin, sexual orientation, or health (including but not limited to vaccination status) of a party, party executive, witness, attorney, or law

firm. This MIL does not prevent non-pejorative discussion of the geographical location of any companies, including the Impella products' history in Germany.

7.    AGREED Motion *in limine* No. 7: To preclude evidence, testimony, or argument regarding either party's other litigations or arbitrations, including parallel proceedings in any other court, tribunal, or forum, including ADR proceedings. This motion *in limine* is not meant to address evidence, testimony, or argument related to *Maquet I*, the Federal Circuit opinion regarding the '783 patent, or *inter partes* review / *ex parte* reexaminations related to the '783 patent or related patents, which may be the subject of other motions *in limine* or evidentiary objections.

8.    AGREED Motion *in limine* No. 8: Preclude evidence, testimony, or argument regarding the fact that testimony or opinions offered by any expert may have been criticized, excluded, or found to be unreliable.

9.    AGREED Motion *in limine* No. 9: For any witness that the Court permits to testify at the trial, motion *in limine* to preclude any argument about the manner in which the witness is testifying (e.g., by deposition, live, or by video).

10.   AGREED Motion *in limine* No. 10: Preclude evidence, testimony, or argument suggesting that the other party had an affirmative duty to seek opinion of counsel, and/or any inference that may be drawn as to what the contents of such an opinion would have been.

## VI.   ISSUES OF LAW, INCLUDING EVIDENTIARY QUESTIONS, TOGETHER WITH SUPPORTING EVIDENCE.

### a.   Infringement Under 35 U.S.C. § 271(a).

Direct infringement is codified in 35 U.S.C. § 271(a). Section 271(a) states:

Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.

35 U.S.C. § 271(a). Patent infringement under § 271(a) "occurs when someone without authority makes, uses, offers to sell or sells any patented invention." *Trs. of Bos. Univ. v. Everlight Elecs. Co.*, No. CIV.A. 12-11935-FDS, 2013 WL 2367809, at *8 (D. Mass. May 28, 2013) (Saylor, J.). Direct infringement, as opposed to indirect infringement under § 271(b) or (c), "occurs where all

18

steps of a claimed method are performed by or attributable to a single entity." *Purdue Pharma L.P. v. Collegium Pharm., Inc.*, 335 F. Supp. 3d 149, 162 (D. Mass. 2018) (Saylor, J.) (quoting *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015)); *see also Keurig, Inc. v. JBR, Inc.*, No. CIV.A. 11-11941-FDS, 2013 WL 2304171, at *3 (D. Mass. May 24, 2013) (Saylor, J.), *aff'd*, 558 F. App'x 1009 (Fed. Cir. 2014) ("Infringement under this section is known as 'direct infringement' because the alleged infringer is the entity that practiced the patented invention.") Direct infringement is "an issue of fact, which the patentee must prove by a preponderance of the evidence." *Purdue Pharma*, 335 F. Supp. 3d at 161 (quoting *Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1279 (Fed. Cir. 2011)).

Direct patent infringement can be literal or by equivalence. *See Purdue Pharma*, 335 F. Supp. 3d at 161. "To prove literal infringement, 'a patentee must show that every limitation of the claims asserted to be infringed is found in the accused device.'" *Id.* (quoting *Glaxo, Inc. v. Novopharm, Ltd.*, 110 F.3d 1562, 1565 (Fed. Cir. 1997)).

### 1. Doctrine of Equivalents.

"If the accused device does not literally infringe a claim, a patentee may be able to prove infringement under the doctrine of equivalents." *Purdue Pharma*, 335 F. Supp. 3d at 161. The doctrine of equivalents "allows the patentee to claim those insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes." *Id.* at 161–62 (quoting *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733 (2002)). "The central inquiry in a doctrine of equivalents analysis is whether 'the accused product or process contain[s] elements identical or equivalent to each claimed element of the patented invention.'" *Purdue Pharma*, 335 F. Supp. 3d at 162. (quoting *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997)).

An element is equivalent to an element of a claim that is not met literally if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be "insubstantial" or would have found that the structure: (1) performs substantially the same function and (2) works in substantially the same way (3) to achieve substantially the same result as the element of the claim. *See Pozen Inc. v. Par Pharm., Inc.*, 696 F.3d 1151 (Fed. Cir. 2012). "An analysis of the role played by each element in the context of the specific patent claim will thus inform the inquiry as to whether a substitute element matches the function, way, and result of the claimed element, or whether the substitute element plays a role substantially different from the claimed element." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997). Known interchangeability of the claim element and the proposed equivalent is an important factor that can support a finding of infringement under the doctrine of equivalents, and the test for equivalency extends beyond what is literally stated in a patentee's specification to be equivalent. *See Hewlett-Packard Co. v. Genrad, Inc.*, 897 F. Supp. 1479, 1484 (D. Mass. 1995) (citing *Graver Tank & Manufacturing Co. v. Linde Air Products Co.*, 339 U.S. 605, 608 (1950) and *Thomas & Betts Corporation v. Litton Systems, Inc.*, 720 F.2d 1572, 1579 (Fed. Cir. 1983)). "Insofar as the question under the doctrine is whether an accused element is equivalent to a claimed element, the proper time for evaluating equivalency—and knowledge of interchangeability between elements—is at the time of infringement, not at the time the patent was issued." *Warner-Jenkinson*, 520 U.S. at 19.

### 2. Ensnarement.

**Abiomed's Statement.** Ensnarement "is a legal limitation on the doctrine of equivalents." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1321 (Fed. Cir. 2009). Under the ensnarement doctrine, a patentee may not assert "a scope of equivalency that would encompass, or 'ensnare,' the prior art." *Id.* at 1322. "In other words, the patentee cannot assert a right to a

monopoly over equivalents that is so broad that such claims, if included in the patent application, would not have been patentable over prior art." *Janssen Biotech, Inc. v. Celltrion Healthcare Co.*, 2018 WL 10910845, at *3 (D. Mass. July 30, 2018), aff'd, 796 F. App'x 741 (Fed. Cir. 2020). Accordingly, the Federal Circuit has recognized that a "hypothetical claim analysis is a practical method to determine whether an equivalent would impermissibly ensnare the prior art." *G. David Jang, M.D. v. Bos. Sci. Corp.*, 872 F.3d 1275, 1285 (Fed. Cir. 2017) (quotations and brackets omitted); *see also Janssen*, 2018 WL 10910845, at *3 ("[T]he parties correctly agree that the court should conduct a 'hypothetical claim' analysis.").

The hypothetical claim analysis is a two-step process. *Janssen*, 2018 WL 10910845, at *3. "First, the patentee must construct a hypothetical claim that literally covers the accused device, which involves expanding the claim limitations to encompass the features of the accused product." *Id*. (quotations omitted). Second, the alleged infringer must introduce prior art "to determine whether the patentee has carried its burden of persuading the court that the hypothetical claim is patentable over the prior art." *Id*.

The "burden is on [the patentee] to prove that the range of equivalents which it seeks would not ensnare the prior art." *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 677, 685 (Fed. Cir. 1990). A patentee that fails to propose a hypothetical claim—step one of the hypothetical claim test—"has abdicated its burden under the ensnarement doctrine" and "disclaim[ed] the theory" of equivalence. *Fluidigm Corp. v. IONpath, Inc.*, 2021 WL 292033, at *7–8 (N.D. Cal. Jan. 28, 2021).

**Maquet's Statement.** Ensnarement "is an affirmative defense of the accused infringer to allege and to show that it is practicing the prior art." *Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1323 (Fed. Cir. 2000). "The patentee is not required to negate an affirmative defense that has not

21

been pled and supported with evidence." *Id*. When pled, "[e]nsnarement bars a patentee from asserting a scope of equivalency that would encompass, or 'ensnare,' the prior art." V*LSI Tech. LLC v. Intel Corp.*, No. 6:21-CV-057-ADA, 2022 U.S. Dist. LEXIS 83989, at *52 (W.D. Tex. Mar. 18, 2022). A "hypothetical claim analysis" may be useful in assessing ensnarement. *Id*. (citing *Intendis GmbH v. Glenmark Pharms. Inc.*, 822 F. 3d 1355, 1363 (Fed. Cir. 2016)). "[I]t is commonplace for courts to accept hypothetical claims after a jury has rendered a verdict." *Id.* at 55. However, "[a] patentee asserting the doctrine of equivalents has no obligation to construct a hypothetical claim that would read on the asserted equivalent but not on the prior art." *Prolitec Inc. v. Scentair Techs., LLC*, Civil Action No. 20-984-WCB, 2023 U.S. Dist. LEXIS 223508, at *28 (D. Del. Dec. 13, 2023). The "hypothetical claim analysis is 'an optional way of evaluating whether prior art limits the application of the doctrine of equivalents.'" *Id*. at *28-29 (quoting *Int'l Visual Corp. v. Crown Metal Mfg. Co.*, 991 F.2d 768, 772 (Fed. Cir. 1993)); *see also Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1576 (Fed. Cir. 1994) (stating that a hypothetical claim analysis is optional).

Regardless of the analysis, "the accused infringer bears the initial burden of producing evidence of ensnared prior art to challenge a doctrine of equivalents infringement theory." *Arigna Tech. Ltd. v. Nissan Motor Co., Ltd.*, No. 2:22-cv-00126-JRG-RSP, 2022 U.S. Dist. LEXIS 234849, at *10 (E.D. Tex. Oct. 24, 2022); *see also National Presto Indus., Inc. v. West Bend Co.*, 76 F.3d 1185, 1192 (Fed.Cir.1996) ("When the patentee has made a prima facie case of infringement under the doctrine of equivalents, the burden of coming forward with evidence to show that the accused device is in the prior art is upon the accused infringer."). "It is not enough to simply name the defense." *Maquet Cardiovascular LLC v. Abiomed, Inc.*, 2026 U.S. Dist. LEXIS 8977, *39 (D. Mass Jan. 16, 2026). An accused infringer that fails to come forward with

22

evidence to show that the accused device is in the prior art "has not met its burden of production by identifying prior art that would be captured by a claim." *Prolitec*, 2023 U.S. Dist. LEXIS 223508, at *28. A patentee "is not required to negate an affirmative defense that has not been [pleaded] and supported with evidence." *Fiskars*, 221 F.3d 1323.

### 3. Vitiation.

"Each element contained in a patent claim" is "material to defining the scope of the patented invention," and the doctrine of equivalents may not be applied to "effectively eliminate," or vitiate, any element "in its entirety." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997); *see also Teva Pharms. Int'l GmbH v. Eli Lilly & Co.*, 2022 WL 4824318, at *17 (D. Mass. Oct. 3, 2022). In other words, the "doctrine of equivalents cannot be used to erase meaningful structural and functional limitations of the claim on which the public is entitled to rely in avoiding infringement." *Conopco, Inc. v. May Dep't Stores Co.*, 46 F.3d 1556, 1562 (Fed. Cir. 1994) (quotations omitted). "The proper inquiry for the court is to apply the doctrine of equivalents, asking whether an asserted equivalent represents an 'insubstantial difference' from the claimed element, or 'whether the substitute element matches the function, way, and result of the claimed element.'" *Deere & Co. v. Bush Hog, LLC,* 703 F.3d 1349, 1356 (Fed. Cir. 2012) (quoting *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40, 117 S. Ct. 1040, 137 L. Ed. 2d 146 (1997)).

### 4. Reverse Doctrine of Equivalents.

**Abiomed's Statement.** The reverse doctrine of equivalents ("RDOE") provides that "the patentee may bring the defendant within the letter of his claims" and yet fail to prove infringement where "the latter has so far changed the principle of the device" that the accused product is no longer the same invention in any meaningful legal sense. *Boyden Power-Brake Co. v. Westinghouse*, 170 U.S. 537, 568 (1898). Where a device is "so far changed in principle" from the

patented article that it performs the same function in a "substantially different way," the reverse doctrine of equivalents applies "to restrict the claim and defeat the patentee's action for infringement." *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950). An accused infringer can rely on RDOE to show that, despite literal claim coverage, the accused device was materially different in principle from the patented invention.

In addition, RDOE is a jury issue as it "raises a fact question, determinable on inquiry into whether a product has been so far changed in principle that it performs the same or similar function in a substantially different way." *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1124 (Fed. Cir. 1985) (en banc). Because RDOE is "directed to a fact issue," courts "cannot convert the fact question raised by the reverse doctrine of equivalents into a legal question." *Id*.

**Maquet's Statement.** The doctrine of reverse doctrine of equivalents may apply "where a device is so far changed in principle from a patented article that it performs the same or a similar function in a substantially different way, but nevertheless falls within the literal words of the claim, the doctrine of equivalents may be used to restrict the claim and defeat the patentee's action for infringement." *Graver Tank & Mfg. Co., Inc. v. Linde Air Products Co.*, 339 U.S. 605, 809-09 (1950). The Federal Circuit has opined that it has "never 'affirmed a decision finding noninfringement based on the reverse doctrine of equivalents.'" *Steuben Foods, Inc. v. Shibuya Hoppmann Corp.*, 127 F.4th 348, 357 (Fed. Cir. 2025) (quoting *Tate Access Floors v. Interface Architectural Res.*, 279 F.3d 1357, 1368 (Fed. Cir. 2002); *see also U.S. Steel Corp. v. Phillips Petroleum Co.*, 865 F.2d 1247, 1253 (Fed. Cir. 1989); *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 842 (Fed. Cir. 1991); *Odetics, Inc. v. Storage Tech. Corp.*, 116 F.3d 1497 (Fed. Cir. 1997); *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1351 (Fed. Cir. 2003); *Roche Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372, 1378 (Fed. Cir. 2008); *DePuy Spine, Inc. v.*

24

*Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1339 (Fed. Cir. 2009). The Federal Circuit has further noted that this is "with good reason: when Congress enacted 35 U.S.C. § 112, after the decision in *Graver Tank*, it imposed requirements for the written description, enablement, definiteness, and means-plus-function claims that are co-extensive with the broadest possible reach of the reverse doctrine of equivalents." *Tate*, 279 F.3d at 1368.

### b. Infringement Under 35 U.S.C. § 271(c).

Contributory infringement, a type of indirect infringement, is codified in 35 U.S.C. § 271(c). Section 271(c) states:

> Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

35 U.S.C. § 271(c). Under this section, "the seller of a component part of a patented invention is liable as a contributory infringer if he knows that the component (1) constitutes a material part of the invention; (2) is especially made or especially adapted for use in an infringement of such patent; and (3) is not a staple article or commodity of commerce suitable for substantial noninfringing use." *Printguard, Inc. v. Anti-Marking Sys., Inc.*, 535 F. Supp. 2d 189, 198 (D. Mass. 2008) (Saylor, J.). Contributory infringement therefore requires that the infringer have "knowledge of the patent in suit and knowledge of patent infringement." *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 330 F. Supp. 3d 574, 614 (D. Mass. 2018) (quoting *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S.Ct. 1920, 1926 (2015)). Additionally, in order for a defendant to be liable for contributory infringement, "a patentee must show that some party has directly infringed." *SiOnyx,* 330 F. Supp. 3d at 614.

### c.  Infringement Under 35 U.S.C. § 271(f).

Section 271(f) "creates a cause of action for supplying components of a patented invention for assembly outside the United States." *Abiomed, Inc. v. Maquet Cardiovascular LLC*, No. CV 16-10914-FDS, 2020 WL 10500362, at *1 (D. Mass. June 24, 2020). Section 271(f) reads:

> (1) Whoever without authority supplies or causes to be supplied in or from the United States all or a substantial portion of the components of a patented invention, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer.

> (2) Whoever without authority supplies or causes to be supplied in or from the United States any component of a patented invention that is especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use, where such component is uncombined in whole or in part, knowing that such component is so made or adapted and intending that such component will be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer.

35 U.S.C. § 271(f). Section 271(f)(1) prohibits "supplying all or a substantial portion of the components of a patented invention from the United States for combination abroad." *Life Techs. Corp. v. Promega Corp.*, 580 U.S. 140, 141 (2017). The term "substantial portion" refers to a quantitative measurement, and therefore a single component does not constitute a substantial portion capable of giving rise to liability under § 271(f)(1). *Id.* Section 271(f)(2) prohibits supplying a "single component especially made or especially adapted for use in the invention." *Id.* at 150 (internal quotations omitted). Liability under § 271(1) does not require "that the infringer must actually combine or assemble the components." *Waymark Corp. v. Porta Sys. Corp.*, 245 F.3d 1364, 1368 (Fed. Cir. 2001).

### d.  Obviousness Under 35 U.S.C. § 103.

A patent claim is invalid for obviousness "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been

obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains..." 35 U.S.C. § 103. Obviousness is a question of law based on underlying factual determinations. *Univ. of Strathclyde v. Clear-Vu Lighting LLC*, 17 F.4th 155, 160 (Fed. Cir. 2021). Those factual inquiries include "the scope and content of the prior art," "differences between the prior art and the claims at issue," "the level of ordinary skill in the pertinent art," and any objective indicia of nonobviousness, "such 'as commercial success, long felt but unsolved needs, failure of others,' and unexpected results." *In re Theripion, Inc.*, No. 2022-1346, 2023 WL 5125187, at *3 (Fed. Cir. Aug. 10, 2023) (quoting *Elbit Sys. of Am., LLC v. Thales Visionix, Inc.*, 881 F.3d 1354, 1357 (Fed. Cir. 2018)).

In assessing obviousness, a "court must ask whether the [claimed] improvement is more than the predictable use"—a "predictable variation"—"of prior art elements according to their established functions," considering whether more is involved than "the simple substitution of one known element for another or the mere application of a known technique to a piece of prior art ready for the improvement." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 417 (2007). "[I]f a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill." *Id*. at 417. The court should consider a range of real-world facts to determine "whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue." *Id*. at 418. "One of the ways in which a patent's subject matter can be proved obvious is by noting that there existed at the time of invention a known problem for which there was an obvious solution encompassed by the patent's claims." *Id*. at 419–20.

27

   e.   **Written Description, Enablement, and Indefiniteness Under 35 U.S.C. § 112.**

35 U.S.C. § 112 requires "a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same…." *Id.*

### 1.   Written Description.

**Abiomed's Statement.** Section 112 includes a written description requirement: "Specifically, the description must 'clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed.'" *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc) (citation omitted). The test for sufficiency of the written description is whether the disclosure "reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Id*. at 1351. "A 'mere wish or plan' for obtaining the claimed invention does not satisfy the written description requirement." *Novozymes A/S v. DuPont Nutrition Biosciences APS*, 723 F.3d 1336, 1344 (Fed. Cir. 2013).

"What is claimed by the patent application must be the same as what is disclosed in the specification; otherwise the patent should not issue." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 736 (2002). Thus, a patent applicant "cannot under 35 U.S.C. § 112 claim a broader invention than that set forth in the written description contained in his specification." *In re Sus*, 49 C.C.P.A. 1301, 1317 (1962).

**Maquet's Statement.** "Written description is a question of fact, judged from the perspective of one of ordinary skill in the art as of the relevant filing date." *Tobinick v. Olmarker*, 753 F.3d 1220, 1226 (Fed. Cir. 2014) (quotations omitted); *see also, e.g., Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc). The Federal Circuit has held that

"[i]n evaluating whether a patentee has fulfilled this requirement, our standard is that the patent's disclosure must allow one skilled in the art to visualize or recognize the identity of the subject matter purportedly described." *Koito Mfg. Co. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1154 (Fed. Cir. 2004) (internal quotation omitted). "Terms need not be used in *haec verba*, however." *Id*. Instead, "the written description requirement can be satisfied by words, structures, *figures, diagrams*, formulas, etc." *Id*. (emphasis in original) (internal quotation omitted). Likewise, "a patent claim is not necessarily invalid for lack of written description just because it is broader than the specific examples disclosed." *Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1371 (Fed. Cir. 2009). The relevant factual inquiry is whether the disclosure "reasonably convey[s] to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Lochner Techs., LLC v. Vizio, Inc.*, 567 F. App'x 931, 938 (Fed. Cir. 2014). Answering this question "requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art." *Id*. (quoting *Ariad*, 598 F.3d at 1351). Ultimately, the defendant "must demonstrate by clear and convincing evidence that the claims at issue are invalid for lack of written description." *Laryngeal Mask Co. v. Ambu A/*S, 618 F.3d 1367, 1373–1374 (Fed. Cir. 2010). This Court has observed that "[t]he written-description requirement does not require 'a patent to describe the *unclaimed* features of the infringing product.'" D.I. 999 at 16–17 (quoting *Hologic, Inc. v. Minerva Surgical, Inc*., 325 F. Supp. 3d 507, 526 (D. Del. 2018), and citing *Amgen Inc. v. Hoechst Marion Roussel, Inc*., 314 F.3d 1313, 1333 (Fed. Cir. 2003)) (emphasis in original; brackets omitted).

### 2. Enablement.

**Abiomed's Statement.** A patent is invalid for failure to satisfy the enablement requirement under 35 U.S.C. § 112 when the written description fails to "enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the" invention. *Id*.

"Claims are not enabled when, at the effective filing date of the patent, one of ordinary skill in the art could not practice their full scope without undue experimentation." *Wyeth & Cordis Corp. v. Abbott Labs.*, 720 F.3d 1380, 1384 (Fed. Cir. 2013). "'[T]he specification must enable the full scope of the invention as defined by its claims,' allowing for 'a reasonable amount of experimentation.'" *Seagen Inc. v. Daiichi Sankyo Co., Ltd.*, 160 F.4th 1322, 1332 (Fed. Cir. 2025) (quoting *Amgen v. Sanofi*, 598 U.S. 594, 610, 612 (2023)).

> If a patent claims an entire class of processes, machines, manufactures, or compositions of matter, the patent's specification must enable a person skilled in the art to make and use the entire class. In other words, the specification must enable the full scope of the invention as defined by its claims. The more one claims, the more one must enable.

*Amgen v. Sanofi*, 598 U.S. 594, 610 (2023). Factors considered in determining whether undue experimentation is required include:

> (1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims.

*In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).

**Maquet's Statement.** 35 U.S.C. § 112 requires that the "specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains . . . ." The statute requires "a patentee to teach the public how to practice the full scope of the claimed invention." *McRO, Inc. v. Bandai Namco Games Am., Inc.*, 959 F.3d 1091, 1100 (Fed. Cir. 2020) (internal quotation marks omitted). A party must prove lack of enablement by clear and convincing evidence. *Id*. at 1096. The requirement in 35 U.S.C. § 112 of an enabling disclosure "does not apply to the entirety of an infringing product." *Teva Branded Pharm. Prods. R&D, Inc. v. Amneal*

*Pharms. of N.Y., LLC*, 124 F.4th 898, 914 (Fed. Cir. 2024) (quoting 35 U.S.C. § 112(a)). "Rather, it applies to what the patent discloses and claims as 'the invention.'" *Id*. Thus, the "statutory requirement [of enablement] is limited to what is claimed," meaning "Section 112 requires enablement of only the claimed invention, not matter outside the claims." *McRO, Inc.*, 959 F.3d at 1100; *see also Hologic, Inc. v. Minerva Surgical, Inc.*, 325 F. Supp. 3d 507, 526-27 (D. Del. 2018). ("Minerva's argument that the Patents-in-Suit had to provide written description and enablement of the accused devices['] plasma formation feature is unavailing. The claims at issue herein do not recite a plasma formation feature."). Likewise, "[e]vidence of unsuccessful experimentation without any link to the claims at issue is not evidence of a lack of enablement." *Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167, 1186 n.9 (Fed. Cir. 2002). Finally, in determining whether a claim is enabled, "[a]n artisan's knowledge of the prior art and routine experimentation can often fill gaps, interpolate between embodiments, and perhaps even extrapolate beyond the disclosed embodiments. . . ." *McRO, Inc.*, 959 F.3d at 1102 (internal quotation marks omitted).

### 3. Indefiniteness.

"The Patent Act requires that a patent specification 'conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as [the] invention.'" *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014) (quoting 35 U.S.C. §112, ¶ 2 (2006 ed.). "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Id*.

### f. Willful Infringement.

**Maquet's Statement.** A party willfully infringes an asserted patent if the party: (1) has "knowledge of the patent alleged to be willfully infringed" and (2) "know[s] that its acts constitute

31

infringement." *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 330 F. Supp. 3d 574, 608 (D. Mass. 2018) (quoting *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016)) (citing *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 111 (2016) (Breyer, J., concurring)). A patentee "need only establish willfulness by a preponderance of the evidence." *SiOnyx*, 330 F.Supp.3d at 609.

The first requirement, whether the party's conduct is willful, "is a question of intent that must be inferred from all the circumstances by the factfinder." *SiOnyx*, 330 F.Supp.3d at 608 (citing *WCM Indus., Inc. v. IPS Corp.*, 721 F. App'x 959, 970 (Fed. Cir. 2018)). There is "no bright-line rule as to what level of knowledge is sufficient" to show intent; rather, "it must be inferred from all the evidence and circumstantial evidence can suffice." *SiOnyx*, 330 F.Supp.3d at 610. Even where an alleged infringer did not have actual knowledge, willful blindness is sufficient and can be established by showing that the alleged infringer "subjectively believe[s] that there is a high probability that a fact exists" and "take[s] deliberate actions to avoid learning of that fact." *Id.* at 612 (quoting *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011)). The second requirement, culpability, can be established even where "the products were developed and first sold prior to the asserted patents' issuance." *Id.* at 611.

**Abiomed's Statement.** Willful infringement requires "deliberate or intentional infringement." *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021); *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020). "To establish willfulness, a patentee must show that the accused infringer had a specific intent to infringe at the time of the challenged conduct." *BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Organisation*, 28 F.4th 1247, 1274 (Fed. Cir. 2022). "Knowledge of the asserted patent and evidence of infringement is necessary, but not sufficient, for a finding of willfulness." *Bayer*, 989 F.3d at 988. The question of willfulness is a question of the actor's intent, which must

32

be inferred from all the circumstances. *WCM Indus., Inc. v. IPS Corp.*, 721 F. App'x 959, 970 (Fed. Cir. 2018).

### g. Assignor Estoppel.

**Maquet's Statement.** The equitable doctrine of assignor estoppel "precludes a person who has assigned the rights to a patent and those in privity with that assignor from later contending that the patent was invalid." *Abiomed, Inc. v. Maquet Cardiovascular LLC*, No. CV 16-10914-FDS, 2023 WL 4038564, at *10 (D. Mass. June 15, 2023) (citing *Minerva Surgical, Inc. v. Hologic, Inc.*, 594 U.S. 559, 566 (2021); *Shamrock Techs, Inc. v. Med. Sterilization, Inc.*, 903 F.2d 789, 793 (Fed. Cir. 1990)). Assignor estoppel applies when an assignor's invalidity claim explicitly or implicitly contradicts their past representations made when the patent was assigned. *Minerva¸* 594 U.S. at 576; *see also Abiomed*, 2023 WL 4038564, at *10–11. Rooted in an underlying principle of fair dealing, the doctrine is "primarily concerned with the balance of equities between the parties." *Abiomed*, 2023 WL 4038564, at *11 (internal quotations omitted).

Whether an accused infringer is in privity with the assignor also depends on the balance of equities. *Id.* "Where an accused infringer availed itself of the assignor's knowledge and assistance to conduct the infringement, principles of privity will estop the infringer as well as the assignor." *Id.* (quoting *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 839 (Fed. Cir. 1991)) (internal quotations omitted). The Federal Circuit has identified eight "*Shamrock* factors" to assist courts in making a finding of privity for purposes of assignor estoppel:

> (1) the assignor's leadership role at the new employer; (2) the assignor's ownership stake in the defendant company; (3) whether the defendant company changed course from manufacturing non-infringing goods to infringing activity after the inventor was hired; (4) the assignor's role in the infringing activities; (5) whether the inventor was hired to start the infringing operations; (6) whether the decision to manufacture the infringing product was made partly by the inventor; (7) whether the defendant company began manufacturing the accused product shortly after hiring the assignor; and (8) whether the inventor was in charge of the infringing operation.

*MAG Aerospace Indus., Inc. v. B/E Aerospace, Inc.*, 816 F.3d 1374, 1380 (Fed. Cir. 2016) (listing and applying the *Shamrock* factors). Privity between an accused infringer and an assignor can apply "even if an assignor did not directly design the infringing features of the accused product, as long as he or she was still involved in the development of the infringing product." *Abiomed*, 2023 WL 4038564, at *11 (citing *Brocade Commc'ns Sys. v. A10 Networks, Inc.*, 2012 WL 2326064, at *5 (N.D. Cal. June 18, 2012)).

**Abiomed's Statement.** Assignor estoppel is "an equitable doctrine." *Pandrol USA, LP v. Airboss Ry. Prods., Inc.*, 424 F.3d 1161, 1166 (Fed. Cir. 2005).

Where it applies, assignor estoppel "precludes a person who has assigned the rights to a patent and those in privity with that assignor from later contending that the patent was invalid." *Abiomed, Inc. v. Maquet Cardiovascular LLC*, No. CV 16-10914-FDS, 2023 WL 4038564, at *10 (D. Mass. June 15, 2023) (citing *Minerva Surgical, Inc. v. Hologic, Inc.*, 594 U.S. 559, 566 (2021); *Shamrock Techs, Inc. v. Med. Sterilization, Inc.*, 903 F.2d 789, 793 (Fed. Cir. 1990)). Assignor estoppel applies only when an assignor's invalidity claim contradicts the assignor's "explicit or implicit representations… made in assigning the patent." *Minerva*, 594 U.S. at 563; *id.* at 566 ("The doctrine applies only when an inventor says one thing (explicitly or implicitly) in assigning a patent and the opposite in litigating against the patent's owner.").

An inventor makes an implicit warranty of patentability for his invention when selling his patent rights. *Minerva*, 594 U.S. at 575. Though "the assignment of specific patent claims carries with it an implied assurance," there is no basis for assignor estoppel where "the assignment occurs before an inventor can possibly make a warranty of validity as to specific patent claims." *Id.* at 576. Further, "a change in patent claims… can remove the rationale for applying assignor estoppel," "which arises most often when an inventor assigns a patent application, rather than an

issued patent." *Id.* at 577. "Assuming that the new claims are materially broader than the old claims, the assignor did not warrant to the new claims' validity. And if he made no such representation, then he can challenge the new claims in litigation: Because there is no inconsistency in his positions, there is no estoppel. The limits of the assignor's estoppel go only so far as, and not beyond, what he represented in assigning the patent application." *Id.* Without "a prior inconsistent representation" by the assignor, "there is no basis for estoppel." *Id.* at 578.

The Federal Circuit has identified eight "*Shamrock* factors" to assist courts in determining whether the defendant is in privity with the assignor:

> (1) the assignor's leadership role at the new employer; (2) the assignor's ownership stake in the defendant company; (3) whether the defendant company changed course from manufacturing non-infringing goods to infringing activity after the inventor was hired; (4) the assignor's role in the infringing activities; (5) whether the inventor was hired to start the infringing operations; (6) whether the decision to manufacture the infringing product was made partly by the inventor; (7) whether the defendant company began manufacturing the accused product shortly after hiring the assignor; and (8) whether the inventor was in charge of the infringing operation.

*MAG Aerospace Indus., Inc. v. B/E Aerospace, Inc*., 816 F.3d 1374, 1380 (Fed. Cir. 2016) (listing and applying the *Shamrock* factors).

Under the *Shamrock* factors, privity requires not merely tangential "involve[ment]" but rather substantial involvement such as a "role in the infringing activities" or being "hired to start the infringing operations." *MAG Aerospace*, 816 F.3d at 1380. Maquet quotes a sentence from this Court's summary judgment decision in *Maquet I* ("even if an assignor did not directly design the infringing features of the accused product, as long as he or she was still involved in the development of the infringing product") to imply that minor involvement is enough for privity, but the quoted sentence is not itself a correct statement of law and Abiomed reserves all rights of appeal. Assignor estoppel cases have required that the inventor or assignor "played a major role

in developing" the accused feature or product, not just that he or she was minimally "involved." *See Abiomed*, 2023 WL 4038564, at \*11; *Mikkelsen Graphic Eng'g Inc. v. Zund Am. Inc.*, 2014 WL 12654766, at \*5 (E.D. Wis. May 23, 2014).

If assignor estoppel applies and privity is shown, the defendant "cannot use prior art in an infringement suit 'to destroy the patent.'" *Minerva Surgical*, 594 U.S. at 569-70.

### h. Reasonable Royalty.

**Maquet's Statement.** A plaintiff is entitled to damages equivalent to a reasonable royalty, or the amount that the defendant would have paid for a license to the asserted patents if the parties had negotiated a license at the time of first alleged infringement. 35 U.S.C. § 284 ("damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interests and costs as fixed by the Court"); *see also LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 60 (Fed. Cir. 2012). The district court must award damages in an amount no less than a reasonable royalty. *Dow Chem. Co. v. Mee Indust., Inc.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003) (citing 35 U.S.C. § 284).

The reasonable royalty may be based on a determination of "the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began," *i.e.*, the "hypothetical negotiation." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009); *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1357 (Fed. Cir. 2012). To determine a reasonable royalty, courts may apply the fifteen factors established in *Georgia-Pacific v. U.S. Plywood Corp.*:

1. The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.

2. The rates paid by the licensee for the use of other patents comparable to the patent in suit.

36

3. The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

4. The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

5. The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promotor.

6. The effect of selling the patented specialty in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.

7. The duration of the patent and the term of the license.

8. The established profitability of the product made under the patent; its commercial success; and its current popularity.

9. The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.

10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

11. The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.

37

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13. The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14. The opinion testimony of qualified experts.

15. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee -- who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention -- would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

*Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), *mod. and aff'd*, 446 F.2d 295 (2d Cir. 1971), cert. denied, 404 U.S. 870 (1971).

This hypothetical negotiation inquiry assumes an arms-length negotiation between willing parties and considers not just what the accused infringer would be willing to pay but also what the patent owner would accept. *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 771 (Fed. Cir. 2014) ("the ultimate royalty determination must reflect the two-sided nature of the posited negotiation). As such, the reasonable royalty analysis cannot be so one-sided that it focuses only on what the accused infringer would be willing to pay. *Rite-Hite Corp. v. Kelley Co.,* 56 F.3d 1538,

38

1555 (Fed. Cir. 1995) ("what an infringer would prefer to pay is not the test for damages"). Further, the hypothetical negotiation inquiry "assumes infringement and validity of the patents." *Aqua Shield*, 774 F.3d at 771. Accordingly, reasonable royalty damages are not capped as a matter of law at the cost of implementing the cheapest available, acceptable, non-infringing alternative. *See Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1373 (Fed. Cir. 2008) (it "is wrong as a matter of law to claim that reasonable royalty damages are capped at the cost of implementing the cheapest available, acceptable, noninfringing alternative") (citation omitted).

**Abiomed's Statement.** It is axiomatic that "[a] patentee is only entitled to a reasonable royalty attributable to the infringing features [of an accused product]. The patentee 'must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features.'" *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 977 (Fed. Cir. 2018) (quoting *Garretson v. Clark*, 111 U.S. 120, 121 (1884)). "The Federal Circuit has made clear that when 'small elements of multi-component products are accused of infringement, calculating a royalty on the entire product carries a considerable risk that the patentee will be improperly compensated for non-infringing components of that product.'" *Singular Computing LLC v. Google LLC*, No. CV 19-12551-FDS, 2023 WL 8810187, at *6 (D. Mass. Dec. 20, 2023) (quoting *LaserDynamics Inc. v. Quanta Comput. Inc.*, 694 F.3d 51, 66–67 (Fed. Cir. 2012)); *VirnetX Inc. v. Cisco Sys.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014) (collecting cases). Further, when "claims recite both conventional elements and unconventional elements, the [factfinder] must determine how to account for the relative value of the patentee's invention in comparison to the value of the conventional elements recited in the claim, standing alone." *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1338 (Fed.

39

Cir. 2015) (citation omitted); *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1348 (Fed. Cir. 2018).

### i.  Enhanced Damages.

Upon a finding of infringement and award of damages, 35 U.S.C. § 284 states in relevant part that "the court may increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284. Awards of enhanced damages are designed as a punitive sanction and are warranted when the infringer's conduct can be described as "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103–04 (2016). District courts "enjoy discretion in deciding whether to award enhanced damages, and in what amount," but enhanced damages are "generally reserved for egregious cases of culpable behavior." *Id.* at 104. In making the determination, district courts should "take into account the particular circumstances of each case." *Id.* at 106. Whether the conduct at issue is sufficiently egregious is established by a preponderance of the evidence. *Id.* at 107.

District courts often consider the "*Read* factors" in their analysis: whether the infringer deliberately copied the patent owner's ideas or design of another; whether the infringer investigated the patent's scope and formed a good-faith belief that it was invalid or that it was not infringed; the infringer's litigation behavior, including overly aggressive lawyering or pursuit of legal strategies that led to repetitive, irrelevant, or frivolous work for the court and the parties; the infringer's size and financial condition; the closeness of the outcome of the case; the duration of the infringement; remedial action by the infringer; and the infringer's motivation to harm. *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 827 (Fed. Cir. 1992), *abrogated in part on other grounds by Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996). While the *Read* factors can be instructive, "the touchstone for awarding enhanced damages after *Halo* is egregiousness." *Trs. of Bos. Univ. v. Everlight Elecs.*

40

*Co.*, 212 F. Supp. 3d 254, 257 (D. Mass. 2016); *see also Crane Sec. Techs., Inc. v. Rolling Optics AB*, 337 F. Supp. 3d 48, 57 (D. Mass. 2018), *aff'd*, 784 F. App'x 782 (Fed. Cir. 2019) ("While the Court broadly considers the particular circumstances of the case as a whole, several of the *Read* factors are instructive.")

        j.   **Prosecution Laches.**

       **Abiomed's Statement.** Prosecution laches renders a patent unenforceable where unreasonable delays occurred during patent prosecution that prejudices others. *Hyatt v. Hirshfeld*, 998 F.3d 1347, 1359–60 (Fed. Cir. 2021) (citing *Cancer Rsch. Tech. LTD v. Barr Labs.*, 625 F.3d 724 (Fed. Cir. 2010)). An applicant must "not only comply with the statutory requirements and PTO regulations but must also prosecute its applications in an equitable way that avoids unreasonable, unexplained delay that prejudices others." *Id.* at 1366. Prosecution laches requires proof of two elements: "(a) that the patentee's delay in prosecution was unreasonable and inexcusable under the totality of the circumstances; and (b) that the accused infringer suffered prejudice attributable to the delay." *Id*. at 1362. Whether the conduct amounted to unreasonable delay is a holistic, fact-dependent inquiry. *Personalized Media Commc'ns, LLC v. Apple Inc.*, 57 F.4th 1346, 1354 (Fed. Cir. 2023). Prejudice requires only "that the accused infringer or others 'invested in, worked on, or used the claimed technology during the period of delay.'" *Hyatt*, 998 F.3d at 1362 (quoting *Cancer Rsch.*, 625 F.3d at 729).

       **Maquet's Statement.** Prosecution laches is an equitable defense to patent infringement, which "may render a patent unenforceable when it has issued only after an unreasonable and unexplained delay in prosecution that constitutes an egregious misuse of the statutory patent system under the totality of the circumstances." *Google LLC v. Sonos, Inc.*, No. 2024-1097, 2025 U.S. App. LEXIS 22126, *18 (Fed. Cir. Aug. 28, 2025). It is an "exceptional" defense to be "used sparingly." *Symbol Techs., Inc. v. Lemelson Med., Educ. & Rsch. Found.*, 422 F.3d 1378, 1385

(Fed. Cir. 2005). To prevail, an accused infringer must show (1) that the "delay in prosecution was unreasonable and inexcusable under the totality of circumstances," and (2) that it "suffered prejudice attributable to that delay." *Google*, 2025 U.S. App. LEXIS 22126, at \*18. Mere delay is not enough; it must be coupled with "egregious" conduct and actual prejudice. *Id*. To prove prejudice, an accused infringer "must show evidence of intervening rights," *i.e.*, that either it or others "invested in, worked on, or used the claimed technology during the period of delay." *Id*. An accused infringer must further show that the alleged delay "adversely affected" its intervening rights. *Shire Orphan Therapies LLC v. Fresenius Kabi USA, LLC*, No. 15-1102-GMS, 2018 U.S. Dist. LEXIS 93911, at \*69 (D. Del. June 5, 2018). In other words, the accused infringer must show that it "would have either done something differently or experienced a change in economic position as a result of the alleged delay in issuance of the patent-in-suit." *Id*. The accused infringer bears the burden of establishing both prongs—delay and prejudice—by clear and convincing evidence. *Id.*, 71.

### k. Prejudgment Interest.

35 U.S.C. § 284 states in relevant part that "[u]pon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, ***together with interest and costs as fixed by the court.***" 35 U.S.C. § 284 (emphasis added). The Supreme Court has opined that:

> The standard governing the award of prejudgment interest under § 284 should be consistent with Congress' overriding purpose of affording patent owners complete compensation. In light of that purpose, we conclude that prejudgment interest should ordinarily be awarded. In the typical case an award of prejudgment interest is necessary to ensure that the patent owner is placed in as good a position as he would have been in had the infringer entered into a reasonable royalty agreement. An award of interest from the time that the royalty payments would have been received merely serves to make the patent owner whole, since his damages consist

42

not only of the value of the royalty payments but also of the forgone use of the money between the time of infringement and the date of the judgment.

*General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655–56 (1983). As such, Supreme Court has held that upon a finding of infringement "prejudgment interest should be awarded under § 284 absent some justification for withholding such an award. *Id*. at 657.

Whether prejudgment interest for patent infringement "should be compounded or uncompounded [is] ... left largely to the discretion of the district court." *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, No. 2023-1772, 2025 WL 649737, at *10 (Fed. Cir. Feb. 28, 2025) (citing *Bio-Rad Lab'ys, Inc. v. Nicolet Inst. Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986)); *see also Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1555 (Fed. Cir. 1995) (en banc) ("It has been recognized that an award of compound rather than simple interest assures that the patent owner is fully compensated. However, the determination whether to award simple or compound interest is a matter largely within the discretion of the district court."). "[D]istrict courts [have a] wide latitude in the selection of interest rates, and [are] permitted the use of statutory rates set by states, U.S. Treasury bill rates, and the prime rate." *Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065, 1076 (Fed. Cir. 2020). "Where a jury awards a lump-sum amount as a compensation for infringement, the prejudgment interest is properly applied to the entire amount beginning on the first date of the infringement." *Schwendimann*, 959 F.3d at 1076.

### l.    Post-Judgment Interest.

Post-judgment interest "shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961. "Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." *Id*. Further, "[p]ost-judgment interest under section 1961

43

applies not only to the amount of the judgment itself, but also to any prejudgment interest that accrued on the judgment." *HALO Elecs., Inc. v. Pulse Elecs., Inc.*, No. 2023-1772, -1966, 2025 U.S. App. LEXIS 4661, *29 (Fed. Cir. 2025).

### m.  Exceptional Case.

35 U.S.C. § 285 provides an opportunity for the court to award attorney fees and costs to the prevailing party in "exceptional" cases, that is, those cases that, in view of the totality of the circumstances, "stand[] out from others" with respect to the "substantive strength" of the losing party's litigating position and the "unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 545 (2014).

## VII.  REQUESTED AMENDMENTS TO THE PLEADINGS.

The parties do not seek to amend the pleadings at present.

## VIII.  ADDITIONAL MATTERS TO AID IN THE DISPOSITION OF TRIAL.

### a.  Sanctions Under Fed. R. Civ. P. 37(e).

#### 1.  Maquet's Statement.

Maquet incorporates by reference as if set forth fully herein its Motion for Rule 37(e) Sanction Finding Privity and Assignor Estoppel and supporting Memorandum and Reply. *See* D.I. 545.

A party has a duty to preserve discovery from the moment "when litigation is reasonably anticipated." *NuVasive, Inc. v. Day*, 2021 U.S. Dist. LEXIS 260128, at *14 (D. Mass. Aug. 23, 2021). "[S]poliation is the intentional, negligent, or malicious destruction of relevant evidence" that a party had a duty to preserve. *Gordon v. DreamWorks Animation SKG, Inc.*, 935 F. Supp. 2d 306, 313 (D. Mass. 2013). Under that rule, sanctions are appropriate "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced

through additional discovery." Fed. R. Civ. P. 37(e). A court may presume that the lost information was unfavorable to the party that destroyed it only if it was destroyed "with the intent to deprive another party of [its] use in the litigation." Fed. R. Civ. P. 37(e)(2). If there is no such showing, but the destruction still prejudices another party, the court may order sanctions "no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1).

In other words, a party seeking an adverse-inference instruction under Rule 37(e)(2) must first make the "rudimentary . . . show[ing] that there is evidence that has been spoiled (i.e., destroyed or not preserved)." *Gomez v. Stop & Shop Supermarket Co.*, 670 F.3d 395, 399 (1st Cir. 2012). If so, it then "must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with [the 'intent to deprive' another party of the lost evidence]; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002); *Hoffer v. Tellone*, 128 F.4th 433, 438 (2d Cir. 2025) (clarifying that the imposition of sanctions under Rule 37(e)(2) requires a finding of specific intent).

Abiomed's February 27, 2026, court-ordered production of its litigation-hold notice showed that Abiomed never required Dr. Aboul-Hosn to preserve any of the technical documents reflecting his work at Abiomed. These missing documents are the key evidence that would show Dr. Aboul-Hosn's privity with Abiomed for purposes of assignor estoppel.

By its express terms, Abiomed's litigation hold did not require Dr. Aboul-Hosn to preserve documents concerning the accused Impella products during the nineteen years he consulted for Abiomed, from 2007 to 2025. Instead, the litigation hold requested preservation of those documents only for the wrong time period. In other words, Abiomed expressly carved out all of

45

the key documents by imposing an unreasonable and indefensible date restriction that ensured none of Dr. Aboul-Hosn's technical documents would be produced in the litigation. This new revelation answers a central evidentiary question that has persisted throughout this case: Why weren't Dr. Aboul-Hosn's technical documents preserved and produced? We now know the answer: the documents no longer exist due to the predictable result of what Abiomed affirmatively chose to preserve—and chose not to preserve—at the outset of this decade-long litigation.

As a result of Abiomed's intentional choices, evidence central to the key assignor-estoppel issue has been lost. Under Rule 37(e)(2), the record now supports a sanction finding that the "lost information was unfavorable to the party [Abiomed]," meaning a sanction finding that the missing documents would have established that Dr. Aboul-Hosn assisted Abiomed with the accused products, thus placing him in privity with Abiomed for purposes of assignor estoppel. Because privity is the sole remaining factual predicate for applying assignor estoppel in this case, Maquet seeks an order holding that assignor estoppel applies, thus precluding Abiomed from challenging the validity of Maquet's patent.

### 2. Abiomed's Statement

As explained in Abiomed's Opposition to Maquet's Motion for Sanctions, Abiomed disagrees with Maquet's characterization of the law and facts (including the meaning of the litigation hold, which *did* require custodians to preserve documents about the Impella products during the relevant time frame) and opposes any sanctions. Abiomed incorporates by reference its Opposition to Maquet's Motion for Sanctions Under Fed. R. Civ. P. 37(e).

### b. Claim Construction.

### 1. Abiomed's Statement.

The construction of claim terms in a patent is a question of law. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 381 (1996). "[C]laim construction requires the court to determine

what claim scope is appropriate in the context of the patents-in-suit." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008).

Likewise, "whether the relevant claim language contains a means-plus-function limitation is, as with all claim construction issues, a question of law." *TriMed, Inc. v. Stryker Corp.*, 514 F.3d 1256, 1259 (Fed. Cir. 2008). "To determine whether 35 U.S.C. § 112 ¶ 6 applies, the essential inquiry is 'whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure.'" *Abiomed Inc. v. Maquet Cardiovascular LLC*, No. 2024-1062, 2026 WL 346501, at *6 (Fed. Cir. Feb. 9, 2026) [hereinafter *Maquet I Appeal*] (quoting *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015)). "'Mechanism' is a nonce term that is 'tantamount to using the word "means,"' and 'guide' is just a functional modifier." *Id.* (citation omitted). Thus, "the term 'guide mechanism' is a means-plus-function term" governed by § 112, ¶ 6, and is limited to the structures disclosed in the specification. *Id.* at *7 (affirming construction with the function of "guid[ing] said intravascular blood pump and cannula to a predetermined location within the circulatory system of a patient" and the structures of "(a) a guide wire passing slideably through a central lumen extending through a drive cable assembly, blood pump, and cannula; (b) a guide wire passing slideably through a lumen extending through a guide carriage integrally formed along at least a portion of the cannula sidewall; or (c) a conduit assembly, including guide catheter, a rotor shroud, and a cannula, which is capable of docking to a separate pump assembly."). Under Maquet's contention that the '783 patent has the same specification as the '100 patent, the claim term "guide mechanism" in claims 1 and 3 of the '783 patent is similarly a means-plus-function term that is limited to the same structures in the specification.

47

### 2. Maquet's Statement.

Claim construction is not an issue before the Court or the jury in the upcoming jury and bench trial. Nor is there any pending motion regarding claim construction before the Court. Therefore, as Maquet told Abiomed during the parties' recent meet-and-confer, the issue of claim construction is not proper for inclusion in the pretrial memorandum.

The Court issued its claim construction decision in this case, including as to the "guide mechanism comprising a lumen" limitation of the '783 Patent, on September 12, 2022. Abiomed never argued to the Court that 35 U.S.C. § 112 ¶ 6 applied to this limitation of the '783 Patent. The Federal Circuit's March 21, 2025, decision addressed the Court's claim construction as to this limitation, and again, Abiomed never argued to the Federal Circuit that 35 U.S.C. § 112 ¶ 6 applied to this limitation of the '783 Patent. After the Federal Circuit remanded to the Court last year, Abiomed filed and subsequently withdrew a motion for supplemental claim construction, arguing for the first time that 35 U.S.C. § 112 ¶ 6 applied to the "guide mechanism comprising a lumen" limitation of the '783 Patent. See D.I. 361, 404.

Abiomed knows that it has waived its opportunity to seek a means-plus-function construction in this case, at least twice if not more. In a transparent attempt to avoid waiver, Abiomed tries to prop up its latest attempt to re-do claim construction on the Federal Circuit's recent holding with respect to the '100 patent—asserted in Maquet I. If Abiomed files yet another motion for supplemental claim construction, Maquet will oppose it. But the Federal Circuit's decision in Maquet I does not compel new claim construction in this case. Aside from being improper to raise in the pretrial memorandum and having waived the opportunity to make this argument in the first instance, Abiomed's own past arguments contradict its latest effort to invoke 35 U.S.C. § 112 ¶ 6 here. Abiomed previously told this Court that the language of the "guide mechanism" limitations of the '100 patent differed from limitations with structural language like

48

those in claims 1 and 3 of the '783 patent. Indeed, throughout Maquet I's claim construction proceedings, Abiomed repeatedly distinguished the "guide mechanism" limitation of the '100 patent from the "guide mechanism configured as a lumen" limitations, which are analogous to the limitation in claims 1 and 3 of the '783 patent. For example, during the Maquet I claim construction hearing, Abiomed argued that because a claim of the '068 patent (a patent related to the '783 patent) includes the language "configured as an elongated lumen," it recites the "additional structural limitations," which is why it "is not a means-plus function." D.I. 230 at 1-117–118 ("[T]he [guide mechanism] term [in '100 Patent claim 16] . . . has an ambiguous structure, "mechanism," a function, "guiding," and then we know what it's guiding, but we don't know what the structures are that it guides, and I think it's instructive to look at what happened in other claims. In other claims, additional structures were added . . . . [T]he '068 provides additional structural limitations, and that's why Claim 10 of '068 is not a means-plus function, . . . in particular [it] requires that the guide mechanism is configured as an elongated lumen. That is the specific structure."). Abiomed should not be permitted to relitigate claim construction on the eve of trial, especially where it waived the very argument it tries to re-raise and its new position contradicts its past arguments to this Court.

### c.  Federal Judicial Center Patent Video.

The parties request that the Court present the standard tutorial video from the Federal Judicial Center regarding patents to the members of the jury as part of its preliminary instructions to the jury.  https://www.fjc.gov/publications/patent-process-overview-jurors.

### d.  Juror Notebooks.

The parties agree that the jurors shall be permitted to take handwritten notes during the presentations of the parties and be given a juror notebook. The jury notebooks shall include blank sheets of paper for notetaking along with pictures and names for all witnesses. A picture of each

witness will be provided by the party representing a witness, or if a third-party, by mutual agreement of the parties. The parties further agree that the jurors should be permitted to bring these jury notebooks into the deliberation room. The parties may ask the Court for leave to include additional materials in the notebooks as circumstances warrant during trial. The parties propose that jurors be instructed not to exchange or share their notes with other jurors (though they may discuss the contents of their notes) and that the jurors' notebooks be collected by the clerk each evening after the jury has been excused, and collected and destroyed without review after the jury is discharged.

### e.  Translations.

A foreign-language document may only be admitted alongside a certified translation. The parties reserve the right to object to any certified translations introduced at trial.

## IX.    PROBABLE LENGTH OF TRIAL.

Trial is currently scheduled for May 11, 2026, through May 22, 2026 (running from 9:00 a.m. eastern to 1:00 p.m. eastern each day). *See* D.I. 459. Arguments and additional evidence on the issue of Abiomed's equitable defense of prosecution laches or Maquet's defense of assignor estoppel may be presented to the Court outside the presence of the jury, and the parties request that the Court set aside time for bench trial testimony to be taken.

The parties request that the Court set aside time for bench trial testimony to be taken outside the presence of the jury, concurrently during the period of the jury trial. The parties request that any fact witness whose testimony is relevant to both issues properly before the jury and issues to be tried to the bench be permitted to provide bench testimony outside the jury's presence on the same day the witness testifies before the jury. The parties further agree to confer regarding the appropriate timing for testimony from experts whose opinions are relevant solely to bench trial issues.

The parties estimate that trial on all issues can be conducted during the two-week window set by the Court.

### X.    WITNESSES AND WHETHER ANY WITNESS IS INTENDED TO BE PRESENTED BY DEPOSITION.

The list of fact and expert witnesses that Maquet will call or may call to testify in person or by deposition designation is attached as **Exhibit A**. Maquet further identifies any witness listed on Abiomed's witness list (**Exhibit B**) and reserves the right to call any witness, whether or not identified, in rebuttal, to authenticate a document, or for purposes of impeachment.[1] The list of fact and expert witnesses that Abiomed will call or may call to testify in person, live by video conference, or by deposition designation is attached as **Exhibit B**. Abiomed further identifies any witness listed on Maquet's witness list and reserves the right to call any witness, whether or not identified, in rebuttal, to authenticate a document, or for the purposes of impeachment. The listing of a witness on a party's witness list does not require the party to call that witness to testify. Any witness not listed in the parties' respective witness lists will be precluded from testifying absent a showing of good cause. Additionally, the listing of a witness by a party on its witness list does not

---

[1] **Abiomed's Statement.** Abiomed contends that the number of witnesses on Maquet's witness list obscures who Maquet is actually intending to call at trial and does not reflect a good-faith disclosure of witnesses. Maquet has also stated it intends to serve trial subpoenas on many of those witnesses, which is not realistic in view of the time allotted for trial and the number of witnesses Maquet is likely to actually call. Thus, Abiomed does not agree at this stage that any trial subpoena is appropriate or that the number of trial subpoenas Maquet has threatened is practical. Federal Rules of Evidence Rule 615 provides only for excluding witnesses from hearing the testimony of other witnesses and does not provide for excluding witnesses from opening statements.

**Maquet's Statement.** Maquet's witness list does not obscure who Maquet is intending to call at trial. Maquet has repeatedly asked Abiomed to identify which witnesses it represents and/or are employed by Abiomed. Abiomed has refused to provide a clear answer. Until Abiomed provides a clear answer on which witnesses it represents and/or are employed by Abiomed, Maquet is unable to provide a supplemental witness list.

waive any objections to that witness should the opposing party attempt to call that witness to testify, either live or by deposition.

To the extent that a witness becomes unavailable for trial, each party reserves the right to call that witness by deposition to the extent permitted by the Federal Rules of Civil Procedure. The party calling such a witness by deposition must promptly provide an explanation of the changed circumstances and the proposed deposition designations to the other party. Such other party reserves all rights to object to the use of such deposition testimony, including on the grounds that the witness is not unavailable, the unavailability was foreseeable, or because untimely deposition designations will cause it unfair prejudice.

The parties agree that each side may designate one (1) party representative to act as the corporate representative for each side, Maquet and Abiomed. Each party shall identify by email to opposing counsel its corporate representative by **6:00 p.m. EDT** on **May 4, 2026**.

The parties shall provide a list identifying the specific witness(es) that they intend to call for direct examination, either live, live by video conference, or by deposition designation, and the order in which they will be called **4:00 p.m. EDT two (2) calendar days** before they intend to call those witnesses at trial (for example, the disclosing party shall provide a list no later than 4:00 pm EDT on May 11, 2026, that identifies witnesses expected to testify on May 13, 2026).  If a witness will provide testimony for both jury trial and bench trial issues, a party may re-call the witness during the time allotted for bench trial testimony.

Following service of the list identifying the specific witness(es) the parties will meet and confer regarding any objections at **7:00 p.m. EDT** that evening. To the extent that any objections are not resolved by the meet and confer, the parties shall raise the disputes with the Court in the morning of the Court day preceding the day the testimony is anticipated to be offered.

**Maquet's Statement.** Maquet intends to invoke Federal Rule of Evidence 615. Fact witnesses (with the exception of each side's designated corporate representative) may not attend opening statements. The parties agree that all fact witnesses, except for the designated corporate representative, will be sequestered until the witness is completely excused from the case and not subject to recall pursuant to Federal Rule of Evidence 615. In other words, such witnesses will not watch any testimony or part of the trial before they have testified (for avoidance of doubt, any fact witness who may be called as a rebuttal witness would not watch any testimony or any part of the trial until that witness begins their rebuttal testimony) and will not discuss the case or their testimony with any person once their cross examination begins until the cross examination ends. The parties agree that expert witnesses need not be sequestered.

**Abiomed's Statement.** The parties reserve the right to ask the Court to exclude witnesses from the courtroom so that they cannot hear other witnesses' testimony, pursuant to Federal Rules of Evidence 615. The parties agree that corporate representatives and expert witnesses need not be excluded. Abiomed does not agree that fact witnesses may not attend opening statements.

### a. Deposition Designations.

**Maquet's Statement.** For any witness whose testimony a party intends to call at trial by deposition, that party shall identify a final list of deposition designations to be played or read to the jury, whether the deposition testimony will be played by video or read, and the proposed exhibits used in the designations, by **4:00 p.m. EDT seven (7) calendar days** before the designations are to be played or read. By **4:00 p.m. EDT five (5) calendar days** before the designations are to be played or read, the non-calling party shall identify any objections and counter-designations. By **4:00 p.m. EDT four (4) calendar days** before the designations are to be played or read, the calling party shall serve objections and counter-counter designations. By **4:00**

**p.m. EDT three (3) calendar day** before the designations are to be played or read, the non-calling party shall serve objections to the counter-counter designations. The parties shall meet and confer at **7:00 p.m. EDT** that evening. By **9:00 p.m. EDT** that same evening, the parties shall exchange, in writing, brief explanations describing the basis for each objection that they intend to maintain to any designations, counter-designations, counter-counter designations, and/or proposed exhibits. By **11:00 p.m. EDT** that same evening, the parties shall exchange, in writing, any response to any objection. If there are objections that remain to be resolved, the party calling the witness by deposition shall, no later than **2:00 p.m. EDT** two (2) calendar days before designations are to be played or read, the calling party shall submit, on behalf of all parties: (i) a copy of the entire deposition testimony of the witness at issue, clearly highlighting the designations, counter-designations, and counter-counter designations, and pending objections; and (ii) a cover letter identifying the pending objections as well as the brief explanation describing the basis for each objection and the offering party's response to it.

The calling party shall be responsible for editing the deposition video to include the testimony and any counter-designation testimony played in the same order it appears in the full transcript, minus any attorney objections (with the exception of instructions not to answer), and shall provide a final version of the video and the clip report with time allocations to the other party by **6:00 p.m. EDT** one (1) calendar day before it is to be shown to the jury or state in writing that the deposition will instead be read into the record. Colloquy between counsel and objections, other than instructions not to answer, will be eliminated when the deposition is read or played at trial.

When the witness is called to testify by deposition at trial, the party calling the witness shall provide the Court with two (2) copies of the transcript with the designations, counter-

designations, and counter-counter designations that will be read or played highlighted. An additional copy shall be provided to the court reporter.

If a party decides to play less than all of the designated testimony for a witness at trial, to include less than all of its counter-designation, or to include less than all of its counter-counter-designations, the opposing party may use such dropped testimony as counter-designations to the extend the usage of such testimony in such manner is otherwise consistent with Federal Rules of Evidence 106, Federal Rule of Civil Procedure 32, and any other applicable Federal Rule of Evidence or Federal Rule of Civil Procedure.

**Abiomed's Statement.** For any witness whose testimony a party intends to call at trial by deposition, that party shall identify a final list of deposition designations to be played or read to the jury, whether the deposition testimony will be played by video or read, and the proposed exhibits used in the designations, by **4:00 p.m. EDT** five (5) calendar days before the designations are to be played or read. By **4:00 p.m. EDT** four (4) calendar days before the designations are to be played or read, the non-calling party shall identify any objections and counter-designations. By **4:00 p.m. EDT** three (3) calendar days before the designations are to be played or read, the calling party shall serve objections and counter-counter designations. The parties will meet and confer the following day by 4:00 p.m. EDT (two calendar days before the depositions are to be played or read). The parties will raise unresolved objections in Court the next day (one calendar day before the deposition is read or played). The party that seeks to read or play the deposition testimony must provide the opposing party by **4:00 p.m. EDT** the day before the deposition testimony is to be played, a workable copy of the actual video recordings to be played (or testimony to be read), based on the disputes resolved by the Court, including all designations and counter-designations

55

included sequentially (i.e., in the order that they appeared at the deposition), regardless of who designated the testimony.

Colloquy between counsel and objections will be eliminated when the deposition is read or played at trial. The excerpted deposition video to be played to the jury will include subtitles of the transcript at the bottom of the screen that matches the witness's testimony. Deposition video may also include unaltered images of exhibits referenced in the witness's testimony.

At trial, the compilation of a witness's deposition testimony designated by the sponsoring party and counter-designated by the non-sponsoring party shall be read or played by video in chronological order.  This chronological order requirement for deposition testimony does not apply to the use of deposition transcripts or deposition video for impeachment.

## XI.    PROPOSED EXHIBITS.

Maquet and Abiomed served their respective preliminary exhibit lists on March 6, 2026. The parties served their respective preliminary objections to the exhibit lists on March 27, 2026. The parties have agreed to continue to meet and confer regarding objections to exhibits in the parties' preliminary exhibit lists in order to resolve and narrow the number of disputes before the Court. The parties have also agreed to allow supplementation of exhibit lists until **April 24, 2026**. In light of these agreements, the parties will file the final joint exhibit list and their respective final exhibit lists on that day, **April 24, 2026.**

The listing of a document on the joint exhibit list is not an admission that such document is relevant or admissible when offered by the opposing party for the purpose that the opposing party wishes to admit the document.

The parties agree that any description of a document or other material on the joint exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding the document or material.

### a. Impeachment.

The exhibit lists do not include potential impeachment material. **[Maquet's Statement.** however, impeachment evidence is limited to documents identified or produced in this litigation. This provision includes documents identified on a parties' exhibit list.]

**Abiomed's Statement.** Abiomed disagrees with Maquet's proposed limitation, which is not an evidentiary rule and is not required by the Federal Rules. Impeachment evidence may be anything that bears on credibility, such as prior statements inconsistent with a witness's testimony at trial. Fed. R. Civ. P. 26(a)(1)(A) and 26(a)(3)(A) exclude evidence "that [a party] may present at trial … solely for impeachment." *See* Fed. R. Civ. P. 26(a)(3).

### b. No Advance Notification.

The parties do not need to provide notice of exhibits or demonstratives to be used for impeachment or to be used or offered into evidence during cross-examination, or to be used during closing argument.

### c. Opening Demonstratives.

The parties shall exchange demonstratives to be used in opening statements by **4:00 p.m. EDT one (1) calendar day** before opening statements (*i.e.*, the day before, or May 10, 2026). Any objections shall be provided no later than **6:00 p.m. EDT** that same day. The parties will meet and confer by **7:00 p.m. EDT** that evening. If good faith efforts to resolve the objections fail, the parties will present any unresolved issues to the Court the morning of opening statements.

### d. Trial Exhibits.

Each party will provide to opposing counsel a written list of exhibits, including any physical exhibits, that it intends to use on direct examination in Court, including indicating with which witness the exhibit will be used, no later than **4:00 pm one (1) calendar day** before the trial day on which the exhibits are intended to be used (i.e., the evening before) and the witnesses

57

(whether live or by depositions) that are intended to be called with respect to each Exhibit. The list of exhibits shall be separated by witness name and exhibit number. The other party shall identify any objections to exhibits by the later of **6:00 p.m. EDT, or two hours from the disclosure of exhibits, one (1) calendar day** before the trial day on which the exhibits are intended to be used (i.e., the evening before). The parties will meet and confer by **7:00 p.m. EDT** that evening. If good faith efforts to resolve the objections fail, the parties will present any unresolved issues to the Court the morning of the proposed use of the disputed exhibits(s). This procedure shall not apply to a party's use of exhibits in the cross examination of any witness.

**Abiomed's Statement.** Each exhibit requires a sponsoring witness who can lay the proper foundation for the exhibit to be admitted into evidence and shall be admitted only after the witness lays such foundation.

**Maquet's Statement.** Maquet does not believe it is necessary to replicate and/or characterize the Federal Rules of Evidence in the Pretrial Memorandum. To the extent Abiomed's statement mischaracterizes the Federal Rules of Evidence, Maquet disagrees with Abiomed's statement.

e.　**Demonstrative Exhibits.**

The parties agree that demonstrative exhibits that the parties intend to use at trial do not need to be included on a party's exhibit list or the joint exhibit list. The parties agree that demonstratives will be identified with PDX and DDX numbers. Each party will provide to opposing counsel a copy of demonstratives (including animations as they are intended to be used at trial) and the witnesses (whether live or by deposition) that are intended to be called with respect to each demonstrative that it intends to use on direct examination in Court no later than **4:00 p.m. EDT**, **one (1) calendar day** before the trial day on which the demonstrations are intended to be used (i.e., the evening before). The other party shall identify any objections to the demonstratives

by the later of **6:00 p.m. EDT, or two hours from the disclosure of demonstratives, one (1) calendar day** before the trial day on which the demonstrative exhibits are intended to be used (i.e., the evening before). The parties will meet and confer by **7:00 p.m. EDT** that evening. If good faith efforts to resolve the objections fail, the parties will present any unresolved issues to the Court the morning of the proposed use of the disputed exhibits(s).

This section does not apply to demonstrative exhibits created during testimony, demonstrative exhibits created live in court, or demonstrative exhibits to be used for cross-examination, none of which need to be provided to the other side in advance of their use. In addition, to the extent disclosed pursuant to Section XI.d (Trial Exhibits), blow-ups or highlights of trial exhibits or parts of trial exhibits or testimony are not required to be provided to the other side in advance of their use, unless such demonstrative includes additional annotations or text beyond magnification and highlights.

### f. Witness Binders.

The parties agree to provide witness binders for each fact and expert witness for direct examination at or before the start of the direct examination of that witness. Two (2) copies of any such binders must be provided to the Court, and two (2) copies must be provided to opposing counsel. Such witness binders shall include a PDF copy of any demonstrative exhibits to be used during examination.

**Maquet's Statement.** With respect to cross-examination, the party cross-examining a fact witness shall provide two (2) copies of a binder containing all of the exhibits to be used during cross-examination to opposing counsel, and two (2) copies to the Court at or before the start of the cross-examination of that witness.

**Abiomed's Statement.** Any exhibit being used on cross-examination will be first given to opposing counsel before it is given to the witness.

**g.  Written Discovery.**

If a party proposes to read a statement by a party opponent from any request for admission response, interrogatory response, or from stipulated facts (Section II), the party will provide notice of exactly the portion it intends to use by **4:00 p.m. EDT one (1) calendar day** before the statement is intended to be used at trial. By **6:00 p.m. EDT** that same day, the other party shall identify any additional portion of that statement that it proposes to be read for purposes of completeness.

Prior to being shown to the jury, if the statement is a response to a request for admission or interrogatory, the document shall be excerpted to the cover page, signature page, and the portion(s) of request(s) and response(s) intended to be read, with all other portions redacted in white. This notice provision does not apply when a party intends to use the statement during cross-examination or for impeachment purposes.

**XII.  THE PARTIES RESPECTIVE POSITIONS ON ANY REMAINING OBJECTIONS TO THE EVIDENCE IDENTIFIED IN THE PRETRIAL DISCLOSURE REQUIRED BY FED. R. CIV. P. 26(a)(3).**

The parties are continuing to meet and confer regarding objections to exhibits identified in the parties' respective Exhibit Lists and to witnesses identified in the parties' respective Witness Lists.[2] For any witness whom the opposing party intends to call at trial and for whom a trial

---

[2] **Abiomed Statement:** Abiomed contends that the number of witnesses on Maquet's witness list obscures who Maquet is actually intending to call at trial and does not reflect a good-faith disclosure of witnesses. Maquet has also stated it intends to serve trial subpoenas on many of those witnesses, which is not realistic in view of the time allotted for trial and the number of witnesses Maquet is likely to actually call. Thus, Abiomed does not agree at this stage that any trial subpoena is appropriate or that the number of trial subpoenas Maquet has threatened is practical.

**Maquet Statement:** Maquet's witness list does not obscure who Maquet is intending to call at trial. Maquet has repeatedly asked Abiomed to identify which witnesses it represents and/or employed by Abiomed. Abiomed has refused to provide a clear answer. Until Abiomed provides

subpoena is necessary, the Parties agree that they will accept service of a trial subpoena for such witness provided that the witness is employed or otherwise under the control of an entity that is a Party and the witness is subject to the subpoena power of the Court (i.e., within 100 miles).

### a. Dr. Aboul-Hosn Live Testimony.

#### 1. Maquet's statement

Abiomed has indicated that it will attempt to introduce the live testimony, either in person or by remote videoconference, of Dr. Walid Aboul-Hosn concerning his work on the accused Impella product—the very subject matter on which Maquet repeatedly sought discovery but that Abiomed withheld from discovery and, it turns out, spoliated. *See* Dkt. No. 544 at 22. Allowing Abiomed to now introduce live testimony by Dr. Aboul-Hosn would unfairly prejudice Maquet— prejudice that far outweighs any probative value this testimony would provide, particularly given the absence of information made available to Maquet during fact discovery due to Abiomed's spoliation. Dr. Aboul-Hosn should therefore be excluded as a witness entirely under Federal Rule of Evidence 403 and this Court's broad authority, particularly given the Court's prior Order addressing Dr. Aboul-Hosn and Abiomed's spoliated evidence. *See* Dkt. No. 544 at 19 ("It is abundantly clear from the record that Abiomed has failed to preserve potentially relevant ESI."); 22 ("[I]t was Abiomed's responsibility to preserve the evidence that existed as of the beginning of 2016. It failed to do so. The Court therefore has no difficulty concluding that evidence has been spoliated.").

---

a clear answer on which witnesses it represents and/or are employed by Abiomed, Maquet is unable to provide a supplemental witness list.

Maquet incorporates by reference as if set forth fully herein its Motion *in Limine* No. 4 to Preclude Dr. Walid Aboul-Hosn's Live Testimony, Either in Person or by Remote Videoconference and any additional forthcoming briefing regarding this matter. *See* D.I. 558.

### 2. Abiomed's Statement

For the reasons explained in Abiomed's Opposition to Maquet's Motion *in Limine* No. 4, Abiomed disagrees with Maquet's characterization of the law and the facts regarding Dr. Aboul-Hosn.  Abiomed incorporates its Opposition to Maquet's Motion *in Limine* No. 4 in its entirety.

\* \* \*

Pursuant to Local Rule 16.5(d)(12), the parties will promptly notify the court of any objections to the evidence in the pretrial disclosures as required by Fed. R. Civ. P. 26(a)(3) that arise subsequent to the filing of this Pre-Trial Memorandum that the parties seek resolution of at or before the Final Pretrial Conference.

Dated: March 31, 2026

*/s/ Brian D. Matty*
John M. Desmarais (*pro hac vice*)
Kerri-Ann Limbeek (*pro hac vice*)
Brian D. Matty (BBO #691725)
Frederick J. Ding (BBO #703370)
Amy Wann (*pro hac vice*)
Davis Gonsalves-DeDobbelaere (*pro hac vice*)
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Telephone: (212) 351-3400
Facsimile: (212) 351-3401

Kyle Curry (*pro hac vice*)
DESMARAIS LLP
101 California Street
Suite 3000
San Francisco, CA 94111
Telephone: (415) 573-1900
Facsimile: (415) 573-1901

*Attorneys for Abiomed Inc.; Abiomed R&D, Inc.; and Abiomed Europe GmbH*

Respectfully submitted,

*/s/ Paul Tanck*
Paul Tanck
Christopher McArdle
Neal McLaughlin
Wade Perrin
Andrew Ligotti
Ravi Shah
Charlie Jonas
**ALSTON & BIRD LLP**
90 Park Avenue
New York, NY 10016
Tel: (212) 210-9400 / Fax: (212) 210-9444
paul.tanck@alston.com
chris.mcardle@alston.com
neal.mclaughlin@alston.com
wade.perrin@alston.com
andy.ligotti@alston.com
ravi.shah@alston.com
charlie.jonas@alston.com

Kirk T. Bradley
M. Scott Stevens
**ALSTON & BIRD LLP**
Vantage South End
1120 South Tryon Street, Suite 300
Tel: (704) 444-1000
kirk.bradley@alston.com
scott.stevens@alston.com

Lauren N. Griffin (NC 54766)
ALSTON & BIRD LLP
227 West Monroe Street, Suite 3900
Chicago, IL 60606
lauren.griffin@alston.com
Not admitted in Illinois (admission pending)

Erik Paul Belt (BBO # 558620)
McCARTER & ENGLISH, LLP
265 Franklin Street
Boston, MA 02110
Tel: (617) 449-6506
ebelt@mccarter.com

*Attorneys for Maquet Cardiovascular LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 31, 2026, I electronically filed the foregoing document with

the Clerk of Court using CM/ECF, which sends electronic notice to all counsel of record.

*/s/ Paul Tanck*
Paul Tanck

64